Nos. 25-1555 through 25-1578; 25-1580 through 25-1593; 25-1676; and 25-1677
(Consolidated)

# United States Court of Appeals
# for the Third Circuit

ATLAS DATA PRIVACY CORP., et al.,

*Plaintiffs-Appellees*,

MATTHEW J. PLATKIN, in his official capacity as
ATTORNEY GENERAL OF NEW JERSEY

*Intervenor-Appellee*,

*v.*

WE INFORM LLC, et al.,

*Defendants-Appellants*.

On Appeal from the United States District Court for District of New Jersey
No. 1:24-cv-04037-HB
The Honorable Harvey Bartle III, Judge

**BRIEF OF THE NATIONAL ASSOCIATION OF ASSISTANT UNITED
STATES ATTORNEYS, THE NATIONAL ASSOCIATION OF POLICE
ORGANIZATIONS, ET AL., AS *AMICI CURIAE*
IN SUPPORT OF APPELLEES AND
AFFIRMANCE OF THE DISTRICT COURT**

Rebekah Conroy
NJ Bar No. 028932003
STONE CONROY LLC
25A Hanover Road, Suite 301
Florham Park, NJ 07932
(973) 400-4181
rconroy@stoneconroy.com

John Paul Schnapper-Casteras
NY Bar. No. 4855425
SCHNAPPER-CASTERAS PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
(202) 630-3644
jpsc@schnappercasteras.com

*Attorneys for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Third Circuit LAR 26.1, counsel for *amici* certify the following:

The National Association of Assistant United States Attorneys, New Jersey State Policemen's Benevolent Association, National Association of Police Organizations, and Federal Bureau of Investigation Agents Association have no parent corporation, subsidiary, or affiliate and that no publicly held corporation owns 10% or more of their stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ I

TABLE OF AUTHORITIES ...........................................................................

INTEREST OF *AMICI CURIAE* ........................................................................1

SUMMARY OF ARGUMENT .........................................................................3

ARGUMENT .................................................................................................6

   I.    THE REGULATION OF COMMERCIAL DATA BROKERS SERVES A
   COMPELLING INTEREST IN PROTECTING THE SAFETY OF JUDGES,
   PROSECUTORS, LAW ENFORCEMENT OFFICERS, AND THEIR
   FAMILIES AT HOME. ..........................................................................6

     A.   Law enforcement officers, jurists, prosecutors, and their families face
     multiplying threats of violence at home due to the sale and propagation of
     sensitive personal information. ..........................................................7

     B.   Protecting public servants and their families against assassination and
     other grave threats is integral to the independence of the judiciary and
     to the rule of law. ............................................................................15

     C.   Daniel's Law places a generally modest regulatory burden on
     commercial data brokers. ................................................................17

CONCLUSION ...........................................................................................22

CERTIFICATE OF BAR MEMBERSHIP.........................................................23

CERTIFICATE OF COMPLIANCE ................................................................24

CERTIFICATE OF SERVICE ........................................................................25

# TABLE OF AUTHORITIES

## CASES

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir.1998) ...............................18

*Smith v. Dayton*, 68 F.Supp.2d 911 (S.D.Ohio 1999) ............................................18

## STATUTES

N.J.S.A. 47:1A-1 ...................................................................................................5

N.J.S.A. 56:8 ...................................................................................................5, 16

N.J.S.A. 2C:20-31.1(c) .........................................................................................16

## OTHER AUTHORITIES

Barr, Luke *Federal judges, prosecutors see triple-digit increase in threats in 2023*, ABC News (Feb. 13, 2024), https://abcnews.go.com/Politics/federal-judges-prosecutors-triple-digit-increase-threats-2023/story?id=107198746 ................7, 8

Brnovich, Mark and Gurbir S. Grewal, *Congress must pass Daniel's Law to protect federal judges*, Roll Call (July 16, 2021), .................................................14

Chief Justice John G. Roberts, Jr., 2022 Year-End Report on the Federal Judiciary (Dec. 31, 2022), https://www.supremecourt.gov/publicinfo/year-end/2022year-endreport.pdf...................................................................................................13

Chief Justice John G. Roberts, Jr., 2024 Year-End Report on the Federal Judiciary (Dec. 31, 2024), https://www.supremecourt.gov/publicinfo/year-end/2024year-endreport.pdf........................................................................... 6, 14-15

Congressional Research Service, *Regulation of Data Brokers: Executive Order 14117 on Preventing Access to Americans' Sensitive Data by Countries of Concern* (May 16, 2024), https://crsreports.congress.gov/product/pdf/IN/IN12362; .....................................9

Congressional Research Service, *Security for the Federal Judiciary: Recent Developments* (April 11, 2023), https://crsreports.congress.gov/product/pdf/IN/IN12143.......................................6

*Judiciary Affirms Need for Bill to Protect Federal Judges* (July 14, 2021), https://www.uscourts.gov/news/2021/07/14/judiciary-affirms-need-bill-protect-federal-judges ................................................................................................8

Hitachi Security Systems, *What is a data broker and how do they impact privacy* (2024), https://hitachi-systems-security.com/what-is-a-data-broker-and-how-do-they-impact-privacy/................................................................................................16

Justin Sherman et al., *Data Brokers and the Sale of Data on U.S. Military Personnel*, Duke University (Nov. 2023)..............................................................9

Lieb, David, *States shield addresses of judges, workers after threats*, Associated Press (May 14, 2023), https://apnews.com/article/sunshine-week-secrecy-home-address-26306e390694f6ab9c95f978f4e4c207....................................................17

Monyak, Suzanne *Judicial Security Resources Stretched Amid Rising Threats*, Bloomberg (May 2, 2024), https://news.bloomberglaw.com/us-law-week/judicial-security-resources-stretched-amid-rising-threats .........................11

Muffler, John F. *Protecting Your Castle: Residential Security for Judges*, The National Judicial College (Nov. 19, 2015), https://www.judges.org/news-and-info/residential-security-for-judges/ ....................................................10

National Center for State Courts, *Judicial Security Update* (2024), https://ccj.ncsc.org/news/judicial-security-update ............................. 6, 12, 14, 15

National Center for State Courts, *NCSC supports new legislation to protect state court judges from escalating threats* (2024), https://www.ncsc.org/newsroom/at-the-center/2024/ncsc-supports-new-legislation-to-protect-state-court-judges-from-escalating-threats ..........................................................................9

National Center for State Courts, *Personal Safety Tips for Judges and Court Staff* (updated Oct. 2023), https://www.ncsc.org/__data/assets/pdf_file/0023/95144/Safety-PDF_P3.pdf...13

Office of the Inspector General, U.S. Department of Justice, *Audit of the U.S. Marshals Service Judicial Security Activities* (June 2021), https://oig.justice.gov/sites/default/files/reports/21-083.pdf................................11

Press Release, *Data Brokers Market Estimated to Reach US$ 462.4 billion by 2031*, TMR Report, GlobeNewswire (Aug. 1, 2022), https://www.globenewswire.com/news-release/2022/08/01/2489563/0/en/Data-Brokers-Market-Estimated-to-Reach-US-462-4-billion-by-2031-TMR-Report.html ............................................................................................16

Raymond, Nate, *US Supreme Court seeks security funding to protect justices, homes*, Reuters (March 4, 2024), https://www.reuters.com/world/us/us-supreme-court-seeks-security-funding-protect-justices-homes-2024-03-04/ ....................11

Sbatiy, Hannah Elias, *Private Lives at Home and Public Lives in Court: Protecting the Privacy of Federal Judges' Home Addresses*, 28 J. Intell. Prop. L. 475 (2021), https://digitalcommons.law.uga.edu/jipl/vol28/iss2/7 ............................10

Smith, Dave, *Give Me an Unlisted Number, Please*, Police Magazine (Aug. 12, 2016), https://www.policemag.com/patrol/article/15346679/give-me-an-unlisted-number-please ........................................................................................17

Statement of Judge Roslynn Mauskopf, Director, *Administrative Office of the United States Courts, S. 2340 The Daniel Anderl Judicial Security and Privacy Act of 2021* (Dec. 2, 2021),..................................................................................12

Tanfani, Joseph, et al., *Exclusive: Threats to US federal judges double since 2021, driven by politics,* Reuters (Feb. 13, 2024), https://www.reuters.com/world/us/threats-us-federal-judges-double-since-2021-driven-by-politics-2024-02-13/ ...........................................................................7

The Chicago Bar Association and The John Marshall Law School Center for Information Technology and Privacy Law, *Protecting Your Personal Privacy: A Self-Help Guide for Judges and Their Families* (2006), https://www.supremecourt.ohio.gov/docs/Boards/OJFN/resources/Privacy.pdf.18

The National Judicial College, *Over half of judges report threats, environment affecting mental health* (June 27, 2024), https://www.judges.org/news-and-info/over-half-of-judges-report-threats-environment-affecting-mental-health/.....8

Thomsen, Jacqueline, *Threats Against US Judges Prompt Request for More Security* Funds, Bloomberg (March 6, 2024), https://news.bloomberglaw.com/us-law-week/threats-against-us-judges-prompt-request-for-more-security-funds..........................................................................10

U.S. Courts, *Facilities and Security – Annual Report 2023* (2023),
https://www.uscourts.gov/statistics-reports/facilities-and-security-annual-report-
2023 ..................................................................................................................6

Uniform Law Commission, Drafting Committee on Redaction of Personal
Information from Public Records Committee (June 18, 2024) ...........................17

Wisconsin Public Radio, *With threats against judges on the rise, lawmakers push
judicial security package* (Jan. 26, 2024), https://www.wpr.org/news/with-
threats-against-judges-on-the-rise-lawmakers-push-judicial-security-package.....8

# INTEREST OF *AMICI CURIAE*[1]

This brief is submitted on behalf of leading national and state organizations that represent over 5,500 federal prosecutors across the United States as well as tens of thousands of police officers in the State of New Jersey, over 1,000 police units and associations, over 253,000 sworn law enforcement officers, and more than 100,000 citizens. Signatories include:

- The National Association of Assistant United States Attorneys (NAAUSA), which was founded in 1992 to advance the mission of AUSAs and their responsibilities in promoting and preserving the Constitution of the United States, fostering loyalty and dedication in support of the Department of Justice, and encouraging the just enforcement of U.S. laws. NAAUSA represents the interests of more than 5,500 AUSAs throughout the country and the U.S. territories.

- The New Jersey State Policemen's Benevolent Association, Inc. (NJSPBA) is a state-wide organization representing law enforcement officers at the state, county, and municipal levels of government. The NJSPBA is the parent organization of over 350 affiliated local PBAs. It provides legal assistance to

---

[1] This brief is submitted with the consent of all parties. Pursuant to F.R.A.P. 29(a)(4)(E) and Local Rule 29.1, counsel for *amici* affirm that this brief was not authored by any party's counsel in whole or in part, and that no party or other person, other than the *amici curiae*, its members, or its counsel, contributed money intended to fund the preparation or submission of this brief.

local PBAs, and to all law enforcement personnel represented by those locals, on matters of concern that impact their health, safety, professionalism, legal representation, and economic well-being. The NJSPBA is comprised of approximately 33,000 active law enforcement officers and 23,000 retired law enforcement officers.

- The National Association of Police Organizations (NAPO) is a coalition of police units and associations from across the United States. It was organized for the purpose of advancing the interests of America's law enforcement officers. Founded in 1978, NAPO is the strongest unified voice supporting law enforcement in the country. NAPO represents over 1,000 police units and associations, over 241,000 sworn law enforcement officers, and more than 100,000 citizens who share common dedication to fair and effective law enforcement. NAPO often appears as *amicus curiae* in cases of special importance.

- The Federal Bureau of Investigation Agents Association (FBIAA) is a non-profit organization dedicated to advancing and safeguarding the welfare, careers, economic interests, and conditions of employment of Federal Bureau of Investigation (FBI) Special Agents, both active and retired. Founded in 1981, the FBIAA fulfills this mission by providing support and non-partisan and issue-driven advocacy for its more than 14,000 members.

2

Together, *amici* have decades of experience with the justice system and specifically with the personal risks and violence that its members face on a daily basis in connection with their work. *Amici* are intimately familiar with the nature and volume of threats confronting judges, prosecutors, and law enforcement officers, the ways in which the security environment has changed in recent years, and the importance of protections like Daniel's Law. Moreover, *amici* have a longstanding interest in the stable operation of the judiciary and the advancement of the rule of law—and understand how Daniel's Law safeguards those vital institutions.

## SUMMARY OF ARGUMENT

Each night, after a long shift or a full day in court, law enforcement officers take off their bulletproof vests, judges hang up their robes, and they all head home. But their jobs do not always leave them there. Their work can follow them home — sometimes quite literally and with dangerous consequences.

In recent years, there has been a marked and disturbing surge in physical threats and fatal violence against jurists, prosecutors, and law enforcement, particularly in their family residences. In his 2024 report to the federal judiciary, Chief Justice Roberts specifically highlighted the "significant uptick in identified threats at all levels of the judiciary," including due to "doxing." In several high-profile incidents, disgruntled litigants have tracked down the home addresses of judges or law enforcement officers online, come to their abodes, and hurt or killed

them or members of their families. In addition to being obviously tragic, this trend is deeply problematic for the integrity of an independent judiciary, as well as for the effective operation of law enforcement agencies.

To be clear, public service has never been a risk-free endeavor, particularly for officials working in the criminal justice system. But the mounting physical risks to members of the judiciary and of law enforcement have been complicated and accelerated by the sale and propagation of private data, including personal addresses, through data brokers and other Internet vendors. There are simply not enough governmental resources to provide around-the-clock, at-home security to every single prosecutor, judge, or police officer in America who could potentially be under serious threat. As a result, it is reasonable and necessary to regulate commercial data brokers who choose to sell the personal information of prosecutors, law enforcement officers, and judges, including by providing a right to remove personal data.

*Amici* and their members, who span different levels and types of positions in the justice system, do not often file *amicus* briefs, let alone together. But given the recent increase in unfounded attacks and violent threats levied against these apolitical civil servants and their families, the importance of Daniel's Law is so critical that they feel compelled to weigh in on this appeal.

*Amici* respectfully urge this Court to consider the practical significance of Daniel's Law to the multitude of judges, prosecutors, and law enforcement officers who serve across the Third Circuit and the nation.

Additionally, this Court should be aware of disturbing studies from the U.S. Marshals Service and from investigative outlets detailing the multiplying threats of violence against members of the judiciary, law enforcement, and their families. Particularly in light of those trends, *amici* depend upon statutes like Daniel's Law to do their work safely and effectively. Moreover, *amici* agree with Chief Justice Robert's sense of being "grateful to the many federal and state legislators who have stepped forward to sponsor bills shielding judges' personal identifying information from the public domain."

*Amici* also encourage the Court to examine how Daniel's Law places a generally modest burden on commercial data brokers: they simply must remove the personal data of a covered person in a prompt manner (or face risk of a claim). Despite occasionally overheated rhetoric on the other side, this is not the end of the world — nor is it the end of the Internet. But for judges, prosecutors, and members of the law enforcement community, reselling private data like their home address— in ways that make it all too easy for an aggrieved individual to obtain—can actually make a world of difference for their security and the safety of their families. This

Court should uphold the constitutionality of data broker regulations and affirm the District Court's denial of Appellants' motions to dismiss.

## ARGUMENT

## I.    THE REGULATION OF COMMERCIAL DATA BROKERS SERVES A COMPELLING INTEREST IN PROTECTING THE SAFETY OF JUDGES, PROSECUTORS, LAW ENFORCEMENT OFFICERS, AND THEIR FAMILIES AT HOME.

The Appellants in this case brought a sweeping, facial constitutional challenge to a commonsense state law that regulates the use of sensitive personally identifiable information, namely by commercial data brokers. *See generally* N.J. Stat. Ann. §§ 47:1A-1, et seq., and 56:8-166.1 ("Daniel's Law"). The District Court rightly denied their motion to dismiss and rejected their broad constitutional theory. In addition to the other serious doctrinal hurdles they could not surmount, the Appellants could hardly deny that Daniel's Law serves a compelling state interest. As laid out below (*infra* § I.A), members of the justice system face a proliferation of personal threats and violence at home, which have surged in recent years and been fueled by the misuse of personally identifiable information (PII) online. Protecting public servants like *amici* from deadly threats is not only pivotal at an individual level – it is also fundamental for our system of government, which depends upon an independent judiciary that is insulated against undue pressures of violence or revenge (*infra* § I.B). Lastly, this Court should be aware that Daniel's Law normally places a

6

manageable compliance burden on commercial data brokers, which can adhere to the statute in a straightforward and reasonable manner (*infra* § I.C).

### A. Law enforcement officers, jurists, prosecutors, and their families face multiplying threats of violence at home due to the sale and propagation of sensitive personal information.

In his latest year-end report to the federal judiciary, Chief Justice Roberts highlighted "how in recent years, there has been a significant uptick in identified threats at all levels of the judiciary." Chief Justice John G. Roberts, Jr., 2024 Year-End Report on the Federal Judiciary at 6 (Dec. 31, 2024), https://www.supremecourt.gov/publicinfo/year-end/2024year-endreport.pdf. As detailed below, he relayed troubling new statistics from the U.S. Marshals Service demonstrating that "the volume of hostile threats and communications directed at judges has more than tripled over the past decade." *Id.* He examined the practice of "doxing" i.e., "releasing otherwise private information such as addresses and phone numbers," which "can prompt visits to the judge's home, whether by a group of protestors or, worse, an unstable individual carrying a cache of weapons." *Id.* at 6-7. He recounted recent murders of state court judges, which "highlight the vulnerability of judges who sign their names to the decisions they render each day and return home each night to communities, where they remain involved as neighbors, volunteers, and concerned citizens. Judges cannot hide, nor should they." Next, the Chief Justice specifically stressed how he was "grateful to the many federal

and state legislators who have stepped forward to sponsor bills shielding judges' personal identifying information from the public domain." *Id.* at 6.

Numerous other governmental and published studies have confirmed that threats against public servants (like *amici*'s members) at home have grown at an alarming rate in recent years. In 2023, the Administrative Office of the U.S. Courts highlighted this serious problem:

> The proliferation of judges' PII [personally identifiable information] on the internet has been a major concern for the Judiciary in the wake of several attacks on judges in recent years. . . . There also has been a steady rise in threats and inappropriate communications against federal judges and other court personnel, from 926 such incidents in 2015 to 2,710 incidents in 2023, according to the Marshals Service. Some threats have involved litigants angered by judges' decisions in cases, and the home addresses of judges handling controversial cases have been circulated on social media.

*See* U.S. Courts, *Facilities and Security – Annual Report 2023* (2023), https://www.uscourts.gov/statistics-reports/facilities-and-security-annual-report-2023. *See also* Congressional Research Service, *Security for the Federal Judiciary: Recent Developments* at 1 (April 11, 2023), https://crsreports.congress.gov/product/pdf/IN/IN12143 (discussing the sale and circulation of PII on the Internet and citing a 2022 publication from the Administrative Office of U.S. Courts).

As the National Center for State Courts recently highlighted, this surge in threats against federal judges, prosecutors, and other court officials represents a staggering "400% increase since 2015." National Center for State Courts, *Judicial*

*Security Update* (2024), https://ccj.ncsc.org/news/judicial-security-update. For judges, serious threats have more doubled during the past three years – rising "to 457 [serious incidents meriting investigation] in fiscal year 2023 [], [up] from 224 in fiscal 2021, according to the previously unreported data. Serious threats against federal prosecutors also more than doubled, from 68 in 2021 to 155 in 2023, the statistics show." Joseph Tanfani et al., *Exclusive: Threats to US federal judges double since 2021, driven by politics,* Reuters (Feb. 13, 2024), https://www.reuters.com/world/us/threats-us-federal-judges-double-since-2021-driven-by-politics-2024-02-13/. These skyrocketing threats "marked a dramatic increase from 2019, when the Marshals investigated 179 such threats, according to the data. In the past, judges mostly faced threats from people who were upset about a judge's decision in their own cases, [Marshals Director Ronald] Davis said. Now, he [explained], many more are coming from people enraged because of politics." *Id.* *Accord* Luke Barr, *Federal judges, prosecutors see triple-digit increase in threats in 2023*, ABC News (Feb. 13, 2024), https://abcnews.go.com/Politics/federal-judges-prosecutors-triple-digit-increase-threats-2023/story?id=107198746 ("Federal judges and federal prosecutors saw a triple-digit increase in threats in 2023, according to statistics released [] by the U.S. Marshals Service.").

At the state level too, personal threats and actual violence are multiplying. Individuals "have attacked or threatened state judges and court personnel in Nevada,

Colorado, Texas, Ohio, Mississippi, Rhode Island, New York, California, Kentucky, Michigan, Wyoming, Idaho, and Indiana. . . ." *Id. Accord* The National Judicial College, *Over half of judges report threats, environment affecting mental health* (June 27, 2024), https://www.judges.org/news-and-info/over-half-of-judges-report-threats-environment-affecting-mental-health/ ("The United States Marshall's Service reports that serious threats to federal judges have doubled since 2021, a pattern also seen at the state court level. There have been multiple high-profile physical attacks on [state] judges and their families, including homicides, as well a barrage of threats sent directly to judges or posted on social media."); Wisconsin Public Radio, *With threats against judges on the rise, lawmakers push judicial security package* (Jan. 26, 2024), https://www.wpr.org/news/with-threats-against-judges-on-the-rise-lawmakers-push-judicial-security-package ("In 2022, . . . [state] Court Judge John Roemer was zip-tied to a chair in his home and executed.").

The sale of private information by commercial data brokers, particularly when it involves a home address, has proven to be a central factor in the current threat environment. "Judges handling controversial cases [] have seen their home addresses circulated on social media." U.S. Courts, *Judiciary Affirms Need for Bill to Protect Federal Judges* (July 14, 2021), https://www.uscourts.gov/news/2021/07/14/judiciary-affirms-need-bill-protect-federal-judges. *See also* National Center for State Courts, *NCSC supports new legislation to protect state court judges*

10

*from escalating threats* (2024), https://www.ncsc.org/newsroom/at-the-center/2024/ncsc-supports-new-legislation-to-protect-state-court-judges-from-escalating-threats ("'My attacker obtained my home address, phone number, and the make and model of my vehicle from online searches, and he stalked me and my family for weeks,' recalls Judge Kocurek.").

The sale and propagation of personally identifiable information stems largely from the meteoric rise of commercial data brokers, an industry which has garnered recent scrutiny because of its security implications. *See, e.g.*, Congressional Research Service, *Regulation of Data Brokers: Executive Order 14117 on Preventing Access to Americans' Sensitive Data by Countries of Concern* (May 16, 2024), https://crsreports.congress.gov/product/pdf/IN/IN12362; Justin Sherman et al., *Data Brokers and the Sale of Data on U.S. Military Personnel*, Duke University (Nov. 2023) (research sponsored by the United States Military Academy), https://techpolicy.sanford.duke.edu/data-brokers-and-the-sale-of-data-on-us-military-personnel/.

The sale of PII, particularly home addresses, poses heightened risks to groups of civil servants like *amici* because of the security vulnerabilities of a personal residence. The National Judicial College surveyed a historical analysis of "attacks [against] justice personnel from 1950-2013 [and] found that 51 percent of the attacks occurred at the residence with a 68 percent kill rate." John F. Muffler, *Protecting*

11

*Your Castle: Residential Security for Judges*, The National Judicial College (Nov. 19, 2015), https://www.judges.org/news-and-info/residential-security-for-judges/ (citation omitted). This alarming trend reflects the unique features of homes. "For the most part, courthouses are safe and secure. With security officers, magnetometers, x-rays, cameras, duress alarms, ballistic barriers, high grade locks and lighting, they provide an excellent security blanket. However, when you step out of the courthouse, your vulnerability skyrockets. You no longer have the systems and personnel at your disposal." *Id. See generally* Hannah Elias Sbaity, *Private Lives at Home and Public Lives in Court: Protecting the Privacy of Federal Judges' Home Addresses*, 28 J. Intell. Prop. L. 475 (2021), https://digitalcommons.law.uga.edu/jipl/vol28/iss2/7.

Recently, the jump in threats against employees of the justice system have prompted increased budgets for court security – including funding specifically to remove PII from Internet vendors and other sources. *See* Jacqueline Thomsen, *Threats Against US Judges Prompt Request for More Security* Funds, Bloomberg (March 6, 2024), https://news.bloomberglaw.com/us-law-week/threats-against-us-judges-prompt-request-for-more-security-funds ("The budget would also fund the removal of personally identifiable information of judges from the internet, permitted through a 2022 law passed after the fatal shooting of US District Judge Esther Salas's son at their New Jersey home."). *See also* Nate Raymond, *US Supreme Court seeks*

*security funding to protect justices, homes*, Reuters (March 4, 2024), https://www.reuters.com/world/us/us-supreme-court-seeks-security-funding-protect-justices-homes-2024-03-04/.

But there is simply not enough public funding to personally protect every judge, prosecutor, and police officer at their home whenever they face a serious threat. A recent audit by the U.S. Department of Justice Inspector General explicitly "found that the USMS [U.S. Marshals Services] does not have the resources or proactive threat detection capabilities that the USMS has determined it needs to meet its protective services obligations for USMS-protected persons, including judges." Office of the Inspector General, U.S. Department of Justice, *Audit of the U.S. Marshals Service Judicial Security Activities* (June 2021), https://oig.justice.gov/sites/default/files/reports/21-083.pdf. Even when specific threats require temporary protective details for federal judges, those security services are extraordinarily expensive, hard to staff, and face real budgetary constraints. *See* Suzanne Monyak, *Judicial Security Resources Stretched Amid Rising Threats,* Bloomberg (May 2, 2024), https://news.bloomberglaw.com/us-law-week/judicial-security-resources-stretched-amid-rising-threats. Moreover, state budgets and resources are often even more limited. "While the U.S. Marshals Service monitors, addresses, and develops best practices around threats to the federal judiciary, no such resource center exists for the estimated 30,000 judicial officers who serve in state

and local courts." National Center for State Courts, *Judicial Security Update* (2024),

*supra*.

For all these reasons, statutes like Daniel's Law serve a compelling interest in

protecting judges, prosecutors, and law enforcement by regulating the services and

sales of commercial data brokers. As Judge Roslynn Mauskopf recently testified:

> The federal [analog to] 'Daniel's Law'. . . is important to the judiciary;
> these issues are critical. Lives have been lost and threatened because
> judges' addresses and phone numbers are available online and bad actors
> are using that information to do harm to judges and their families. This
> [legislation] is supported by the Federal Judges Association, the Federal
> Magistrate Judges Association, the National Conference of Bankruptcy
> Judges, the Federal Bar Association, the American Bar Association, the
> Hispanic National Bar Association, the New York Intellectual Property
> Law Association, Association of the Federal Bar of New Jersey, the
> Federal Bar Council, and the National Association of Attorneys General.

Statement of Judge Roslynn Mauskopf, Director, *Administrative Office of the United*

*States Courts, S. 2340 The Daniel Anderl Judicial Security and Privacy Act of 2021*

at 4 (Dec. 2, 2021), https://www.uscourts.gov/sites/default/files/statement_of_

judge_roslynn_mauskopf_december_2021_0.pdf. Today, organizations like the

National Center for State Courts specifically urge all judges and court personnel to

exercise their rights under statutes like Daniel's Law in order to remove sensitive

private information from public brokers and sources. *See* National Center for State

Courts, *Personal Safety Tips for Judges and Court Staff* (updated Oct. 2023),

https://www.ncsc.org/__data/assets/pdf_file/0023/95144/Safety-PDF_P3.pdf ("Be

aware of laws or statutes regarding the protection of personally identifiable

information for judges. If at all possible, do not have a publicly listed or published home address."). In sum, Daniel's Law provides critical protections to prosecutors, law enforcement officers, and judges in the face of doubling threats of violence at home and through the Internet.

### B. Protecting public servants and their families against assassination and other grave threats is integral to the independence of the judiciary and to the rule of law.

Safeguarding officials like *amici*'s members from serious threats is not only crucial at an individual level or for their families – it is also foundational for our system of government. Chief Justice Roberts has repeatedly highlighted the core principles at stake. In his 2024 report to the federal judiciary, he stressed how "violence" and "intimidation" "threaten the independence of judges on which the rule of law depends." Chief Justice John G. Roberts, Jr., 2024 Year-End Report on the Federal Judiciary, *supra* at 5. *Id*. at 8 ("violence, intimidation, and defiance directed at judges because of their work undermine our Republic, and are wholly unacceptable."). He underscored a similar point two years earlier:

> Just this month, Congress enacted the [federal equivalent to Daniel's Law] to help protect judges and their families. The law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety. A judicial system cannot and should not live in fear.

Chief Justice John G. Roberts, Jr., 2022 Year-End Report on the Federal Judiciary at 4 (Dec. 31, 2022), https://www.supremecourt.gov/publicinfo/year-end/2022year-

endreport.pdf. Judge Mauskopf highlighted a similar point: "'Our constitutional system depends on an independent Judiciary . . . . Judges must be able to make decisions without fear of reprisal or retribution. This is essential not just for the safety of judges and their families, but also to protect our democracy.'" U.S. Courts, *Judiciary Affirms Need for Bill to Protect Federal Judges* (July 14, 2021), *supra*.

Numerous state and federal judges at the trial and appellate levels have also underscored the important ramifications for the rule of law here. *See* National Center for State Courts, *Judicial Security Update* (2024), *supra* ("Chief Judge Blackburne-Rigsby of DC: 'A safe and secure judiciary is vital to upholding the rule of law and ensuring that all judges are well-positioned to make fair and impartial rulings, and that their decisions cannot be influenced or changed by any threats, intimidation, or retaliation.'"); *id.* ("Chief Justice Fader of Maryland: 'While judges have always lived with a certain level of risk, we have never experienced risk on the scale that we currently see today. We are facing an entirely new threat environment that drives to the very heart of the rule of law and the fair administration of justice under law.'). Likewise, a bipartisan set of state attorneys general, in advocating for the federal analog to Daniel's Law, specifically highlighted that "[a]n independent judiciary is a foundational principle of our American government, and judges cannot fulfill their constitutional role while they, and those close to them, are targeted for judicial work." *See* Mark Brnovich & Gurbir S. Grewal, *Congress must pass Daniel's Law*

16

*to protect federal judges*, Roll Call (July 16, 2021), https://rollcall.com/2021/07/16/congress-must-pass-daniels-law-to-protect-federal-judges/.

The independence and effective operation of the judicial branch depends on the safety and security of its proceedings and participants. If judges, law enforcement officers, or prosecutors, among others, were regularly threatened, injured, and/or killed at home due to the proliferation of sensitive PII, aside from being a manifest tragedy, it would also undermine the vital work of the judiciary, imperil objective decision-making, and potentially deter individuals from becoming judges, prosecutors, or law enforcement officers in the first place. In the long run, Chief Justice Michael Boggs of Georgia explained, "[t]hreats and attacks on judges can also lead to continued and increased judicial threats and attacks. When people attempt to harm or kill a judge or their family member because of their position and the work they do, this emboldens others to do so as well." National Center for State Courts, *Judicial Security Update* (2024), *supra.* The New Jersey state legislature was right to recognize these vital systemic interests in crafting Daniel's Law.

### C. Daniel's Law places a generally modest regulatory burden on commercial data brokers.

In service of the compelling interests outlined above, Daniel's Law establishes sensible regulatory requirements for the most likely suppliers of sensitive PII: commercial data brokers.

As a practical matter, complying with statutes like Daniel's Law is relatively straightforward: when requested by a judge or other covered person, the data broker must simply remove the relevant data in a prompt manner – or face risk of a claim. *See generally* N.J.S.A. 2C:20-31.1(c) and N.J.S.A. 56:8-166.1(a)(2). As a practical matter, in the mine run of cases,[2] Daniel's Law imposes a manageable compliance obligation upon an enormous and increasingly sophisticated industry. *See, e.g.*, Press Release, *Data Brokers Market Estimated to Reach US$ 462.4 billion by 2031*, TMR Report, GlobeNewswire (Aug. 1, 2022), https://www.globenewswire.com/news-release/2022/08/01/2489563/0/en/Data-Brokers-Market-Estimated-to-Reach-US-462-4-billion-by-2031-TMR-Report.html; Hitachi Security Systems, *What is a data broker and how do they impact privacy* (2024), https://hitachi-systems-security.com/what-is-a-data-broker-and-how-do-they-impact-privacy/ ("Although some brokers may be individual actors, data brokerage is a mature industry mostly comprised of big players").

These sorts of regulations on commercial data brokers are increasingly commonplace and common sense – for good reason. "Most states now have laws

---

[2] From time to time, exceptional cases may prompt courts to consider unique applications of Daniel's Law that give rise to situation-specific First Amendment issues. As the District Court rightly recognized, "[f]f any of these hypotheticals ever comes to pass, the defendants' remedy is to challenge Daniel's law as unconstitutional as applied." JA109-110 (citing *United States v. Hansen*, 599 U.S. 762, 784-85 (2023)). If need be, courts are also well-equipped to fashion an appropriately tailored remedy (e.g., a narrowing construction of the statute). But those are edge cases that are far afield from the basic operation of Daniel's Law in this case or as it typically arises for *amici* and its members.

prohibiting governmental entities from disclosing the home addresses of at least some public employees, with judges among the most commonly protected. . . ." David Lieb, *States shield addresses of judges, workers after threats*, Associated Press (May 14, 2023), https://apnews.com/article/sunshine-week-secrecy-home-address-26306e390694f6ab9c95f978f4e4c207 (citing Jodie Gil, Robert A. Smith, Jr., & Kauther S. Badr, *Home Address Exemptions in State FOI Laws*, 4 J. Civic Info. 4, 1-45 (2022)). Moreover, "[a] study panel of the Uniform Law Commission, a nonprofit organization that drafts potential legislation for state lawmakers, plans to recommend [] that a common policy be drafted to exclude judges' home addresses and certain personal information from public-record disclosures. . . ." *Id. See also* Uniform Law Commission, Drafting Committee on Redaction of Personal Information from Public Records Committee (June 18, 2024) (pausing additional review of ULC's draft law in order to monitor litigation in New Jersey, i.e., the case at bar).

The wisdom of removing sensitive PII for certain public officials also reflects historical practice. Indeed, in the heyday of printed phone directories (e.g., Yellow Pages and White Pages), law enforcement officers and judges commonly removed their home address or home phone number from sale or distribution in light of the security risks. *See, e.g.*, Dave Smith, *Give Me an Unlisted Number, Please*, Police Magazine (Aug. 12, 2016), https://www.policemag.com/patrol/article/15346679/

give-me-an-unlisted-number-please ("Identity control has been a topic for decades in the law enforcement profession. . . . In the old days . . . phone company would not publish your information [upon request]"). This remains a best practice for members of the judiciary to this day. *See, e.g.,* The Chicago Bar Association and The John Marshall Law School Center for Information Technology and Privacy Law, *Protecting Your Personal Privacy: A Self-Help Guide for Judges and Their Families* at 11 (2006), https://www.supremecourt.ohio.gov/docs/Boards/OJFN/resources/Privacy.pdf ("You can also unlist your name, address and phone number from the phone book").

Amici have not found any published case indicating that removing such sensitive data was considered to pose a First Amendment problem at the time – let alone a facial constitutional violation across all circumstances. To the contrary, before the Internet era, courts in other jurisdictions recognized the compelling interest that law enforcement officials have in their home addresses. For example, the Sixth Circuit held that releasing "addresses, phone numbers" and other sensitive information belonging to undercover police officers implicated both their fundamental liberty interests (i.e., increased security risks) and also the constitutional right to privacy. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1063-1067 (6th Cir.1998). Therefore, the court concluded, the data should not have been publicly disclosed, since "under the[] circumstances [it] create[d] a constitutionally

20

cognizable 'special danger,'' *id.* at 1067. *See also Smith v. Dayton*, 68 F.Supp.2d 911, 918 (S.D. Ohio 1999) (holding that a city's release to a newspaper of an address, unlisted phone number, and other identifying information of a police officer violated his constitutional right to privacy). These commonsense precepts should apply equally to the commercial brokering and use of sensitive private data in the Internet era.

Despite some over-the-top rhetoric by Appellants, complying with Daniel's Law is not the end of the world — nor does it spell the demise of the Internet. But for judges and members of the law enforcement community it can actually make a world of difference – since reselling private data like their home addresses can exacerbate an increasingly dangerous threat landscape and have severe consequences for the safety and well-being of *amici*'s members. At bottom, Daniel's Law serves a compelling interest for public officials like *amici*'s members and has a modest regulatory impact upon a $400 billion industry. Historical practice, governmental security assessments, and common sense all point in the same direction.

## CONCLUSION

This Court should affirm the District Court's denial of Appellants' motion to dismiss.

May 19, 2025                                    Respectfully submitted,

                                               /s/ Rebekah Conroy
                                               Rebekah Conroy
                                               NJ Bar No. 028932003
                                               STONE CONROY LLC
                                               25A Hanover Road, Suite 301
                                               Florham Park, NJ 07932
                                               (973) 400-4181
                                               rconroy@stoneconroy.com

                                               John Paul Schnapper-Casteras
                                               NY Bar. No. 4855425
                                               SCHNAPPER-CASTERAS PLLC
                                               745 Fifth Avenue, Suite 500
                                               New York, NY 10151
                                               (202) 630-3644
                                               jpsc@schnappercasteras.com

                                               *Counsel for Amici Curiae*

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am counsel of record and a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.


May 19, 2025                               */s/ Rebekah Conroy*
                                           Rebekah Conroy
                                           *Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 4,622 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

3. This brief complies with the requirements of Third Circuit L.A.R. 31.1(c) because the text of the electronic brief is identical to that of the paper copies served on the Court for delivery via USPS.

4. This brief complies with the requirements of Third Circuit L.A.R. 31.1(c) because a virus scan was performed on the brief using NordVPN File Checker (2025 online version) and no virus was detected.


May 19, 2025                                */s/ Rebekah Conroy*
                                            Rebekah Conroy
                                            *Counsel for Amici Curiae*

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

May 19, 2025                          */s/ Rebekah Conroy*
                                     Rebekah Conroy
                                     *Counsel for Amici Curiae*