# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>WE INFORM, LLC, et al. | : | CIVIL ACTION<br><br><br><br>NO. 24-4037 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>INFOMATICS, LLC, et al. | : | CIVIL ACTION<br><br><br><br>NO. 24-4041 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>THE PEOPLE SEARCHERS, LLC, et al. | : | CIVIL ACTION<br><br><br><br>NO. 24-4045 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>DM GROUP, INC., et al. | : | CIVIL ACTION<br><br><br><br>NO. 24-4075 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>DELUXE CORP., et al. | : | CIVIL ACTION<br><br><br><br>NO. 24-4080 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>DELVEPOINT, LLC, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4096 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>QUANTARIUM ALLIANCE, LLC, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4098 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>YARDI SYSTEMS, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4103 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>DIGITAL SAFETY PRODUCTS, LLC | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4141 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>CIVIL DATA RESEARCH, LLC, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4143 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SCALABLE COMMERCE, LLC, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4160 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>LABELS & LISTS, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4174 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>INNOVIS DATA SOLUTIONS, INC., et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4176 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ACCURATE APPEND, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4178 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ZILLOW, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4256 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>EQUIMINE, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4261 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>THOMSON REUTERS CORP., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4269 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>MELISSA DATA CORP., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4292 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>RESTORATION OF AMERICA, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4324 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>i360, LLC, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4345 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ACCUZIP, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4383 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SYNAPTIX TECHNOLOGY, LLC, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4385 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>JOY ROCKWELL ENTERPRISES, INC., et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4389 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>E-MERGES.COM, INC. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4434 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>NUWBER, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4609 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| ROCKETREACH LLC, et al. | : | NO. 24-4664 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| PROPERTYRADAR, INC., et al. | : | NO. 24-5600 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| THE ALESCO GROUP, L.L.C., et al. | : | NO. 24-5656 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| SEARCHBUG, INC., et al. | : | NO. 24-5658 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| AMERILIST, INC., et al. | : | NO. 24-5775 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| US DATA CORP., et al. | : | NO. 24-7324 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| SMARTY, LLC, et al. | : | NO. 24-8075 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| COMPACT INFORMATION SYSTEMS, LLC, et al. | : | NO. 24-8451 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| DARKOWL, LLC, et al. | : | NO. 24-10600 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| SPY DIALER, INC., et al. | : | NO. 24-11023 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>INNOVATIVE WEB SOLUTIONS, LLC, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 25-1535 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>PUBLICNSA, LLC, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 25-5989 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>REDX LLC, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 25-6863 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>FREEDOMSOFT303, LLC, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 25-9224 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>STERLING DATA COMPANY LLC, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 25-9963 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AGR MARKETING SOLUTIONS, LLC, et al. | : | NO. 25-12137 |

ORDER

AND NOW, this 25th day of August 2026, it is hereby ORDERED that the August 14, 2026 letter request that this court stay these actions pending a decision by the Court of Appeals for the Third Circuit in Atlas Data Privacy Corporation v. We Inform, LLC, Case No. 25-1555, is DENIED.

BY THE COURT:

/s/ Harvey Bartle III
J.

# Exhibit 2

Troutman Pepper Locke LLP
104 Carnegie Center, Suite 203
Princeton, NJ 08540

troutman.com

**Angelo A. Stio III**
D 609.951.4125
angelo.stio@troutman.com

August 14, 2026

**Via ECF**

Honorable Harvey Bartle III, U.S.D.J.
United States District Court for the
Eastern District of Pennsylvania
16614 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

**Re: Innovis Data Solutions, Inc., Civil Action No. 1:24-cv-04176**
**DM Group, Inc., Civil Action No. 1:24-cv-4075**
**PropertyRadar, Inc., Civil Action No. 1:24-cv-5600**
**Deluxe Corp., Civil Action No. 1:24-cv-04080**
**RocketReach LLC, Civil Action No. 1:24-cv-04664**

Dear Judge Bartle:

This firm represents defendants Innovis Data Solutions, Inc., DM Group, Inc., PropertyRadar Inc., Deluxe Corp., and RocketReach LLC (the "Troutman Clients") in the above-referenced actions. We write, with the consent of other Defendants that have Daniel's Law matters pending in the District of New Jersey[1] in order to provide the Court with a copy of the New Jersey Supreme Court's August 12, 2026 opinion on the reformulated certified question the New Jersey Supreme Court addressed in response to the Third Circuit's Petition and Order to Certify Questions of State Law dated September 3, 2025 (the "Opinion"). The Opinion is attached as **Exhibit B**. The question addressed by the New Jersey Supreme Court was "What mental state, if any, is required to establish liability under Daniel's Law, *N.J.S.A.* 68:8-166.1?".

The New Jersey Supreme Court held, among other things: (i) "Daniel's Law does not contain a mental state requirement for actual damages liability under *N.J.S.A.* 56:8-166.1(c)(1)," (Opinion at 7); (ii) "Daniel's Law's plain text reflects that the Legislature intended no mental state requirement for actual damages;" (Opinion at 29); and (iii) "Given that Daniel's Law does not resemble the tort of public disclosure of private facts or any other invasion of privacy tort, we find it inappropriate to import tort law standards into Daniel's Law." (Opinion at 40). The Opinion also explained that the "notice requirement says nothing of the mental state that must be established for liability to attach," and noted this Court's concern that "there are some

[1] A list of the Defendants and case numbers is attached as **Exhibit A**.

circumstances where defendants would be held liable even though it could be 'impossible' for them to comply with the law, like in the event of a natural disaster." (Opinion at 40).

In light of that ruling, we respectfully request that the Court stay all Daniel's Law matter before it as the Third Circuit considers whether the Law is unconstitutional.

We believe a stay is appropriate because the traditional factors that weigh in favor of the entry of a stay are present here.[2] First, the New Jersey Supreme Court's opinion that *N.J.S.A.* 56:8-166.1(c)(1) contains no mens rea requirement demonstrates there is a strong showing of likelihood of success on the Third Circuit appeal. While the Third Circuit still needs to decide the appeal, the Third Circuit has already noted that "if portions of Daniel's Law call for strict liability, that may mean that they fail whichever tier of scrutiny applied." *See Atlas Data Privacy v. We Inform, LLC, et al.*, Case No. 25-1555, Dkt. 103. Indeed, this Court previously recognized that if Daniel's Law imposes strict liability, it would be unconstitutional. *Atlas Data Privacy v. We Inform, LLC*, 758 F. Supp. 3d 322, 340 (D.N.J. 2024). Thus, all of Plaintiffs' claims are likely to fail.

Second, Defendants are likely to suffer irreparable harm absent a stay. Absent a stay, forcing Defendants to expend significant resources related to discovery with respect to claims premised on a statute that violates the First Amendment constitutes irreparable harm. *See e.g., Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (recognizing the loss of "First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for purposes of granting a preliminary injunction). Defendants also will be irreparably harmed if they are forced to produce sensitive business information in discovery, including proprietary information about their databases and algorithms, when there is uncertainty as to what cases, if any, exist. *See, e.g. Nat'l Reprographics, Inc. v. Strom,* 621 F. Supp. 2d 204, 229 (D.N.J. 2009) (finding potential disclosure of plaintiff's information to competitor sufficient to demonstrate irreparable harm, as "[t]here is no question that using [plaintiff's] confidential information and proprietary information for the benefit of its competitors could potentially destroy [plaintiff's] business."). Indeed, *no* level of discovery is appropriate given that the legislative scheme underlying Daniel's Law now sits on such a fragile foundation.

Third, the entry of a stay does not harm the Plaintiffs. A stay benefits Plaintiffs as well as it prevents extensive, expensive and intrusive discovery associated with cases that may not exist in their present form.

Finally, the public interest favors a stay. Judicial resources associated with these cases, which may no longer exist, can be devoted to other matters that require attention and may be more pressing.

---

[2] The traditional factors for a stay are (1) whether Defendants have made a strong showing of the likelihood of success on the merits; (2) will Defendants suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest. *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015) (citing *Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991)).

troutman pepper locke

In light of the above developments Defendants respectfully request that the Court stay the Daniel's Law matters, including the deadlines set forth in the Court's July 30, 2026 Order. *See, e.g.*, *Atlas v. DM Group*, Dkt. 127.

Thank you for the Court's consideration of this renewed stay request. Should the Court wish to conduct a conference to discuss this matter further, we will make ourselves available.

Respectfully submitted,

*/s/ Angelo A. Stio III*

Angelo A. Stio III

Enclosures

cc: All Counsel of Record (Via ECF)

# EXHIBIT A

**DISTRICT COURT OF NEW JERSEY -**
**DEFENDANTS JOINING IN LETTER REQUEST FOR STAY**

| Case Name | Civil Action No. |
|---|---|
| Atlas Data Privacy v. We Inform, LLC, et al. | 1:24-cv-4037 |
| Atlas Data Privacy v. Infomatics, LLC, et al. | 1:24-cv-4041 |
| Atlas Data Privacy v. The People Searchers, LLC, et al. | 1:24-cv-4045 |
| Atlas Data Privacy v. DM Group, Inc., et al. | 1:24-cv-4075 |
| Atlas Data Privacy v. Deluxe Corp., et al. | 1:24-cv-4080 |
| Atlas Data Privacy v. Delvepoint, LLC, et al. | 1:24-cv-4096 |
| Atlas Data Privacy v. Quantarium Alliance, LLC, et al. | 1:24-cv-4098 |
| Atlas Data Privacy v. Yardi Systems, Inc., et al. | 1:24-cv-4103 |
| Atlas Data Privacy v. Digital Safety Products, LLC | 1:24-cv-4141 |
| Atlas Data Privacy v. Civil Data Research, LLC, et al. | 1:24-cv-4143 |
| Atlas Data Privacy v. Scalable Commerce, LLC, et al. | 1:24-cv-4160 |
| Atlas Data Privacy v. Labels & Lists, Inc., et al. | 1:24-cv-4174 |
| Atlas Data Privacy v. Innovis Data Solutions Inc., et al. | 1:24-cv-4176 |
| Atlas Data Privacy v. Accurate Append, Inc., et al. | 1:24-cv-4178 |
| Atlas Data Privacy v. Zillow, Inc., et al. | 1:24-cv-4256 |
| Atlas Data Privacy v. Equimine, Inc., et al. | 1:24-cv-4261 |
| Atlas Data Privacy v. Thomson Reuters Corp., et al. | 1:24-cv-4269 |
| Atlas Data Privacy v. Melissa Data Corp., et al. | 1:24-cv-4292 |
| Atlas Data Privacy v. Restoration of America, et al. | 1:24-cv-4324 |
| Atlas Data Privacy v. i360, LLC, et al. | 1:24-cv-4345 |
| Atlas Data Privacy v. Accuzip, Inc., et al. | 1:24-cv-4383 |
| Atlas Data Privacy v. Synaptix Technology, LLC, et al. | 1:24-cv-4385 |
| Atlas Data Privacy v. Joy Rockwell Enterprises, Inc., et al. | 1:24-cv-4389 |
| Atlas Data Privacy v. E-Merges.com, Inc. | 1:24-cv-4434 |

| | |
|---|---|
| Atlas Data Privacy v. Nuwber, Inc., et al. | 1:24-cv-4609 |
| Atlas Data Privacy v. RocketReach LLC, et al. | 1:24-cv-4664 |
| Atlas Data Privacy v. PropertyRadar, Inc., et al. | 1:24-cv-5600 |
| Atlas Data Privacy v. The Alesco Group, L.L.C. | 1:24-cv-5656 |
| Atlas Data Privacy v. Searchbug, Inc., et al. | 1:24-cv-5658 |
| Atlas Data Privacy v. Amerilist, Inc., et al. | 1:24-cv-5775 |
| Atlas Data Privacy v. US Data Corp., et al. | 1:24-cv-7324 |
| Atlas Data Privacy v. Smarty, LLC, et al. | 1:24-cv-8075 |
| Atlas Data Privacy v. Compact Information Systems, LLC, et al. | 1:24-cv-8451 |
| Atlas Data Privacy v. Darkowl, LLC, et al. | 1:24-cv-10600 |
| Atlas Data Privacy v. Spy Dialer, Inc., et al. | 1:24-cv-11023 |
| Atlas Data Privacy v. Innovative Web Solutions, LLC, et al. | 1:25-cv-1535 |
| Atlas Data Privacy v. PublicNSA, LLC, et al. | 1:25-cv-5989 |
| Atlas Data Privacy v. REDX LLC, et al. | 1:25-cv-6863 |
| Atlas Data Privacy v. Freedomsoft303, LLC, et al. | 1:25-cv-9224 |
| Atlas Data Privacy v. Sterling Data Company, LLC, et al. | 1:25-cv-9963 |
| Atlas Data Privacy v. AGR Marketing Solutions, LLC, et al. | 1:25-cv-12137 |

# EXHIBIT B

SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Atlas Data Privacy Corp. v. We Inform, LLC (A-8-25) (091145)**

**Argued March 17, 2026 -- Decided August 12, 2026**

**JUSTICE PIERRE-LOUIS, writing for a unanimous Court.**

This case comes before the Court on a certified question of law from the Third Circuit, reformulated and accepted by the Court as: What mental state, if any, is required to establish liability under Daniel's Law, N.J.S.A. 56:8-166.1?

Plaintiffs are Atlas Data Privacy Corporation (Atlas), which offers an online service that those covered under Daniel's Law can use to send messages to entities in possession of their protected information, as well as individually named police and correctional officers. Defendants occupy a variety of industries and, according to plaintiffs, include data aggregators and brokers, real estate businesses, and direct-mailing and/or marketing companies. Plaintiffs assert that defendants, in violation of Daniel's Law, continued to disclose the addresses and/or phone numbers of the individual plaintiffs and/or covered persons who assigned their claims to Atlas after receiving notices to cease disclosure.

Defendants filed motions to dismiss the cases on the ground that Daniel's Law is facially unconstitutional. The district court denied defendants' motions. 758 F. Supp. 3d 322, 341-42 (D.N.J. 2024). As relevant here, the court reasoned that N.J.S.A. 56:8-166.1(c)(1) does not explicitly state what standard of liability applies, but (1) a strict liability standard in this context would likely be unconstitutional, and (2) New Jersey law requires statutes to be construed to conform to the Constitution if reasonably susceptible to a constitutional construction. Id. at 340-41. The court determined that N.J.S.A. 56:8-166.1(c)(1) is "reasonably susceptible to a construction with a negligence standard of liability" because it creates a cause of action resembling "the common law tort of invasion of privacy of the intimate details of a person's life," which, the court determined, has a negligence standard. Id. at 341. The court also reasoned that a strict liability standard could produce "absurd results" by imposing actual damages on an entity even if circumstances like a natural disaster caused it to miss the take-down deadline. Id. at 340-41.

Defendants appealed, and the Third Circuit petitioned the Court to determine the mental state, if any, that the statute requires.

**HELD:** Daniel's Law does not contain a mental state requirement for actual damages liability under N.J.S.A. 56:8-166.1(c)(1).

1. If a statute is susceptible to two reasonable interpretations, one constitutional and one not, the Court assumes that the Legislature would want the statute to be construed in the way that conforms to the Constitution. But rewriting a statute exceeds the scope of judicial authority. In State v. Pomianek, the Court reversed the judgment of the Appellate Division after finding that the appellate court "rewrote" N.J.S.A. 2C:16-1(a)(3) "to impose a state-of-mind requirement" and, in doing so, "reconfigured subsection (a)(3) to read as a mirror image of subsection (a)(1)" of the same statute. 221 N.J. 66, 70, 91 (2015). The Court held that "the presence of mens rea elements in subsections (a)(1) and (a)(2)" of the statute revealed that "[t]he Legislature pointedly decided not to include such an element in subsection (a)(3)." Id. at 90. The Court further determined that the Appellate Division, in rewriting subsection (a)(3), "performed not minor judicial surgery to save a statutory provision, but a judicial transplant," and rendered the statute "redundant." Id. at 91. The Court then struck subsection (a)(3) as unconstitutional. Ibid. (pp. 17-18)

2. The Court reviews the history and relevant provisions of Daniel's Law, enacted in November 2020 in response to the tragic death of Daniel Anderl, the son of United States District Court Judge Esther Salas. Daniel's Law amended several existing provisions of the New Jersey Criminal and Civil Codes and added new statutory sections. The Court reviews in detail the legislative history of the enactment of, and subsequent amendments to, Daniel's Law. (pp. 18-27)

3. N.J.S.A. 56:8-166.1 states that when a person, business, or association violates Section 166.1(a), they "shall be liable," N.J.S.A. 56:8-166.1(b), and the court "shall award . . . actual damages . . . for each violation of [the] act," id. at (c)(1). Neither Section 166.1(c)(1) nor the other subsections in Section 166.1 require a mental state for the award of actual damages under Section 166.1(c)(1). Notably, however, the very next subsection of the statute, Section 166.1(c)(2), expressly includes the mental state requirement of "willful or reckless disregard of the law" for the award of punitive damages. When the Legislature includes limiting language in one part of a statute, but leaves it out of another section in which the limit could have been included, the Court infers that the omission was intentional. The Legislature included a mental state in Section 166.1(c)(2); the exclusion of a mental state requirement in (c)(1) is thus significant. The requirement of purposeful or reckless conduct in Daniel's Law's criminal provision, N.J.S.A. 2C:20-31.1(b), also shows that the Legislature was deliberate in adding mental state requirements in portions of the statute where it intended to do so. The same is true for the prohibition against government agencies "knowingly" posting private information. See N.J.S.A. 47:1-17. Daniel's Law's plain text reflects that the Legislature intended no mental state requirement for actual damages. (pp. 28-29)

4. The history of Daniel's Law amendments provides further insight into the Legislature's intent. The Legislature included a mental state requirement in the 2020 version of N.J.S.A. 56:8-166.1 regarding actual damages but deleted that language in 2022. That change implies a purposeful alteration in the substance of the law and suggests that the Legislature intended for Daniel's Law to require no specific mental state for the imposition of actual damages. The 2022 amendments also added a 10-day timeframe for compliance with Daniel's Law after notification from an authorized person. Contrary to the Attorney General's argument, nothing in the language of N.J.S.A. 56:8-166.1 indicates that the notice requirement and the compliance window are a proxy for a mental state of negligence. The lack of clear language in Section 166.1 indicating a mental state, in conjunction with the Legislature's removal of the "reasonable person" language from a prior iteration of the statute, suggests a legislative intent to omit a mental state requirement for plaintiffs seeking actual damages. (pp. 29-32)

5. In this case, the district court determined that Daniel's Law "is a privacy statute analogous to the common law tort of" public disclosure of private facts. 758 F. Supp. 3d at 341. The district court noted that "recovery for this tort requires proof of 'the unreasonable publication of private facts'" -- a requirement that the district court called "a negligence test." Ibid. Plaintiffs and the Attorney General agree that that the background principles of common law torts support reading a mental state requirement into Daniel's Law but disagree as the to the mental state that should be read in. The Court reviews the tort of public disclosure of private facts, which is one of four privacy torts. The Court does not agree that recourse to tort law is appropriate here. First, there is no legislative history to support the argument that the Legislature modeled Daniel's Law after the public disclosure of private facts tort; nothing in the amendments to the law or legislative statements suggests any connection to the tort. Second, Daniel's Law's plain language provides no indication that it is codifying the tort of public disclosure of private facts. Daniel's Law's language does not reflect the three elements of that tort, nor does it incorporate any action at common law or use any words invoking any particular common law definition. The Court finds it inappropriate to import tort law standards into Daniel's Law. (pp. 32-40)

6. Noting the argument that it should perform judicial surgery and construe Daniel's Law to avoid constitutional infirmity, the Court explains that the constitutionality of Daniel's Law is not before it. Here, the Court is only answering a specific certified question. Whether Daniel's Law is constitutional -- regardless of what the Court has decided today -- is for the Third Circuit to determine. (pp. 40-41)

**JUSTICES WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion. CHIEF JUSTICE RABNER and JUSTICE PATTERSON did not participate.**

SUPREME COURT OF NEW JERSEY

A-8 September Term 2025

091145

---

Atlas Data Privacy Corp.; Jane Doe 1; Jane Doe 2; Edwin Maldonado; Police Officer Scott Maloney; Justyna Maloney; Patrick Colligan; Peter Andreyev; William Sullivan,

Plaintiffs-Respondents,

Attorney General of New Jersey,

Intervenor-Respondent,

v.

We Inform, LLC; Infomatics, LLC; The People Searchers, LLC; DM Group, Inc.; Deluxe Corp.; Quantarium Alliance, LLC; Quantarium Group, LLC; Yardi Systems, Inc.; Digital Safety Products, LLC; Civil Data Research, LLC; Scalable Commerce, LLC; National Data Analytics, LLC; Labels & Lists, Inc.; Innovis Data Solutions, Inc.; Accurate Append, Inc.; Zillow, Inc.; Zillow Group, Inc.; Equimine, Inc.; Thomson Reuters Corp.; Thomson Reuters Holdings, Inc.; Thomson Reuters Canada Limited; Thomson Reuters Applications, Inc.; Thomson Reuters Enterprise Centre GmbH; West Publishing Corp.; Melissa Data Corp.; Restoration of America; Voter Reference Foundation, LLC; i360, LLC; GoHunt, LLC; GoHunt Management Holdings, LLC; GoHunt Management Holdings II, LLC; AccuZip, Inc.; Synaptix Technology, LLC; VoterRecords.com; Joy Rockwell Enterprises, Inc.; Fortnoff Financial, LLC; E-Merges.com, Inc.; Nuwber, Inc.; RocketReach,

LLC; Belles Camp Communications, Inc.; PropertyRadar, Inc.; The Alesco Group, LLC; SearchBug, Inc.; Amerilist, Inc.; U.S. Data Corp.; Smarty, LLC; Compact Information Systems, LLC; DarkOwl, LLC; Spy Dialer, Inc.; Lighthouse List Co., LLC; First Direct, Inc.; Greenflight Venture Corp.,

Defendants-Appellants.

---

On certification of question of law from the United States Court of Appeals for the Third Circuit.

---

| Argued | Decided |
|---|---|
| March 17, 2026 | August 12, 2026 |

---

Michael Berry argued the cause for appellants (Ballard Spahr, attorneys for appellants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation; Michael Berry, Marcel S. Pratt, and Anna Kaul a member of the New York and Minnesota bars, admitted pro hac vice, on the joint briefs).

Troutman Pepper Locke, attorneys for appellants RocketReach LLC, Deluxe Corp., PropertyRadar Inc., DM Group Inc., and Innovis Data Solutions, Inc. (Angelo A. Stio, III, Melissa A. Chuderewicz, and Stephanie L. Jonaitis, on the joint briefs).

Quinn Emanuel Urquhart & Sullivan, attorneys for appellant Yardi Systems, Inc. (Anthony J. Staltari, Derek L. Shaffer a member of the California, District of Columbia, and New York bars, admitted pro hac vice, and Xi ("Tracy") Gao, Viola Trebicka, John Wall Baumann, and Ella Hallwass members of the California bar, admitted pro hac vice, on the joint briefs).

Lomurro Munson, attorneys for appellants Digital Safety Products, LLC, Civil Data Research, LLC, Scalable

Commerce, LLC, and National Data Analytics, LLC (Eric H. Lubin, on the joint briefs).

Cooper, attorneys for appellant Labels & Lists, Inc. (Ryan J. Cooper and Renier Pierantoni, on the joint briefs).

Buchanan Ingersoll & Rooney, attorneys for appellants Zillow, Inc. and Zillow Group, Inc. (Samantha L. Southall and Krista A. Rose, on the joint briefs).

Constangy, Brooks, Smith & Prophete, attorneys for appellants Accurate Append, Inc., Restoration of America, Inc., and Voter Reference Foundation, LLC (John E. MacDonald, on the joint briefs).

FBT Gibbons, attorneys for appellant Equimine, Inc. (Frederick W. Alworth, Joshua R. Elias, and Kevin R. Reich, on the joint briefs).

Gordon Rees Scully Mansukhani, attorneys for appellants Quantarium Alliance, LLC and Quantarium Group, LLC, and Nuwber, Inc. (Clair E. Wischusen, on the joint briefs).

Riker Danzig, attorneys for appellant Melissa Data Corp. (Michael P. O'Mullan and Omar Marouf, on the joint briefs).

Law Offices of Jared M. Wichnovitz, attorneys for appellant Greenflight Venture Corp. (Jared M. Wichnovitz, on the joint briefs).

Stinson, attorneys for appellant i360, LLC (Richard J.L. Lomuscio, on the joint briefs).

Greenberg Traurig, attorneys for appellants GoHunt, LLC, GoHunt Management, Holdings, LLC, and GoHunt Management Holdings II, LLC (David E. Sellinger and Aaron Van Nostrand, on the joint briefs).

Lewis Brisbois Bisgaard & Smith, attorneys for appellant Synaptix Technology, LLC (Matthew S. AhKao and Brian C. Deeney, on the joint briefs).

Greenspoon Marder, attorneys for appellants AccuZip, Inc., Joy Rockwell Enterprises, Inc., The Alesco Group, LLC, Searchbug, Inc., Amerilist, Inc., U.S. Data Corp., and DarkOwl, LLC (Kelly M. Purcaro and Kory Ann Ferro, on the joint briefs).

Lowenstein Sandler, attorneys for appellant AccuZip, Inc. (Jennifer Fiorica Delgado, on the joint briefs).

Carmagnola & Ritardi, attorneys for appellant E-Merges.com, Inc. (Steven F. Ritardi and Sean P. Joyce, on the joint briefs).

RKW Law Group, attorneys for appellant E-Merges.com, Inc. (H. Mark Stichel a member of the Maryland and District of Columbia bars, admitted pro hac vice, on the joint briefs).

Blank Rome, attorneys for appellant Belles Camp Communications, Inc. (Stephen M. Orlofsky, Philip N. Yannella, and Thomas P. Cialino, on the joint briefs).

Manatt, Phelps & Phillips, attorneys for appellant Smarty, LLC (Kenneth D. Friedman, on the joint briefs).

Raj Ferber, attorneys for appellant DarkOwl, LLC (Kiran Raj a member of the District of Columbia and Georgia bars, admitted pro hac vice, on the joint briefs).

Wood, Smith, Henning & Berman, attorneys for appellants Compact Information Systems, LLC, Accudata Integrated Marketing, Inc., AlumniFinder, ASL Marketing, Inc., College Bound Selection Service, Deepsync Labs, Homedata, and Student Research Group (Jared K. Levy, on the joint briefs).

Kaufman Dolowich, attorneys for appellant Spy Dialer, Inc. (Christopher Nucifora and Timothy M. Ortolani, on the joint briefs).

O'Toole Scrivo, attorneys for appellant Lighthouse List Co., LLC (James DiGiulio, on the joint briefs).

Freeman Mathis & Gary, attorneys for appellant First Direct, Inc. (William Wendell Cheney, III, and Andrew W. Sheppard, on the joint briefs).

Eric M. Palmer a member of the Florida bar, admitted pro hac vice, argued the cause for respondents (PEM Law, Boies Schiller Flexner, and Bird Marella Rhow Lincenberg Drooks Nessim, attorneys; Rajiv D. Parikh, Kathleen Barnett Einhorn, Jessica A. Merejo, Eric M. Palmer, Adam Shaw a member of the New York bar, admitted pro hac vice, Mark C. Mao and Julia Bront members of the California bar, admitted pro hac vice, Ekwan E. Rhow, Greg T. Nolan, and Bill L. Clawges members of the California bar, admitted pro hac vice, and Elliot C. Harvey Schatmeier a member of the California and New York bars, admitted pro hac vice, on the briefs).

Michael L. Zuckerman, Deputy Solicitor General, argued the cause for intervenor (Jennifer Davenport, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, Michael L. Zuckerman, and Kashif T. Chand, Assistant Attorney General, of counsel and on the briefs, and Liza B. Fleming, Marie V. Cepeda Mekosh, Kathleen C. Riley, Nikolas D. Pham, and September R. McCarthy, Deputy Attorneys General, on the briefs).

Ezra D. Rosenberg argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Ezra D. Rosenberg, Liza Weisberg, and Jeanne LoCicero, on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

This case comes before the Court on a certified question of law from the United States Court of Appeals for the Third Circuit pursuant to Rule 2:12A-3. The question involves Daniel's Law, which aims to protect certain public officials in the justice system by shielding their home addresses and phone numbers from disclosure. Specifically, the Third Circuit asks that we review N.J.S.A. 56:8-166.1, which provides that an "authorized person" can send notice to a private entity requesting that it cease disclosing the personal information of a specific person covered under the law. If recipients of the notice fail to cease disclosure within 10 business days of receiving notice, they "shall be liable" and the "covered person" or the covered person's assignee can sue. Daniel's Law provides that the trial court "shall award" actual damages of at least $1,000 for each violation of the law.

In a matter before the Third Circuit, defendants, who were sued for allegedly continuing to disclose the personal information of covered persons in violation of Daniel's Law, argued that the statute is facially unconstitutional because it does not contain a mental state requirement for actual damages liability. Defendants assert that N.J.S.A. 56:8-166.1 is not properly tailored and risks chilling protected speech. The Third Circuit found that it could not

determine, pursuant to New Jersey law, whether Daniel's Law contains a mental state for actual damages, so it certified two questions to this Court. We reformulated the certified questions into the following question now before the Court: What mental state, if any, is required to establish liability under Daniel's Law, N.J.S.A. 56:8-166.1?

For the reasons that follow, this Court holds that Daniel's Law does not contain a mental state requirement for actual damages liability under Section 166.1(c)(1).

I.

A.

For context, we briefly summarize the underlying facts and procedural history in this matter. We derive this summary mainly from the complaints that plaintiffs filed, along with other filings in the district court.

This case arises out of 40 individual appeals.[1] Plaintiffs are Atlas Data Privacy Corporation (Atlas), Jane Doe 1, Jane Doe 2, Edwin Maldonado, Scott

---

[1] The district court, in its memorandum opinion, addressed only 37 civil actions. Atlas Data Priv. Corp. v. We Inform, LLC, 758 F. Supp. 3d 322, 329 (D.N.J. 2024). Following the release of that opinion, the district court issued orders in four other cases, cited "the reasons previously stated" in We Inform, LLC, 758 F. Supp. 3d 322, and approved the orders for immediate appeal. The Third Circuit considered the four appeals that resulted together with the appeal of the district court's opinion in We Inform, LLC. Separately, following the issuance of the district court's 37-case decision, the parties in one of those 37

Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan.[2] According to plaintiffs, Atlas offers an online service that covered persons can use to send messages to entities in possession of their protected information. Atlas provides its users with the names of "data brokers that may be disclosing [their] personal information" and that it "recommend[s]" that users contact. Atlas then gives users templates for messages requesting that recipients cease disclosing their home address and/or unpublished home telephone number. Users can send these messages through an email service that Atlas operates. According to plaintiffs, Atlas is the assignee of over 19,000 covered persons who used Atlas's platform to send defendants written requests to cease disclosure of their protected information.

The individually named plaintiffs are veteran New Jersey police and correctional officers who allege that they were stalked at their homes or received threats of violence targeted at themselves or their families. Plaintiffs allege that, for at least two of them, individuals who stalked or threatened them discovered their home addresses through online data broker websites.

---

actions stipulated to a dismissal of the matter, and the Third Circuit subsequently entered an order dismissing the related appeal.

[2] Among the 40 appeals before the Third Circuit, some involve only a subset of these individually named plaintiffs.

According to plaintiffs, these individually named plaintiffs are covered persons who did not assign their claims to Atlas.

Plaintiffs filed separate civil actions in Superior Court against individual defendants or small groupings of defendants. Defendants occupy a variety of industries and, according to plaintiffs, include data aggregators and brokers, real estate businesses, and direct-mailing and/or marketing companies. Plaintiffs assert that defendants, in violation of Daniel's Law, continued to disclose the addresses and/or phone numbers of the individual plaintiffs and/or covered persons who assigned their claims to Atlas after receiving notices to cease disclosure. Defendants removed all 40 cases to federal court.

According to the district court, all judges of the District of New Jersey recused themselves from this matter. Atlas Data Priv. Corp. v. We Inform, LLC, 758 F. Supp. 3d 322, 330 (D.N.J. 2024). The Chief Judge of the Court of Appeals for the Third Circuit designated the Honorable Harvey Bartle III of the United States District Court for the Eastern District of Pennsylvania to hear the cases. The Attorney General of New Jersey intervened.

Defendants filed motions to dismiss the cases on the ground that Daniel's Law is facially unconstitutional. The district court denied defendants' motions to dismiss, concluding that Daniel's Law is constitutional. Id. at 341-42. The district court first held that Daniel's Law regulates speech

and that the law is content-based. Id. at 333-35. The court further held that Daniel's Law is a "privacy statute" and determined that the law is not unconstitutional under the three-prong test set forth in Florida Star v. B.J.F., 491 U.S. 524, 536-40 (1989). Id. at 336-39.

The district court then addressed defendants' claims that Daniel's Law is unconstitutional on its face because the actual damages provision is a strict liability statute. Id. at 339. The court held that the actual damages provision of Daniel's Law does not explicitly state what standard of liability applies and noted a strict liability standard in this context would likely be unconstitutional. Id. at 340-41. The district court stated that New Jersey law requires statutes to be construed to conform to the Constitution if reasonably susceptible to a constitutional construction. Ibid. The district court determined that the actual damages provision of Daniel's Law is "reasonably susceptible to a construction with a negligence standard of liability" because it creates a cause of action resembling "the common law tort of invasion of privacy of the intimate details of a person's life," which, the court determined, has a negligence standard. Id. at 341. The court concluded that a negligence standard was reasonable also because, in contrast, a strict liability standard could produce "absurd results" by imposing actual damages on an entity even if circumstances like a natural disaster caused it to miss the take-down

deadline, and a standard of recklessness or higher would be "nonsensical," given that "willful or reckless disregard" is the standard for punitive damages under the statute. Id. at 340-41. Thus, the district court predicted that this Court would construe Daniel's Law's actual damages provision to contain a negligence standard and held that the law is facially constitutional. Id. at 341-42.

B.

Defendants appealed to the Third Circuit, which heard oral argument. Thereafter, the Third Circuit certified two questions to this Court pursuant to Rule 2:12A-3:

> 1. Does Daniel's Law, N.J. Stat. Ann. § 56:8-166.1 (2024), require a mens rea for any of its elements?
>
> 2. If so, what level of mens rea is required for each element?

The Third Circuit observed that the question before it -- whether Daniel's Law is facially constitutional -- could hinge on whether the law requires a mental state for forms of relief other than punitive damages. The court stated that "it is at least possible that Daniel's Law chills speech that it does not cover, which may make parts of it unconstitutional unless one reads some mens rea into the law." Noting that the actual damages, equitable relief, and attorney's fees and costs provisions of Daniel's Law have no explicit mental state requirement, the

Third Circuit stated that some of the statute's language may implicitly call for a mental state. However, the court could not determine whether those provisions of Daniel's Law implicitly require a mental state for liability because it viewed "competing legal principles" in New Jersey jurisprudence to "point in opposite directions." On the one hand, the Third Circuit noted, if a statute can be read in two ways -- one constitutional and one not -- "the New Jersey Supreme Court prefers the constitutional reading." On the other hand, the Third Circuit suggested, this Court recently "disclaim[ed] the power to 'read' into a statute 'a mens rea element that is absent from'" the statute's text. (quoting State v. Pomianek, 221 N.J. 66, 90 (2015)).

Pursuant to Rule 2:12A-2, we reformulated the certified questions into the following question that we accepted: "What mental state, if any, is required to establish liability under Daniel's Law, N.J.S.A. 56:8-166.1?" We granted leave to appear as friend of the court to the American Civil Liberties Union of New Jersey (ACLU).

II.

A.

We summarize the parties' and amicus's arguments only as to the certified question before the Court.

Defendants We Inform, LLC et al. argue that the actual damages provision of Daniel's Law calls for strict liability. Defendants assert that the text of Daniel's Law is clear and contains no mental state requirement for liability to attach. Defendants submit that the Legislature's intent to impose strict liability is evident in that the Legislature (1) included explicit mental state requirements in other provisions of Daniel's Law not at issue in this case; (2) amended the law; and (3) used the same language in the actual damages provision that it has used in other strict liability statutes, specifically the phrase "shall be liable." Defendants argue that this Court cannot read a mental state requirement into the actual damages provision of Daniel's Law because the "constitutional avoidance" doctrine, our approach in State v. Comer, 249 N.J. 359 (2022), and the "Marshall[ v. Klebanov, 188 N.J. 23 (2006),] line of cases" do not apply. Finally, defendants argue that the Legislature, not this Court, must "rewrite Daniel's Law."

B.

Plaintiffs Atlas Data Privacy Corporation et al. argue that the actual damages provision of Daniel's Law does not impose strict liability. Plaintiffs assert that the actual damages cause of action under Daniel's Law "plainly belongs to 'the category of invasion of privacy claims that are grounded in an allegation that defendant improperly disclosed private facts concerning the

plaintiff to a third party.'" (quoting Smith v. Datla, 451 N.J. Super. 82, 102 (App. Div. 2017)). Plaintiffs claim that, as such, the actual damages provision of Daniel's Law "should be interpreted to require proof of the same two fault requirements as common-law disclosure torts:" (1) a "knowing and intentional act of disclosure, re-disclosure, or otherwise making available after the statutory deadline has expired" and (2) "negligent disregard of its duties" under Daniel's Law. (emphasis omitted).[3] Plaintiffs claim that Daniel's Law's text supports this interpretation. They further assert that the law's notification requirement and compliance period reflect the Legislature's intent to "ensure that any individual or entity that can be held liable acted with negligence." Plaintiffs submit that the expressio unius canon and the "shall be liable" language in Daniel's Law do not support defendants' strict liability interpretation.

Intervenor, the Attorney General, submits that N.J.S.A. 56:8-166.1 is best read to require negligence for basic civil liability to attach. The Attorney

[3] In plaintiffs' response to the ACLU's amicus brief, they additionally submit that they have "no objection" to this Court concluding that a mental state requirement "above negligence" is required for Daniel's Law to be constitutional and construing the statute to include such a requirement. Plaintiffs assert that, "in principle," this Court could adopt a standard above ordinary negligence but below recklessness by interpreting Daniel's Law to require that a defendant "(1) acted with gross negligence or (2) knows or has reason to know that a disclosure would violate a covered person's rights." (emphasis omitted).

General argues that Daniel's Law's text and structure reveal that the Legislature intended to impose liability only on entities that, had they acted with reasonable care, could have stopped -- but did not stop -- sharing the information at issue. The Attorney General contends that in amending Daniel's Law, the Legislature intended not to "scrap a negligence requirement, but to retain it via notice and an opportunity to comply, thereby to make it easier for regulated entities to understand their obligations." The Attorney General argues that Daniel's Law is a "modern codification" of the common-law public disclosure of private facts tort because it "fits with, and follows from" background principles of that tort. According to the Attorney General, because the public disclosure of private facts tort contains a negligence standard, Daniel's Law must as well. Additionally, the Attorney General asserts that Daniel's Law is properly read to include an implied defense that a defendant's failure to comply was excused or justified. Finally, the Attorney General submits that, if this Court does not agree that Daniel's Law's actual damages provision contains a negligence standard, interpretive principles "still compel construing the statute to avoid constitutional infirmity."

Amicus curiae ACLU suggests that we hold that Daniel's Law does not include a mental state requirement for basic liability to attach and that we

construe the statute with a mental state requirement "higher than negligence" to avoid constitutional concerns.

III.

A.

A court's ultimate "task in statutory interpretation is to determine and effectuate the Legislature's intent." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009). To determine that intent, courts "look first to the plain language of the statute," McGovern v. Rutgers, 211 N.J. 94, 108 (2012) (quoting Bosland, 197 N.J. at 553), because the "best indicator of [legislative] intent is the statutory language," DiProspero v. Penn, 183 N.J. 477, 492 (2005). "We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (citations omitted).

"If the language is clear, our task is to apply that language to the situation that confronts us." McGovern, 211 N.J. at 108. "When 'the plain language of a statute is ambiguous or open to more than one plausible meaning,' the Court may look to extrinsic evidence such as legislative history in determining legislative intent." Morristown Assocs. v. Grant Oil Co., 220 N.J. 360, 383 (2015) (quoting State v. Marquez, 202 N.J. 485, 500 (2010)). And "a change of language in a statute ordinarily implies a purposeful

alteration in [the] substance of the law." In re Commitment of W.W., 245 N.J. 438, 449 (2021) (alteration in original) (quoting DiProspero, 183 N.J. at 494).

Additionally, "when the Legislature includes limiting language in one part of a statute, but leaves it out of another section in which the limit could have been included, we infer that the omission was intentional." State v. Higginbotham, 257 N.J. 260, 285 (2024) (quoting Ryan v. Renny, 203 N.J. 37, 58 (2010)). In Higginbotham, we held that "[b]ecause the Legislature intentionally crafted subsection (c) [of a statute] to be different from subsections (a) and (b) [of the same statute], . . . we cannot heed the State's request that we interpret subsection (c) only to reach [what is] 'enumerated in subsections (a) and (b).'" 257 N.J. at 285. We noted that "'[f]amiliar principle[s] of statutory construction preclude[]' us from importing the language of subsections (a) and (b) into subsection (c) where the Legislature made the conscious choice not to do so." Id. at 287 (second and third alterations in original) (quoting State v. Hoffman, 149 N.J. 564, 579 (1997)).

We have stated that "[i]f a statute 'is susceptible to two reasonable interpretations, one constitutional and one not,' the Court 'assume[s] that the Legislature would want us to construe the statute in a way that conforms to the Constitution.'" State v. Carter, 247 N.J. 488, 513 (2021) (alteration in

original) (quoting Pomianek, 221 N.J. at 90-91). But "[t]o rewrite [a] statute . . . exceeds the scope of our judicial authority." Pomianek, 221 N.J. at 92.

In Pomianek, we reviewed the constitutionality of N.J.S.A. 2C:16-1(a)(3), which "authorize[d] a bias-crime conviction" without specifying a mens rea necessary for conviction. Id. at 69, 83-84. To "save" the statute, the Appellate Division "rewrote" it "to impose a state-of-mind requirement" and, in doing so, "reconfigured subsection (a)(3) to read as a mirror image of subsection (a)(1)" of the same statute. Id. at 70, 91. This Court rejected the Appellate Division's reconfiguration of the law and held that "the presence of mens rea elements in subsections (a)(1) and (a)(2)" of the statute revealed that "[t]he Legislature pointedly decided not to include such an element in subsection (a)(3)." Id. at 90. The Court further determined that the Appellate Division, in rewriting subsection (a)(3) to be a "mirror image" of subsection (a)(1), "performed not minor judicial surgery to save a statutory provision, but a judicial transplant," and that the edit rendered the statute "redundant." Id. at 91. The Court then struck subsection (a)(3) as unconstitutional. Ibid.

B.

Here, we interpret the actual damages provision of N.J.S.A. 56:8-166.1, a provision of Daniel's Law. The Legislature passed Daniel's Law in response to the tragic death of Daniel Anderl, the son of United States District Court

Judge Esther Salas. Daniel was shot at the family's home in July 2020 by a disgruntled lawyer who intended to assassinate Judge Salas and "obtained [her] home address and other personal information off the internet." State of N.J., Dep't of Cmty. Affs., Judge Esther Salas: The Voice of Daniel's Law, https://danielslaw.nj.gov/Default.aspx?ReturnUrl=%2f (last visited July 23, 2026). The law aims "to enhance the safety and security of certain public officials in the justice system" so they can "carry out their official duties without fear of personal reprisal from affected individuals related to the performance of their public functions." N.J.S.A. 56:8-166.3.

The Legislature enacted Daniel's Law in November 2020. L. 2020, c. 125. Daniel's Law amended several existing provisions of the New Jersey Criminal and Civil Codes and added two new statutory sections. It amended three statutes enacted in 2016 that focused on "certain information regarding law enforcement officers," L. 2015, c. 226 (codified at N.J.S.A. 2C:20-31.1, 47:1-17, 56:8-166.1). Daniel's Law amended those sections so that, in 2020, they read as follows: N.J.S.A. 2C:20-31.1 proscribed "knowingly, with purpose to expose another to harassment or risk of harm to life or property, or in reckless disregard of the probability of such exposure, post[ing] or publish[ing] on the Internet . . . the home address or unpublished home telephone number of" individuals belonging to the listed categories and made

reckless violations a fourth-degree crime and purposeful violations a third-degree crime; N.J.S.A. 47:1-17 provided that a government agency "shall not knowingly . . . make available the home address or unpublished home telephone number" of the listed categories of people; and N.J.S.A. 56:8-166.1, the statute at issue here, prohibited any "person, business, or association" from making available the same protected information.[4]

As enacted in 2020, Daniel's Law offered two civil remedies for violations. The first was in N.J.S.A. 56:8-166.1, which Daniel's Law amended to read:[5]

> a. A person, business, or association shall not disclose on the Internet, or re-disclose or otherwise make available, the home address or unpublished home telephone number of any active, formerly active, or retired judicial officer, as defined by [N.J.S.A. 47:1A-1.1], prosecutor, or law enforcement officer <u>under circumstances in which a reasonable person would believe that providing that information would expose another to harassment or risk of harm to life or property</u>.
>
> . . . .

---

[4] In addition, Daniel's Law amended two sections of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1.1 and -5, and created new sections N.J.S.A. 56:8-166.2 ("Request to remove certain information," since repealed), and -166.3 ("Construction of [Daniel's Law]").

[5] Subsection (a) of N.J.S.A. 56:8-166.1 (2020), as amended by Daniel's Law, initially included a second paragraph. <u>L.</u> 2020, <u>c.</u> 125, § 3. That paragraph was deleted months later, <u>L.</u> 2021, <u>c.</u> 24, § 5, and is not relevant to the issue before the Court.

> b. A person, business, or association that violates subsection a. of this section shall be liable to the aggrieved person or any other person residing at the home address of the aggrieved person, who may bring a civil action in the Superior Court.
>
> c. The court <u>may award</u>:
>
> > (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
> >
> > (2) punitive damages upon proof of willful or reckless disregard of the law;
> >
> > (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
> >
> > (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> d. For the purposes of this section, "disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer.
>
> [<u>L.</u> 2020, <u>c.</u> 125, § 6 (emphases added).]

Subsection (b) of the statute thus initially permitted the filing of a civil action by "the aggrieved person or any other person residing at the" aggrieved person's home address. <u>Ibid.</u> And subsection (c) listed remedies that "[t]he court may award." <u>Ibid.</u>

Separately, N.J.S.A. 56:8-166.2 (2020), which codified Section 7 of Daniel's Law, also required private entities to cease disclosure or prevent

disclosure of personal information within 72 hours of receiving a written request from someone covered by the law. L. 2020, c. 125 § 7. Subsections (a)(1) and (b)(2) detailed this avenue of relief:

> a. (1) Any active, formerly active, or retired judicial officer . . . or prosecutor, whose home address or unpublished telephone number is disclosed on the Internet, or re-disclosed or otherwise made available, by any person, business, or association, or whose immediate family member's name [is disclosed under certain circumstances] . . . may request that the person, business, or association that disclosed, re-disclosed, or otherwise made available that information refrain from that action and remove the information from the Internet or where otherwise made available.
>
> . . . .
>
> b. (2) Upon receipt of a written request to refrain and remove information, the person, business, or association that disclosed, re-disclosed, or otherwise made available the information shall have 72 hours to remove that information from the Internet or where otherwise made available, and shall not disclose, re-disclose, or otherwise make available that information to any other person, business, or association through any medium.
>
> [L. 2020, c. 125 § 7 (emphases added).]

This second route to relief, involving a written request, did not cross-reference L. 2020, c. 125, § 6 or its damages provision. Instead, it allowed affected individuals to seek "injunctive or declaratory relief" upon either the failure of a "person, business, or association" to timely remove information upon request

or the later redisclosure of protected information. L. 2020, c. 125, § 7(c). And the statute provided that, if granted, the injunctive or declarative relief would be accompanied by "reasonable attorney's fees and other litigation costs reasonably incurred by the judicial officer, prosecutor, or law enforcement officer, as appropriate." Ibid.

Daniel's Law has been amended several times since its enactment. As relevant here, the Legislature passed, in early 2022, "[a]n Act concerning disclosure of certain information with respect to certain public officials, creating a new chapter of and supplementing Title 47 of the Revised Statutes, supplementing Title 17 of the Revised Statutes, amending various parts of the statutory law, repealing [N.J.S.A. 56:8-166.2], and making an appropriation." L. 2021, c. 371 (approved Jan. 12, 2022).

Through that enactment, the Legislature created several new statutes. Among other provisions, the Legislature enacted N.J.S.A. 47:1B-1, which defined the terms "covered person" and "authorized person" to denote, respectively, those whose addresses and unpublished phone numbers are protected by Daniel's Law and those who may take enforcement action on behalf of those covered by the law. L. 2021, c. 371, § 1(a).[6] The same statute

[6] Specifically, the amendment defined "covered person" as "an active, formerly active, or retired judicial officer or law enforcement officer . . . or prosecutor and any immediate family member residing in the same household

also provided for the "establish[ment] in the Department of Community Affairs an office to be known as the Office of Information Privacy" (OIP) and for the development of a process through which the OIP could review requests by authorized persons for redaction or nondisclosure. Id. at (b) to (e). Notably, these requests had to be approved by the OIP before being sent to the individual or entity from whom redaction was requested. Ibid.; id. at § 8(a)(1).

The 2022 amendment also significantly amended Daniel's Law so that it contained only one relief provision for situations in which private entities disclosed the protected information. The Legislature repealed N.J.S.A. 56:8-166.2 and amended Section 166.1 to read:

> a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or re-disclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section, who has received approval from the Office of Information Privacy for the redaction or nondisclosure of the covered person's address.

---

as the judicial officer, law enforcement officer, or prosecutor." L. 2021, c. 371, § 1(a). It defined "authorized person" as "a covered person" or persons meeting other specific criteria outlined in the statute. Ibid. Those definitions were also incorporated into the criminal liability provision, N.J.S.A. 2C:20-31.1 (2022), and the civil cause of action, N.J.S.A. 56:8-166.1 (2022). L. 2021, c. 371, §§ 5, 8.

> (2) An authorized person seeking to prohibit the disclosure of the home address or unpublished home telephone number of any covered person . . . shall provide written notice to the person from whom they are seeking nondisclosure that they are an authorized person and requesting that the person cease the disclosure of the information and remove the protected information from the Internet or where otherwise made available.
>
> . . . .
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the aggrieved person, who may bring a civil action in the Superior Court.
>
> [L. 2021, c. 371, § 8 (emphases added).]

As in the original version of Daniel's Law, the Legislature provided that the court "may award" "actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act," "punitive damages upon proof of willful or reckless disregard of the law," along with fees, costs, and other relief. Ibid.

Significantly, the 2022 amendments removed the "reasonable person" language that had been present in N.J.S.A. 56:8-166.1 and made written notice -- which had been present in the repealed Section 166.2 -- mandatory for relief. Ibid. And a time limit was added to Section 166.1; however, instead of only 72 hours for compliance with the written notice, as repealed Section 166.2

allowed, Section 166.1 was given an expanded compliance period of 10 business days. Ibid.

The Sponsors' Statements to the Senate and Assembly bills enacted as L. 2021, c. 371 note that the "[p]revious law . . . did not specify how . . . persons, businesses, or associations [disclosing information] were to know which addresses to redact." Statement to A. 6171/S. 4219. They state that the amended statute "combines two sections of law providing for civil relief and, therefore, repeals one of the sections." Ibid. Neither the Sponsors' Statements nor any of the Committee Statements to the law specified why the Legislature eliminated the "reasonable person" language of the 2020 statute, nor did they address whether the Legislature intended the new civil relief provision to include a mental state requirement. Those statements also did not explain the Legislature's reasons for creating the OIP.

One year after the Legislature created the OIP and required OIP approval for nondisclosure and redaction requests filed under N.J.S.A. 56:8-166.1, the Legislature eliminated that approval requirement. L. 2023, c. 113, § 6. Additionally, in its 2023 amendments, the Legislature provided that when a "person, business, or association" violates N.J.S.A. 56:8-166.1, "[t]he court shall award" "actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act," along with punitive

damages for willful or reckless conduct, fees and costs, and any other appropriate relief. Ibid. (emphasis added).

The current text of N.J.S.A. 56:8-166.1 reflects these amendments. The statute presently provides that,

> a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or re-disclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> . . . .
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>
> (2) punitive damages upon proof of willful or reckless disregard of the law;
>
> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
>
> (4) any other preliminary and equitable relief as the court determines to be appropriate.
>
> [N.J.S.A. 56:8-166.1.]

IV.

Based on the statutory text and legislative history, we hold that Daniel's Law contains no mental state requirement for claims in which the plaintiff seeks actual damages under Section 166.1(c)(1).

A.

We begin, as always, with the plain language of the statute. Section 166.1 states that when a person, business, or association violates Section 166.1(a), they "shall be liable," N.J.S.A. 56:8-166.1(b), and the court "shall award . . . actual damages . . . for each violation of [the] act," id. at (c)(1). Neither Section 166.1(c)(1) nor the other subsections in Section 166.1 require a mental state for the award of actual damages under Section 166.1(c)(1).

Notably, however, the very next subsection of the statute, Section 166.1(c)(2), does contain a mental state requirement. Section 166.1(c)(2) expressly includes the mental state requirement of "willful or reckless disregard of the law" for the award of punitive damages. As we stated recently in Higginbotham, "when the Legislature includes limiting language in one part of a statute, but leaves it out of another section in which the limit could have been included, we infer that the omission was intentional." 257 N.J. at 285. The Legislature included a mental state in Section 166.1(c)(2); the exclusion of a mental state requirement in (c)(1) is thus a significant omission and reflects

legislative intent to require no mental state for the imposition of actual damages.

The requirement of purposeful or reckless conduct in Daniel's Law's criminal provision, N.J.S.A. 2C:20-31.1(b), also shows that the Legislature was deliberate in adding mental state requirements in portions of the statute where it intended to do so. The same is true for the prohibition against government agencies "knowingly" posting private information. See N.J.S.A. 47:1-17. Again, "the presence of mens rea elements" in some subsections of a statute suggests that "[t]he Legislature pointedly decided not to include such an element" in sections where it does not expressly appear. Pomianek, 221 N.J. at 90. Daniel's Law's plain text reflects that the Legislature intended no mental state requirement for actual damages.

The history of Daniel's Law amendments provides further insight into the Legislature's intent. The Legislature included a mental state requirement in the 2020 version of Daniel's Law regarding actual damages -- that "a reasonable person would believe that providing" certain information "would expose another to harassment or risk of harm to life or property"[7] -- but deleted

---

[7] All parties agree that the "reasonable person" language in the original version of Daniel's Law resembles a negligence standard. "Negligence is conduct which falls below the standard established by law for the protection of others against an unreasonable risk of harm. A person acts negligently when he or she does not take reasonable precautions to prevent causing harm to

that language in 2022. Compare N.J.S.A. 56:8-166.1 (2020), with N.J.S.A. 56:8-166.1 (2022). That "change of language . . . implies a purposeful alteration in [the] substance of the law," In re Commitment of W.W., 245 N.J. at 449, and suggests that the Legislature intended for Daniel's Law to require no specific mental state for the imposition of actual damages.

The 2022 amendments added the 10-day timeframe for compliance with Daniel's Law after notification from an authorized person. N.J.S.A. 56:8-166.1 (2022). The Attorney General argues that Daniel's Law's notice requirement and 10-business-day compliance window effectively impose a negligence requirement. We disagree. Nothing in the language of N.J.S.A. 56:8-166.1 -- which, again, contains a mental state in the subsection immediately following the actual damages provision -- indicates that the notice requirement and the compliance window are a proxy for a mental state of negligence. The legislative history neither explains why the Legislature deleted the statute's reasonable person language nor supports the Attorney General's interpretation of the 10-day notice requirement. If anything, the Sponsors' Statements to the 2022 bill, which note that the "[p]revious law . . .

another." Pfenninger v. Hunterdon Cent. Reg'l High Sch., 167 N.J. 230, 240 (2001) (quoting Restatement (Second) of Torts § 282 (Am. L. Inst. 1965) and citing id. § 284). "To determine whether a defendant's conduct is negligent, we consider what a 'prudent man' would have done in the defendant's circumstances." Ibid. (quoting Weinberg v. Dinger, 106 N.J. 469, 484 (1987)).

did not specify how" those disclosing information "were to know which addresses to redact," may suggest that the 2022 amendments, such as the notice requirement, were meant to remedy that issue and that issue alone. See Statement to A. 6171/S. 4219 (L. 2021, c. 371).

The 10-day notice requirement is simply not the same as requiring a mental state of negligence; complying with that time frame is not synonymous with acting with reasonable care. A prospective defendant could plausibly act with reasonable care -- i.e., act non-negligently -- but still fail to cease disclosure within 10 business days of notice; for example, if that defendant received a high volume of requests at one time.[8] The notice requirement says nothing of the mental state that must be established for liability to attach. Instead, the notice requirement in Section 166.1 does just what is intended -- it puts a potential defendant on notice of their obligations under the statute.

Had the Legislature intended to include a negligence standard or require another mental state for the imposition of actual damages, it easily could have included that language in the 2022 iteration of the statute along with the notice requirement and 10-day compliance window. It did not. The lack of clear

[8] As Judge Bartle noted, if one reads Daniel's Law to impose strict liability, there are some circumstances where defendants would be held liable even though it could be "impossible" for them to comply with the law, like in the event of a natural disaster. We Inform, LLC, 758 F. Supp. 3d at 341.

language in Section 166.1 indicating a mental state, in conjunction with the Legislature's removal of the "reasonable person" language from a prior iteration of the statute, suggests a legislative intent to omit a mental state requirement for plaintiffs seeking actual damages.

B.

In this case, the district court determined that Daniel's Law "is a privacy statute analogous to the common law tort of invasion of privacy of the intimate details of a person's life." Atlas Data Priv. Corp., 758 F. Supp. 3d at 341. In Section 652D of the Second Restatement of Torts, that same tort is called "Publicity Given to Private Life." The district court noted that, under Romaine v. Kallinger, 109 N.J. 282, 291-92 (1988), "recovery for this tort requires proof of 'the unreasonable publication of private facts'" -- a requirement that the district court called "a negligence test."[9] Atlas Data Priv. Corp., 758 F. Supp. 3d at 341 (quoting 109 N.J. at 291-92). The district court stated that "[t]here is no reason to think that the New Jersey Supreme Court would not apply the same test here as it did in Romaine." Ibid.

The Attorney General, in its brief, argued that "Judge Bartle was correct to identify Section 166.1 as a modern codification" of the "longstanding tort"

---

[9] We note that Romaine called the tort "the unreasonable publication of private facts"; it did not modify the elements of the tort. 109 N.J. at 291-92.

of public disclosure of private facts.[10] Similarly, plaintiffs assert that the cause of action in Daniel's Law belongs to "the category of invasion of privacy claims that are grounded in an allegation that defendant improperly disclosed private facts concerning the plaintiff to a third party." Although plaintiffs and the Attorney General strongly argue that the background principles of common law torts support reading a mental state requirement into Daniel's Law, they appear to not even agree on what mental state Daniel's Law requires based on their different interpretations of how common law torts should affect this Court's reading. The Attorney General argues for a negligence standard. In contrast, plaintiffs argue that, in addition to negligence, Daniel's Law requires "a knowing and intentional act of disclosure" and submit that they also have no objection to a finding that Daniel's Law contains a "gross negligence" requirement. When asked about mental state at oral argument, plaintiffs noted that their position is "somewhat different" from that of the Attorney General, whom plaintiffs acknowledge "floats some possibilities that [plaintiffs] don't consider."

---

[10] As previously noted, the district court stated that Daniel's Law "is a privacy statute analogous to the common law tort of invasion of privacy of the intimate details of a person's life." Atlas Data Priv. Corp., 758 F. Supp. 3d at 341 (emphasis added). The court did not find that Daniel's Law was a "modern codification" of the tort.

We provide a brief overview of the common law privacy torts before addressing the arguments that these torts should influence our reading of Daniel's Law.

1.

The tort of public disclosure of private facts -- which the Attorney General argues is codified, in modern form, in Daniel's Law -- occurs when it is shown that: "[(1)] the matters revealed were actually private, [(2)] that dissemination of such facts would be offensive to a reasonable person, and [(3)] that there is no legitimate interest of the public in being apprised of the facts publicized." G.D. v. Kenny, 205 N.J. 275, 309 (2011). To succeed in proving that a defendant committed this tort, a plaintiff must "establish that he possessed a reasonable expectation of privacy" in the matters revealed. Ibid; see also Restatement (Second) of Torts § 652D cmt. b (Am. L. Inst. 1965). Regarding the tort's "offensive to a reasonable person" element, the Second Restatement of Torts notes that

> [c]omplete privacy does not exist in this world except in a desert . . . . Thus [a person] must expect the more or less casual observation of his neighbors as to what he does . . . . It is only when the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises.
>
> [Restatement (Second) of Torts § 652D cmt. c.]

As for the tort's third element, we have held that there is "legitimate public concern" in, for one, facts that are "newsworthy." Romaine, 109 N.J. at 300-02. "Extensive contemporaneous publicity . . . is a strong indication that the subject is one that is clearly newsworthy." Id. at 302.

Public disclosure of private facts is one of four invasion of privacy torts. See Friedman v. Martinez, 242 N.J. 449, 466 (2020) ("The noted legal scholar Dean William Prosser outlined four separate torts that comprised the right to privacy: (1) '[i]ntrusion upon the plaintiff's seclusion or solitude, or into his private affairs'; (2) '[p]ublic disclosure of embarrassing private facts'; (3) '[p]ublicity which places the plaintiff in a false light in the public eye'; and (4) '[a]ppropriation, for the defendant's advantage, of the plaintiff's name or likeness.'" (quoting William L. Prosser, Privacy, 48 Cal. L. Rev. 383, 389 (1960))). These torts are "tied together by the common name [of privacy], but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.'" Rumbauskas v. Cantor, 138 N.J. 173, 179-80 (1994) (quoting Canessa v. J. I. Kislak, Inc., 97 N.J. Super. 327, 334 (Law Div. 1967)).

The public disclosure tort requires that the complained-of disclosure be of the type that "would be offensive to a reasonable person." Two of the other privacy torts require a similar assessment in addition to identifying one or

more mental states that the tortfeasor must possess. See G.D., 205 N.J. at 309 ("The tort of [intrusion upon seclusion] is defined as an intentional intrusion, 'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns' that 'would be highly offensive to a reasonable person.'" (quoting Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982))); Romaine, 109 N.J. at 294 ("Liability for [the tort of 'false light'] is found when '[o]ne . . . gives publicity to a matter concerning another that places the other before the public in a false light [and] . . . (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." (omissions in original) (quoting Restatement (Second) of Torts § 652E)). The final privacy tort, appropriation of "the name or likeness of another," does not ask whether the appropriation would be offensive to a reasonable person; instead, to establish a prima facie case for this tort, "it must be shown that defendant acted with a commercial purpose or otherwise sought some benefit from revealing information about plaintiffs." Bisbee, 186 N.J. Super. at 343 (emphases added).

2.

Putting aside the parties' differing views of the mental state standard that should be implied into Daniel's Law from the invasion of privacy disclosure tort, we cannot agree that recourse to tort law is appropriate here.

The common law can play a role in our interpretation of a statute. When statutes use words that invoke the common law, our courts have interpreted those words in accordance with their common law meaning. See Maison v. N.J. Transit Corp., 245 N.J. 270, 290-92 (2021) (holding that the word "negligence" in the Tort Claims Act carries the same meaning as it did at common law). This Court has also held that "statute[s] in derogation of the common law should be strictly construed," and "[d]oubt about the meaning of such statutes should be resolved in favor of 'the effect which makes the least rather than the most change in the common law.'" Marshall, 188 N.J. at 37 (quoting Oswin v. Shaw, 129 N.J. 290, 310 (1992), and applying this principle in determining whether the statutory immunity provisions of N.J.S.A. 2A:62A-16 "immunize a mental health practitioner from potential liability").

Additionally, when statutes codify common law causes of action or defenses, reference to "common law traditions" is "instructive" when construing the laws. Evans-Aristocrat Indus., Inc. v. City of Newark, 75 N.J. 84, 93 (1977). For example, in Evans-Aristocrat Industries, this Court

reviewed a statute allowing the Attorney General to sue the Port Authority of New York and New Jersey. Id. at 86-88. After concluding that the statute had "strong common law origins," the Court reviewed "common law analogues" of the statute and found that they "nourish[ed]" a certain interpretation. Id. at 93-95. Likewise, in Hardwicke v. American Boychoir School, we found that the Legislature passed the Charitable Immunity Act (CIA) to "reinstate[] the common law" doctrine of charitable immunity. 188 N.J. 69, 97-98 (2006). Because the CIA codified the common law charitable immunity doctrine, the Court considered the "scope of that common law when interpreting the scope of the immunities provided in the statute." Id. at 98.

The Attorney General argues that given that Daniel's Law is a modern codification of the invasion of privacy disclosure tort, doubts about Daniel's Law's meaning should be resolved to make "the least" change in the common law. Therefore, the Attorney General contends that we should read Daniel's Law "in harmony" with the tort and conclude that the Legislature intended Daniel's Law to include the tort's negligence standard. This argument makes several suppositions with no basis in the history of Daniel's Law or the actual substance of the common law tort.

First, there is no legislative history to support the argument that the Legislature modeled Daniel's Law after the public disclosure of private facts

tort; nothing in the amendments to the law or legislative statements suggests any connection to the tort. Unlike the statute at issue in Evans-Aristocrat Industries, there is no evidence of any "strong common law origins" for Daniel's Law that should "nourish" our interpretation here. See 75 N.J. at 93-95. Further, unlike the statute addressed in Marshall, there is no evidence that Daniel's Law is in "derogation of" the common law. 188 N.J. at 36-37.

Second, Daniel's Law's plain language provides no indication that it is codifying the tort of public disclosure of private facts. Daniel's Law's language does not reflect the three elements of a public disclosure of private facts claim -- Daniel's Law does not require plaintiffs to prove that the information is private and that they have a "reasonable expectation of privacy" in the matters disclosed, nor that the disclosure would be "offensive to a reasonable person," nor that the public lacks a legitimate interest in the facts publicized. See G.D., 205 N.J. at 309. Nowhere does the text of Daniel's Law reference or incorporate any action at common law. And the text does not use words invoking any particular common law definition, unlike the statute we addressed in Maison. See 245 N.J. at 290-92.

As noted, this Court has called the tort of public disclosure of private facts the "unreasonable publication of private facts" -- language that the Attorney General claims constitutes a negligence standard. Romaine, 109 N.J.

at 297. Plaintiffs further argue that this Court should construe the actual damages provision of Daniel's Law to include what plaintiffs argue are "the same two fault requirements as common-law disclosure torts": knowing and intentional acts of disclosure and negligent disregard of duties under Daniel's Law.

If the Legislature did in fact draft Daniel's Law with these common law principles in mind, it is odd that the Legislature did not think to include a mental state requirement when, according to plaintiffs and the Attorney General, mental state requirements exist in the public disclosure tort. The public disclosure tort -- which the Attorney General claims requires negligence -- existed when the Legislature drafted the amendments to Daniel's Law and includes "reasonable person" language. Tellingly, the original text of N.J.S.A. 56:8-166.1(a) also contained "reasonable person" language that the Legislature later removed. Given that Daniel's Law does not resemble the tort of public disclosure of private facts or any other invasion of privacy tort, we find it inappropriate to import tort law standards into Daniel's Law.

C.

Lastly, we briefly address the constitutional construction arguments. The Attorney General submits that, even if this Court disagrees that the actual damages provision of Daniel's Law is best read to require a mental state of

negligence, this Court should perform judicial surgery and construe Daniel's Law to avoid constitutional infirmity. The Third Circuit noted in posing its certified questions of law that, pursuant to the jurisprudence of the U.S. Supreme Court, the lack of a mental state requirement has the potential to create constitutional issues in a law restricting speech. But the constitutionality of Daniel's Law is not the issue before this Court. That issue is only before the federal court -- a court to which this case was removed and one that has the benefit of full briefing on the constitutional question. We are only answering a specific certified question. Whether Daniel's Law is constitutional -- regardless of what this Court has decided today -- is for the Third Circuit to determine.

V.

In response to the certified question before this Court, we hold that Daniel's Law contains no mental state requirement for the award of actual damages in Section 166.1(c)(1).

JUSTICES WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion. CHIEF JUSTICE RABNER and JUSTICE PATTERSON did not participate.

# Exhibit 3

GreenspoonMarder LLP

Kelly Purcaro, Partner
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Direct Phone: 732.456.8734
Email: kelly.purcaro@gmlaw.com

November 3, 2025

**BY ECF**
Honorable Harvey Bartle III, U.S.D.J.
United States District Court for the
Eastern District of Pennsylvania
16614 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

**Re:** ***Atlas Data Privacy Corp., et al v. JOY ROCKWELL ENTERPRISES, INC. et al*** **(No. 1:24-cv-04389-HB) – Docket Entry 66 – Order**

Dear Judge Bartle:

This firm represents defendant Joy Rockwell Enterprises, Inc. ("Defendant") in this matter. Per Your Honor's Order entered on September 12, 2025, Dkt. No. 66, Defendants[1] respectfully request that this case and the related cases pending before Your Honor be stayed at this time.

**Stay Case Pending NJ Supreme Court & Third Circuit Decisions**

On October 21, 2025, the New Jersey Supreme Court notified the parties that it accepted the petition for certification of questions regarding the *mens rea* issue and reformulated the question in accordance with Rule 2:12A-2 as follows:

> What mental state, if any, is required to establish liability under Daniel's Law. N.J.S.A. 56:8-1661?

*R-3 September Term 2025, 091145*. The New Jersey Supreme Court further Ordered the following briefing schedule: Appellants' Brief due November 20, 2025, Respondents' Opposition Brief due December 11, 2025, and Appellants' Reply Brief due December 18, 2025. The Clerk of Court shall thereafter set the matter down for oral argument in due course. *Ibid.* As such briefing is now underway, and the Supreme Court's determination in this regard will impact these cases particularly with respect to the scope of liability discovery, Defendant respectfully requests that a stay be issued by this Court pending same.

In further support of the renewed request for a stay, Defendant notes the efficiency for the Court and the litigants for all cases in federal court to proceed on the same schedule. This Court issued an Order on October 30, 2025, Dkt. No. 70, extending the deadline for certain cases to complete jurisdictional discovery until December 1, 2025 and canceling the previously scheduled

[1] Other Defendants in these cases join this request as indicated on their respective docket filings.

November 12, 2025 Status Conference. As such, if discovery were to proceed at this time with respect to the merits of the claims of some cases while other cases remain actively involved in jurisdictional discovery, such scheduling would necessarily create duplication of efforts for both this Court and the parties. Staying merits discovery for all cases until jurisdictional issues are resolved would promote the most efficient discovery process for all involved.

**Limited Discovery Unrelated to *Mens Rea***

In the alterative, should this Court deny a stay at this time, with a full reservation of rights to renew its request for a stay, Defendant proposes the following initial discovery schedule:

To streamline discovery and overall case management, Defendant recommends two tracks of discovery: **Track 1** for those without jurisdiction challenges (36 Cases[2]), and **Track 2** for those with jurisdictional challenges (16 Cases[3]). Below is a proposal for Track 1, with a proposed scope limitation to general party information – such as business type, terms of use, cover persons details, and cover information details - which information will not change and will not be impacted by the ultimate decision by the New Jersey Supreme Court on the *mens rea* issue.

**Track 1: Non-Jurisdictional Cases:**

| Date | Item | Details/Topics |
|---|---|---|
| 1/19/26 | Parties to serve *Limited* Interrogatories: 10 per side and per case. | Plaintiffs' demands limited to:<br>• Type of business<br>• Types of Agreements, contracts, and terms of use generally<br>• Availability of information generally<br><br>Defendants' demands limited to:<br>• Basis for alleged noncompliance in Complaint<br>• Covered person status<br>• Covered information |
| 2/27/26 | Deadline to Serve Objections and Responses to Interrogatories | |
| 3/20/26 | Deadline to Serve Document Demands – same limit/scope as above (10 per side/case) | |
| 4/17/26 | Deadline to Serve Objections and Responses to Document Demands | |

[2] Of these cases, 7 filed Counterclaims. Plaintiffs' responsive pleadings were due October 24, 2025. Defendants agreed to Plaintiffs' request to extension until December 5, 2025, details below.
[3] Of the previously stayed cases, 3 filed motions to dismiss based on jurisdiction. Plaintiffs' served jurisdiction discovery demands on October 28, 2025. Defendants' responses are due November 28, 2025, and the jurisdictional discovery deadline on these cases is December 22, 2025.

| | |
|---|---|
| 5/4/26 | Deadline to meet and confer re discovery disputes |
| 5/18/26 | Joint Status Letter Submission - To include discovery status, suggested motions and briefing, and scheduling matters |
| | Case Management Conference - TBD by Court |

***Track 2: Jurisdictional Cases – TBD following briefing***

**Plaintiffs' Responses to Counterclaims**

Finally, the parties have conferred and propose the following schedule with respect to Plaintiffs' response to Defendants' Counterclaim, which responses were due on October 24, 2025.

- 12/5/25 - Plaintiffs' Response/Motion to Dismiss Counterclaims Due
- 1/16/26 - Defendants' Opposition Due
- 2/6/26 - Plaintiffs' Reply due

Thank you for your consideration.

Respectfully submitted,

*s/ Kelly M. Purcaro*
KELLY M. PURCARO

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| WE INFORM, LLC, et al. | : | NO. 24-4037 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| INFOMATICS, LLC, et al. | : | NO. 24-4041 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| THE PEOPLE SEARCHERS, LLC, et al. | : | NO. 24-4045 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| DM GROUP, INC., et al. | : | NO. 24-4075 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| DELUXE CORP., et al. | : | NO. 24-4080 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| DELVEPOINT, LLC, et al. | : | NO. 24-4096 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| QUANTARIUM ALLIANCE, LLC, et al. | : | NO. 24-4098 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| YARDI SYSTEMS, INC., et al. | : | NO. 24-4103 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| DIGITAL SAFETY PRODUCTS, LLC | : | NO. 24-4141 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| CIVIL DATA RESEARCH, LLC, et al. | : | NO. 24-4143 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SCALABLE COMMERCE, LLC, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4160 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>LABELS & LISTS, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4174 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>INNOVIS DATA SOLUTIONS, INC., et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4176 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ACCURATE APPEND, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4178 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ZILLOW, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4256 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>EQUIMINE, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4261 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>THOMSON REUTERS CORP., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4269 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>MELISSA DATA CORP., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4292 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>RESTORATION OF AMERICA, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4324 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>i360, LLC, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4345 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ACCUZIP, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4383 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SYNAPTIX TECHNOLOGY, LLC, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4385 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>JOY ROCKWELL ENTERPRISES, INC., et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4389 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>E-MERGES.COM, INC. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4434 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>NUWBER, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-4609 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ROCKETREACH LLC, et al. | : : : : : : | CIVIL ACTION<br><br><br><br>NO. 24-4664 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>PROPERTYRADAR, INC., et al. | : : : : : : | CIVIL ACTION<br><br><br><br>NO. 24-5600 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>THE ALESCO GROUP, L.L.C., et al. | : : : : : : : | CIVIL ACTION<br><br><br><br>NO. 24-5656 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SEARCHBUG, INC., et al. | : : : : : : | CIVIL ACTION<br><br><br><br>NO. 24-5658 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>AMERILIST, INC., et al. | : : : : : : | CIVIL ACTION<br><br><br><br>NO. 24-5775 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>US DATA CORP., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-7324 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SMARTY, LLC, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-8075 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>COMPACT INFORMATION SYSTEMS, LLC, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-8451 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>DARKOWL, LLC, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-10600 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SPY DIALER, INC., et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 24-11023 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>INNOVATIVE WEB SOLUTIONS, LLC, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 25-1535 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>PUBLICNSA, LLC, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 25-5989 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>REDX LLC, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 25-6863 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>FREEDOMSOFT303, LLC, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 25-9224 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>STERLING DATA COMPANY LLC, et al. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>NO. 25-9963 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| v. | : | |
| AGR MARKETING SOLUTIONS, LLC, et al. | : | NO. 25-12137 |

ORDER

AND NOW, this 30th day of July 2026, after a status conference with counsel, it is hereby ORDERED that fact discovery shall proceed as follows:

(1) The parties shall serve all interrogatories (except for contention interrogatories) and requests for production no later than September 10, 2026;

(2) The parties shall act in good faith to serve as many standard interrogatories and requests for production as possible;

(3) Each party shall be limited to twenty-five (25) interrogatories, including subparts, and thirty (30) requests for production, including subparts;

(4) All responses to interrogatories or requests for production shall be served no later than October 20, 2026;

(5) Any objections to interrogatories or requests for production of documents shall be stated with specificity. The parties shall avoid boilerplate objections;

(6) The parties thereafter shall meet and confer with respect to any objections or inadequate responses to the interrogatories or requests for production;

(7) The parties shall file any motions to compel, together with supporting briefs, no later than November 20, 2026. Defendants where possible shall file consolidated motions and briefs;

(8) Any opposing briefs shall be filed no later than December 4, 2026;

(9) No depositions shall be taken without further order of court;

(10) The parties may not stipulate or agree to any extensions of time without approval of the court; and

(11) All discovery shall be proportional to the needs of the cases.

BY THE COURT:

/s/ Harvey Bartle III
J.

# Exhibit 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>MELISSA DATA CORP.,<br><br>Defendant. | Case No. 24-4269 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>INNOVATIVE WEB SOLUTIONS, LLC,<br><br>Defendant. | Case No. 25-2535 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>QUANTARIUM ALLIANCE, LLC,<br><br>Defendant. | Case No. 24-4098 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>LABELS & LISTS, INC.,<br><br>Defendant. | Case No. 24-4174 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SPY DIALER, INC.,<br><br>Defendant. | Case No. 24-11023 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SYNAPTIX TECHNOLOGY LLC,<br><br>Defendant. | Case No. 24-4385 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SMARTY, LLC,<br><br>Defendant. | Case No. 24-8075 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>INFOMATICS, LLC,<br><br>Defendant. | Case No. 24-4041 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>THE PEOPLE SEARCHERS, LLC,<br><br>Defendant. | Case No. 24-4045 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>WE INFORM, LLC,<br><br>Defendant. | Case No. 24-4037 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>i360, LLC,<br><br>Defendant. | Case No. 24-4345 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ROCKETREACH LLC,<br><br>Defendant. | Case No. 24-4664 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>INNOVIS DATA SOLUTIONS, INC.,<br><br>Defendant. | Case No. 24-4176 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>COLLEGE BOUND,<br><br>Defendant. | Case No. 24-8451 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>THOMSON REUTERS CORP.,<br><br>Defendant. | Case No. 24-4269 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CIVIL DATA RESEARCH,<br><br>Defendant. | Case No. 24-4243 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>DIGITAL SAFETY PRODUCTS, LLC,<br>Defendant. | Case No. -4141 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>SCALABLE COMMERCE, LLC,<br>Defendant. | Case No. 24-4160 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>ACCURATE APPEND, INC.,<br>Defendant. | Case No. 24-4178 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>RESTORATION OF AMERICA,<br>Defendant. | Case No. 24-4324 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>FREEDOMSOFT303, LLC,<br><br>Defendant. | Case No. 25-9224 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DELVEPOINT, LLC,<br><br>Defendant. | Case No. 24-4096 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NUWBER, INC.,<br><br>Defendant. | Case No. 24-4609 |

**MOTION TO COMPEL**

TO: All Counsel of Record

Pursuant to *Fed. R. Civ. P.* 26 and 37(a)(3)(B), Plaintiffs Atlas Data Privacy Corp., *as assignee of individuals who are Covered Persons*, along with the Individual Plaintiffs ("Plaintiffs") move this Court for an order compelling Defendants Melissa Data Corp.; Innovative Web

Solutions, LLC; Quantarium Alliance, LLC; Labels & Lists, Inc.; Spy Dialer, Inc.; Synaptix Technology LLC; Smarty, LLC; PublicNSA, LLC; Infomatics, LLC; The People Searchers, LLC; We Inform, LLC; i360; Rocketreach LLC; Innovis Data Solutions, Inc.; College Bound; Thomson Reuters Corp.; Civil Data Research; Digital Safety Products, LLC; Scalable Commerce, LLC; Accurate Append, Inc.; Restoration of America; FreedomSoft303, LLC; Delvepoint, LLC; and Nuwber, Inc. to participate in the Electronically Stored Information conferences as directed by this Court on July 30, 2026.

A certification of counsel, letter brief, and proposed order are submitted herewith.

Dated: August 28, 2026

Respectfully submitted,

By: s/ *Rajiv D. Parikh*

Rajiv D. Parikh
**PEM Law LLP**
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Tel.: (973) 577-5500
Email: rparikh@pemlawfirm.com

*Attorneys for Plaintiffs*

PEM LAW LLP

**Rajiv D. Parikh, Esq.**
**Partner**
rparikh@pemlawfirm.com
*Office:* +1 973.577.5500
*Direct:* +1 973.585.5330

August 28, 2026

**VIA CM/ECF**
Hon. Harvey Bartle, III, U.S.D.J.
United States District Court for the
District of New Jersey (by designation)
c/o United States District Court for
the Eastern District of Pennsylvania
16614 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

**Re: In re Daniel's Law Compliance Litigation**
**Docket Nos: 24-4292 (Melissa Data Corp.)**
**25-1535 (Innovative Web Solutions, LLC)**
**24-4098 (Quantarium Alliance, LLC)**
**24-4174 (Labels & Lists, Inc.)**
**24-11023 (Spy Dialer, Inc.)**
**24-4385 (Synaptix Technology LLC)**
**24-8075 (Smarty, LLC)**
**24-4041 (Infomatics, LLC)**
**24-4045 (The People Searchers, LLC)**
**24-4037 (We Inform, LLC)**
**24-4345 (i360)**
**24-4664 (Rocketreach LLC)**
**24-4176 (Innovis Data Solutions, Inc.)**
**24-8451 (Compact Information Systems, LLC)**
**24-4269 (Thomson Reuters)**
**24-4143 (Civil Data Research, LLC)**
**24-4141 (Digital Safety Products, LLC)**
**24-4160 (Scalable Commerce, LLC)**
**24-4178 (Accurate Append, Inc.)**
**24-4324 (Restoration of America)**
**25-9224 (FreedomSoft303, LLC)**
**24-4096 (Delvepoint, LLC)**
**24-4609 (Nuwber, Inc.)**

Dear Judge Bartle:

Please accept this letter brief, in lieu of a more formal submission, in support of Plaintiffs' motion pursuant to *Fed. R. Civ. P.* 26(f) and 37(a)(3)(B) to compel Defendants in the above-captioned cases to participate in the ESI conferences the Court instructed the parties to conduct during the July 30, 2026 status conference.

As the Court is aware, Plaintiffs have been attempting to elicit basic discovery from the various Defendants in these cases for months, including amended Rule 26(f) disclosures, in an effort to determine the scope of discovery going forward. Defendants have fought each incremental issue and recently moved to stay these cases all together. The Court denied that stay, and Defendants should be compelled to at the very least participate in the ESI conferences the Court already ordered, so discovery can continue apace.

Unlike in an ordinary motion to compel, Plaintiffs need not show that the information sought is relevant, and Defendants cannot claim that it is not or that participating in an ESI conference is somehow unduly burdensome. *See Barton v. RCI, LLC,* 2013 WL 1338235, at *3 (D.N.J. Apr. 1, 2013); *Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, 2021 WL 229400, at *6 (E.D. Pa. Jan. 21, 2021).

Here, the Court ordered the parties to conduct these conferences under Rule 26(f), as part of Defendants' obligation to make initial disclosures regarding the location of relevant documents including those systems "involved in the disclosures." *See* Ex. A to the Certification of Rajiv D. Parikh ("Parikh Cert.") at 35:10. The Court further stated "the defendants are the ones that have the information. The plaintiff said there's been disclosure and they want to understand your system. And only you understand that. So it seems to me you have an obligation to produce that information to the plaintiffs . . . . Defendants have got to disclose their systems and not say that the plaintiff has to figure it out before you disclose it." *Id.* at 35: 4-8; 37: 22-23.

Plaintiffs then contacted each Defendant within a week of the July 30, 2026 status conference and followed up with several when they failed to respond. The details of Plaintiffs' correspondence are set out in more detail in Plaintiffs' letter filed today in tandem with this motion.[1] A month has passed since the status conference, and Defendants continue to refuse the Court's instructions.

[1] Further details of Plaintiffs' correspondence with and attempts to schedule ESI conferences with these Defendants are provided in the letter filed with this motion, attached as Exhibit B to the Parikh Cert. Twelve of these Defendants have not responded to Plaintiffs at all regarding the ESI conferences. Eight responded but did not provide their availability. Four have caused other delays, and others have responded but very little progress has been made because Defendants do not wish to participate in discovery, despite the Court's instructions.

Plaintiffs respectfully request the Court issue an order (1) requiring the above-captioned Defendants to schedule an ESI conference with Plaintiffs within seven days; (2) advising that if any Defendant fails to do so, Plaintiffs are permitted to seek appropriate sanctions; and (3) the discovery deadlines set forth in the Court's July 30, 2026 scheduling order are extended by two weeks. A proposed order was filed with this motion.

Plaintiffs appreciate the Court's continued attention to these matters and are available at the Court's convenience, including for a further status conference, should that assist in bringing these Defendants into compliance.

Respectfully submitted,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

*/s/ Rajiv D. Parikh*
RAJIV D. PARIKH

RDP
c: Counsel of Record (via CM/ECF)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ATLAS DATA PRIVACY CORPORATION, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**WE INFORM, LLC, et al.**<br><br>**Defendants.** | **CIVIL ACTION NUMBER:**<br><br>**24-4037**<br><br>**Status Conference** |
| **ATLAS DATA PRIVACY CORPORATION, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**INFOMATICS, LLC, et al.,**<br><br>**Defendants.** | **CIVIL ACTION NUMBER:**<br><br>**24-4041** |

Mitchell H. Cohen Building & U.S. Courthouse
4th and Cooper Streets
Camden, New Jersey 08101
July 30, 2026
Commencing at 10:00 a.m.

**B E F O R E:** **THE HONORABLE HARVEY BARTLE, III, UNITED STATES DISTRICT JUDGE (EDPA)**

Megan McKay-Soule, Official Court Reporter
Megan_McKay-Soule@njd.uscourts.gov
(609) 815-2319

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

(Captions continued.)

ATLAS DATA PRIVACY CORPORATION, LLC, et al. CIVIL ACTION NUMBER:

Plaintiffs, 24-4045

v.

THE PEOPLE SEARCHERS, LLC, et al.

Defendants.

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al. CIVIL ACTION NUMBER:

24-4075

Plaintiffs,

v.

DM GROUP, INC., et al.

Defendants.

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al. CIVIL ACTION NUMBER:

24-4080

Plaintiffs,

v.

DELUXE CORP., et al.

Defendants.

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al. CIVIL ACTION NUMBER:

24-4096

Plaintiffs,

v.

DELVEPOINT, LLC, et al.

Defendants.

(Captions continued.)

| | |
|---|---|
| **ATLAS DATA PRIVACY CORPORATION, LLC, et al.**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**QUANTARIUM ALLIANCE, LLC, et al.,**<br><br>**Defendants.** | **CIVIL ACTION NUMBER:**<br><br>**24-4098** |
| **ATLAS DATA PRIVACY CORPORATION, LLC, et al.**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**YARDI SYSTEMS, INC., et al.**<br><br>**Defendants.** | **CIVIL ACTION NUMBER:**<br><br>**24-4103** |
| **ATLAS DATA PRIVACY CORPORATION, LLC, et al.**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**DIGITAL SAFETY PRODUCTS, LLC**<br><br>**Defendants.** | **CIVIL ACTION NUMBER:**<br><br>**24-4141** |
| **ATLAS DATA PRIVACY CORPORATION, LLC, et al.**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CIVIL DATA RESEARCH, LLC, et al.**<br><br>**Defendants.** | **CIVIL ACTION NUMBER:**<br><br>**24-4143** |

(Captions continued.)

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

SCALABLE COMMERCE, LLC, et al.

Defendants.

CIVIL ACTION NUMBER: 24-4160

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

LABELS & LISTS, INC., et al.

Defendants.

CIVIL ACTION NUMBER: 24-4174

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

INNOVIS DATA SOLUTIONS, INC., et al.

Defendants.

CIVIL ACTION NUMBER: 24-4176

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

ACCURATE APPEND, INC., et al.

Defendants.

CIVIL ACTION NUMBER: 24-4178

(Captions continued.)

ATLAS DATA PRIVACY CORPORATION, LLC, et al. — CIVIL ACTION NUMBER: 24-4256

Plaintiffs,

v.

ZILLOW, INC., et al.

Defendants.

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al. — CIVIL ACTION NUMBER: 24-4261

v.

Plaintiffs,

EQUIMINE, INC., et al.

Defendants.

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al. — CIVIL ACTION NUMBER: 24-4269

Plaintiffs,

v.

THOMSON REUTERS CORP., et al.

Defendants.

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al. — CIVIL ACTION NUMBER: 24-4292

Plaintiffs,

v.

MELISSA DATA CORP., et al.

Defendants.

---

(Captions continued.)

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

RESTORATION OF AMERICA, et al.

Defendants.

CIVIL ACTION NUMBER: 24-4324

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

i360, LLC, et al.

Defendants.

CIVIL ACTION NUMBER: 24-4345

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

ACCUZIP, INC., et al.

Defendants.

CIVIL ACTION NUMBER: 24-4383

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

SYNAPTIX TECHNOLOGY, LLC, et al.

Defendants.

CIVIL ACTION NUMBER: 24-4385

(Caption continued.)

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

JOY ROCKWELL ENTERPRISES, INC., et al.

Defendants.

CIVIL ACTION NUMBER:

24-4389

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

E-MERGES.COM, INC.

Defendants.

CIVIL ACTION NUMBER:

24-4434

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

NUWBER, INC., et al.

Defendants.

CIVIL ACTION NUMBER:

24-4609

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

ROCKETREACH LLC, et al.

Defendants.

CIVIL ACTION NUMBER:

24-4664

(Captions continued.)

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

PROPERTYRADAR, INC., et al.

Defendants.

CIVIL ACTION NUMBER: 24-5600

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

THE ALESCO GROUP, L.L.C., et al.

Defendants.

CIVIL ACTION NUMBER: 24-5656

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

SEARCHBUG, INC., et al.

Defendants.

CIVIL ACTION NUMBER: 24-5658

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

AMERILIST, INC., et al.

Defendants.

CIVIL ACTION NUMBER: 24-5775

(Captions continued.)

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

US DATA CORP., et al.

Defendants.

CIVIL ACTION NUMBER: 24-7324

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

SMARTY, LLC, et al.

Defendants.

CIVIL ACTION NUMBER: 24-8075

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

COMPACT INFORMATION SYSTEMS, LLC, et al.

Defendants.

CIVIL ACTION NUMBER: 24-8451

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

DARKOWL, LLC, et al.

Defendants.

CIVIL ACTION NUMBER: 24-10600

---

(Captions continued.)

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

SPY DIALER, INC., et al.

Defendants.

CIVIL ACTION NUMBER: 24-11023

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

INNOVATIVE WEB SOLUTIONS, LLC, et al.

Defendants.

CIVIL ACTION NUMBER: 25-1535

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

PUBLICNSA, LLC, et al.

Defendants.

CIVIL ACTION NUMBER: 25-5989

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

REDX LLC, et al.

Defendants.

CIVIL ACTION NUMBER: 25-6863

---

(Captions continued.)

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

FREEDOMSOFT303, LLC, et al.

Defendants.

CIVIL ACTION NUMBER: 25-9224

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

STERLING DATA COMPANY, LLC, et al.

Defendants.

CIVIL ACTION NUMBER: 25-9963

---

ATLAS DATA PRIVACY CORPORATION, LLC, et al.

Plaintiffs,

v.

AGR MARKETING SOLUTIONS, LLC, et al

Defendants.

CIVIL ACTION NUMBER: 25-12137

---

A P P E A R A N C E S:

BOIES SCHILLER FLEXNER LLP
BY: ADAM R. SHAW, ESQUIRE
30 South Pearl Street
Albany, NY 12207
For the Plaintiffs

(Appearances continued.)

**A P P E A R A N C E S: (Continued)**

PEM LAW LLP
BY: RAJIV D. PARIKH, ESQUIRE
1 Boland Drive, Suite 101
West Orange, NJ 07052
For the Plaintiffs

TROUTMAN PEPPER HAMILTON SANDERS LLP
BY: ANGELO A. STIO, III, ESQUIRE
301 Carnegie Center, Suite 400
Princeton, NJ 08543
For the Defendants Innovis Data Solutions, DM Group, PropertyRadar, Deluxe Corp., RocketReach

SEYFARTH SHAW LLP
BY: ROBERT T. SYZBA, ESQUIRE
620 Eighth Avenue, 32nd Floor
New York, NY 10018
For the Defendants Infomatics, LLC, The People Searchers, LLC, We Inform, LLC, et al.

GORDON REES SCULLY MANSUKHANI
BY: REBECCA R. MCCUSKER, ESQUIRE
Three Logan Square, 1717 Arch Street
Suite 610
Philadelphia, PA 19103
For the Defendants Quantarium Alliance, Innovative Web Solutions, Nuwber

RKW, LLC
BY: H. MARK STICHEL, ESQUIRE
10075 Red Run Boulevard, Suite 401
Owings Mills, MD 21117
For the Defendant eMerges.com, Inc.

FBT GIBBONS, LLP
BY: JOSHUA ELIAS, ESQUIRE
One Gateway Center
Newark, NJ 07102
For the Defendant Equimine, Inc.

BALLARD SPAHR, LLP
BY: MARCEL PRATT, ESQUIRE
1735 Market Street, 51st Floor
Philadelphia, PA 19103
For the Defendants West Publishing, TREC

**A P P E A R A N C E S: (Continued)**

RIKER DANZIG, LLP
BY: OMAR MAROUF, ESQUIRE
One Speedwell Avenue
Morristown, NJ 07962
For the Defendant Melissa Data Corp.

LOMURRO LAW
BY: HANNAH SCIONTI, ESQUIRE
4 Paragon Way, Suite 100
Freehold, NJ 07728
For the Defendants Scalable Commerce, National Data Analytics, Digital Safety Products, Civil Data Research

WOOD, SMITH, HENNING & BERMAN
BY: JARED K. LEVY, ESQUIRE
5 Waller Avenue, Suite 200
White Plains, NY 10601
For the Defendants Compact Information Systems, Accudata, AlumniFinder, ASL Marketing, College Bound Selection Service, DeepSync Labs, HomeData, Student Research Group

MANATT, PHELPS & PHILLIPS, LLP
BY: EMILY WHITELY, ESQUIRE
7 Times Square
New York, NY 10036
For the Defendant Smarty, LLC

LEWIS BRISBOIS BISGAARD & SMITH LLP
BY: BRIAN DEENEY, ESQUIRE
One Riverfront Plaza, Suite 800
Newark, NJ 07102
For the Defendant Synaptix

STINSON LLP
BY: RICHARD J.L. LOMUSCIO, ESQUIRE
100 Wall Street, Suite 201
New York, NY 10005
For the Defendant i360

WADE CLARK MULCAHY LLP
BY: CAROLINE NELSON, ESQUIRE
1515 Market Street, Suite 2050
Philadelphia, PA 19102
For the Defendant Delvepoint

**A P P E A R A N C E S: (Continued)**

COOPER, LLC
BY: RYAN J. COOPER, ESQUIRE
108 N. Union Avenue, Suite 4
Cranford, NJ 07016
For the Defendant Labels & Lists, Inc.

KAUFMAN DOLOWICH LLP
BY: TIMOTHY M. ORTOLANI, ESQUIRE
Court Plaza North
25 Main Street
Hackensack, NJ 07601
For the Defendant Spy Dialer

GREENSPOON MARDER, LLP
BY: KELLY MAGNUS PURCARO
One Gateway Center
Suite 2600
Newark, NJ 07102
For the Defendants Amerilist, AGR Marketing, U.S. Data Corp., REDX, LLC, Searchbug, Darkowl, Joy Rockwell Enterprises, Inc., Accuzip, Inc., The Alesco Group, L.L.C.

REED SMITH LLP
BY: LOUIS A. BAYLES, ESQUIRE
506 Carnegie Center
Suite 300
Princeton, NJ 08540
For the Defendant Sterling Data Company, LLC

MULLEN COUGHLIN LLC
BY: MICHAEL JERVIS, ESQUIRE
426 W. Lancaster Avenue
Suite 200
Devon, PA 19333
Counsel for Defendant PublicNSA, LLC

BUCHANAN INGERSOLL & ROONEY
BY: SAMANTHA L. SOUTHALL, ESQUIRE
Two Liberty Place
50 South 16th Street, Suite 3200
Philadelphia, PA 19102
Counsel for Defendant Zillow, Inc.

(PROCEEDINGS held in open court before The Honorable Harvey Bartle, III, United States District Judge, on July 30, 2026, at 10:00 a.m.)

THE DEPUTY COURT CLERK: All rise. The Honorable Harvey Bartle.

THE COURT: Good morning.

MS. ROMANO: Good morning, Your Honor.

THE COURT: First, is there anything anyone wishes to say with respect to the Motion for Reconsideration? I've read the briefs.

Mr. Stio, do you wish to say anything further about that, or anyone else from the defense side?

MR. STIO: Yes, Your Honor.

THE COURT: You may.

MR. STIO: Your Honor, I appreciate the Court reading the briefs and considering this application.

You know, the issue, Your Honor, that, you know, we have a group of defendants that are being sued for $19,000,000 each, and the Court's order, we believe, deprives the defendants of notice and the opportunity to be heard on important issues if four go forward and 39 or 38, whatever the number is, are stayed.

THE COURT: I think it's 41, but I may be wrong.

MR. STIO: Okay.

We believe that efficiencies can be achieved through

sequencing. And, you know, even if that sequencing occurs as part of the bellwether's and the Court was at least contemplating discovery for all defendants. But, you know, there's issues and initial steps that can be addressed that would apply to all the cases that I think will allow the cases to proceed more quickly, may result in settlement or resolution, and could result in all the issues going away. You know -- and the issues relate in our brief to Atlas's burden to prove and what is going to be the scope of discovery.

Now, Atlas says they're insignificant, but they're not. And they also allow the defendants to be heard. And I think that the issues could be done with a joint submission. I think they would -- could involve limited discovery. But, you know, some of the issues that -- at the initial stages, we believe, should be resolved, and there could be others. And Atlas may have global issues, you know, whether an authorized person sent the nondisclosure requests as required by Daniel's Law. It's a requirement of the elements of a claim. It's one of Atlas's burdens of proof. We think that if the defendants would brief that, the Court can decide that. That would help, I think, with discovery issues. It may dispose of the cases altogether. But that's one issue.

The other is -- this is more of a legal issue -- what is a disclosure or redisclosure on the internet or otherwise

making available? That issue is an essential element of claim. It can -- the resolution of that could apply to all the cases, and it would streamline, at a minimum, discovery.

And then what constitutes an unpublished telephone number? Again, another preliminary issue that consolidated briefing can achieve and a resolution would, again, streamline discovery.

The other benefit of that, with the sequencing issues, is you could have some res judicata effect because we're actually getting notice and the opportunity to be heard on these issues.

If this all occurs at the outset, I do believe that discovery could be streamlined and proceed more efficiently. But if the defendants are denied that opportunity, we think that there are due process concerns.

The other issue with the Court's ruling that we are concerned about is the ability to depose the plaintiffs and assignors. I think that after the first cases are going to be decided, Atlas and plaintiffs will take the position -- will know we're not going to produce the same person again. Forty-one defendants should not be forced to read the transcript and not be able to ask questions that they want an answer to.

If they are sequenced, if they're sequencing of discovery, that can be addressed without having to produce

people 41 times.

And finally, one of the issues that, you know, the bellwether model is the concept of an MDL. A bellwether works when there's common issues of causation, common issues of liability. It just doesn't exist here. Whether a defendant is liable, whether they're culpable is going to be on their own conduct and how they acted in response to the nondisclosure requests.

Four trials is not going to give any guidance on those issues for each defendant because those are fact-specific, and the Supreme Court in New Jersey already rejected the concept of consolidation. I know you're not bound by them, but I do just mention that.

And then finally, you know, even if this occurs, there are going to be defendants, assuming there's no resolutions, that aren't going to go to trial for ten years. I know the Court disagrees and I know Atlas disagrees, but even under Atlas's proposal that we can do this in a year, there's 45 cases. If you do it in a year, it's going to take, each case, 11 years. And defendants should not have to be waiting around, preserving evidence, not being able to make business decisions if they want to sell, if they want to retire.

We just think that it's unfair, it violates due process, and we would ask the Court to reconsider and either have issue sequencing or have a hybrid approach that allows

issue sequencing within any of these initial cases that are selected.

Thank you for your time.

THE COURT: Thank you.

Mr. Parikh.

MR. PARIKH: Thank you, Your Honor. Raj Parikh for the plaintiffs.

And I understand Your Honor has read the papers, so I won't belabor, kind of, the legal arguments about the standards for reconsideration.

But as Your Honor knows, this is -- the defendants have for 31 months now sought stay, after stay, after stay, after stay. This motion is just another attempt at doing so.

The idea of issue sequencing as an alternative isn't really viable. They have articulated issues at the same time saying that these are common issues, but on the other hand, also in the same sentence is saying, but all these cases are different and all these defendants are different.

They have made that representation that these cases are unique, that the defendants have different products, that the defendants have different systems. Time and time again, both in state court and here in front of Your Honor, it's the very reason that we have separate protective orders in every single case and restrictions on defendants' information being shared from one side to the other because the cases are, to some

extent, unique.

We -- as we said, when we were last time before Your Honor, we don't view these cases as being overly complicated cases. We've proposed a discovery schedule to the defendants for this -- for the first set of cases to -- for discovery to be done by February or March of 2027 with a trial happening about a year from now. They haven't agreed to that. They haven't been able to produce cases. Ultimately, if there are defendants that are eager to have their day in Court, then they should raise their hands and be the ones to come up here and we can move those cases forward.

The sequencing really is one-sided discovery. They want more discovery from Atlas without having to produce discovery from the defendants. We have suggested that -- to the extent that a party feels as though it needs to weigh in on a legal issue on one of the cases that are moving forward and a defendant in a case that's stayed, they can seek to intervene. If they are related. If they, for example, provide data to that defendant, or they can seek to submit an amicus brief and participate in whatever legal issues they believe are appropriate before the Court.

So for the reasons we talked about when we were here last time, what's in our papers, there are real -- no real due process concerns here. We understood when Your Honor said, you know, bellwether model, not to say that these are actual

bellwether cases, but that this -- the model being used here is a model of efficiency to allow some cases to move forward quickly so that we're not here ten years from now working on the first trial and that we can have a trial within a year or two.

With respect to this idea that it will be ten years before defendants have their day in Court, I don't think that's realistic. I do agree -- disagree with Mr. Stio. I think that once the first set of cases are done, you know, there are already cases that have been settled that were before this Court. There are additional cases where the parties are in settlement discussions. That process will continue as it would in any litigation.

And, you know, there may be some cases that are tried two or three years from now, but we do think that all of the cases here can be disposed of in relatively short order by allowing the Court to use its discretion to control its docket, to control discovery, and to move things forward, likely.

THE COURT: Thank you.

MR. PARIKH: Thanks, Judge.

THE COURT: Any other defendant wish to be heard on this particular motion?

(No response.)

All right.

I'm going to grant the reconsideration. I think that we -- it's not the best approach to pick two or three cases and move forward and stay all the other cases.

The reason I say that -- one of the reasons -- is that those two or three cases might settle, and then we're behind the eight-ball.

The better approach, in my view, is we proceed with written discovery with respect to all cases; that the depositions will be stayed until further order of court. And I want to move rather promptly so we're not here ten years from now. I think we can all agree that that's an unrealistic timetable and no one would want to follow that.

Now, let's start with the defendants. There are a lot of cases proceeding in the state court. Do defendants have a standard set of interrogatories that they are using in these cases, Mr. Stio? You have some state court cases, I believe.

MR. STIO: Yes.

Your Honor, there have been standard interrogatories and standard document requests with the ability for individual defendants to supplement it. And I don't know exactly how many supplemental interrogatories they can serve. I think five or ten. I have to look. But it's in Morris County, I think we did that, and I know we did it in Bergen County.

THE COURT: I know under the Federal Rules we're talking about 25 interrogatories. How many standard

interrogatories have there been? I don't know whether the state courts in New Jersey have any limit or not.

MR. STIO: State courts in New Jersey don't have a limit.

I don't recall. I seem to believe that it's more than 25, but I could be wrong.

Raj, do you know the answer?

MR. PARIKH: I'm sorry. I missed your question.

MR. STIO: About the number of interrogatories that we used in Bergen County.

THE COURT: In other words, I'm asking about if we permit written discovery to go forward, which I think is the route we should take, the optimal approach would be at least to have defendants use a set of standard interrogatories and request for production.

Now, I understand there may be some individualized interrogatories and requests. And I was asking Mr. Stio, in the state court, have the defendants agreed to a standard set of interrogatories?

MR. PARIKH: Yeah. The state court cases are on different tracks, Your Honor, but in a couple of different groupings of cases there were standard interrogatories that were sent. I don't remember the exact number, but I have to say it's probably around two or three dozen.

THE COURT: Two or three dozen.

MR. PARIKH: The interrogatories, you know, I mean, if we include subparts and everything else, they've sent -- some of the defendants in state court have sent thousands of interrogatories.

THE COURT: Well, of course, we're limited in the federal court --

MR. PARIKH: We are.

THE COURT: -- to 25.

MR. PARIKH: And I think what would make sense here, Judge, since they've said that all of these issues are common and they wanted sequencing, that, you know, it could be 20 standard interrogatories with five, you know, individualized interrogatories to the extent any defendant needs those. We would propose that that might make sense. I'm not sure what Mr. Stio thinks about that.

THE COURT: Well, it seems to me that's the proper approach. The defendants ought to be given some time, not a great deal of time, to come up with a standard set of interrogatories.

And maybe, Mr. Stio, you could take the lead and maybe send around a draft set of standard interrogatories. And obviously there will be some defendants who have particular questions they want to use.

So we can say maybe come up with 15 standard interrogatories, just to pick a number, but the total number

of interrogatories will be 25. So to the extent the parties can come up with standard interrogatories. And it seems to me that since you've done this in the state court cases it shouldn't take too long. So what we will do is say within -- I'll give you 35 days, right after Labor Day, that the defendants will serve all interrogatories and requests for production of documents. And, of course, that will not -- under New Jersey local rules, no contention interrogatories.

So I'll pick a date right after Labor Day, and during the interim the defendants will work to agree on a standard set of interrogatories. It will be limited to 25 interrogatories, total, each defendant.

And then -- any defendant have any objection to that?

MR. SZYBA: Your Honor just mentioned no contention interrogatories. That's not part of the local rules of New Jersey.

THE COURT: Well, I was looking at -- you're not supposed to file contention interrogatories at this time.

MR. SZYBA: Okay.

THE COURT: All right.

I have the local rules here somewhere.

THE COURT REPORTER: Sir, can I please have your name?

MR. SZYBA: I'm sorry?

THE COURT REPORTER: Your name, please.

MR. SZYBA: Rob Szyba, S-Z-Y-B-A.

THE COURT REPORTER: Thank you.

THE COURT: I think it's -- at any rate, I thought that you're not supposed to serve contention interrogatories. Yes, last 60 days. Somewhere.

In any event, we won't permit contention interrogatories at this point, regardless. We'll just do it without contention interrogatories.

MR. STIO: Your Honor, it would be 15 global, and then to the extent individual defendants --

THE COURT: Well, whatever you can agree to. It seems to me there are going to be 25 interrogatories, and I think the parties ought to be able to agree to a certain number leaving a few for --

MR. STIO: Individual issues by individual defendants.

THE COURT: Yes.

MR. STIO: Okay.

THE COURT: So unless everybody agrees that all we need is standard interrogatories, I suspect that won't be agreeable.

MR. STIO: Understood.

THE COURT: But have a number. I would try to -- as many as possible, and I'll leave it up to the defendants to try to work that out. But the goal is to have most of the

interrogatories standard interrogatories.

MR. STIO: Understood.

THE COURT: With the right to have supplemental, but with a total of 25 interrogatories, including subparts, as set forth in the federal rules.

MR. STIO: Understood.

THE COURT: And I'll give you -- I'll set a deadline for serving interrogatories which will be, we can say, since this is July 30th, we'll give you -- it's summertime. We'll set a date in early September for the service of interrogatories and requests for production of documents.

Let's talk about in terms of the responses. So I want this to move along so I'm going to set deadlines. Even though the rules talk about 30 days, it does permit the parties to stipulate to additional time, and I'm going to restrict that at this point. I'm going to set a deadline and with no further extensions except by order of Court. So if you need more time, you're going to have to have compelling reasons.

Now, if we said 40 days for the defendants to answer, that's ten days longer than the 30 days provided in the rules. It seems to me that should be enough time for everybody to file their answers or objections.

Is anybody unable to comply with that sitting in the room here today?

(No response.)

All right. Then we'll set that.

MR. STIO: So just a point of clarification --

THE COURT: Yes.

MR. STIO: -- if I may.

Each side, plaintiffs and defendants --

THE COURT: No. We're talking about defendants for the moment.

MR. STIO: Okay.

THE COURT: Because it's a little different. You have to work out standard interrogatories.

MR. STIO: Right.

THE COURT: That's not -- and you've got to have 40 people to agree on it.

MR. STIO: You said defendants have 40 days to answer.

THE COURT: Yes.

MR. STIO: Plaintiffs.

THE COURT: Oh, plaintiffs. You're absolutely right. The plaintiffs. Is that going to be a problem?

MR. PARIKH: For the defendants to answer within 40 days?

THE COURT: No; for you to answer their interrogatories.

MR. PARIKH: I don't think that's going to be a problem, Your Honor.

THE COURT: All right.

So we'll say after 40 days after service you'll answer the interrogatories and produce your documents.

All right. Now, let's turn to the plaintiffs. We'll deal with objections and so forth in a minute, but let's -- now, I assume you have a pretty standard set of interrogatories that you serve on the defendants. They may vary depending on the defendant.

MR. PARIKH: Yes, Your Honor, except I think there's one kind of nuance issue here. We haven't had 26(f) discussions with each of the defendants. And their computer systems and what is in their computer systems are critical evidence in each of these cases. This is why we thought that the approach of having a couple of cases move forward made sense, which I understand Your Honor's ruling on that.

But we would potentially want to take an early deposition of someone after a 26(f) conference to understand the contours of those computer systems to better tailor written discovery requests to attack the information needed. And so --

THE COURT: Have you done that in all the state court cases?

MR. PARIKH: In state court, because interrogatories and document demands can be done without question, there have been some inspections of database systems that have been done

and you -- we've then sent out supplemental interrogatories. So, no, there was not a deposition first amended interrogatories, but as a result of inspections that we've done with expert witnesses from both sides and to database systems, e-mail systems, et cetera, there have been supplemental interrogatories that have been sent.

So to the extent the plaintiffs here, you know, are going to be limited to 25 under the rules, we would think that the parties having a 26(f) conference, meaning plaintiffs with each defendant, and then potentially having to take a deposition of an IT person, or getting some documents with respect to that, would lead to more targeted discovery on the computer systems or interrogatories, which would ultimately make the cases move quicker.

THE COURT: Yes.

MR. SZYBA: Your Honor, if I may.

THE COURT: Come to the podium, please.

MR. SZYBA: Conceptually I don't disagree with what Mr. Parikh said. I just want to point out for the Court that local Rule 26.1(d) already addresses this by having a ESI conference process that the parties can follow. So there's no need for IT people depositions because there are specific things the parties are supposed to meet and confer about with each other, with their own clients, et cetera. That process is already laid out in the federal rules. Just for the

Court's consideration.

THE COURT: All right.

Mr. Shaw.

MR. SHAW: Good morning, Your Honor.

THE COURT: Good morning.

MR. SHAW: Adam Shaw for plaintiffs.

That's fine in concept, but it hasn't worked out so far. That's our problem. We saw the 26(a)(1)'s, which also have some of those same exact questions in them where they say, "please explain your systems," and we get lawyer answers. That's our concern here with some of this either interrogatories or even potentially the ESI conferences. You can't get back objections with lawyer answers. It's not -- it's not good information.

So if there's a mechanism for getting answers for their systems, which, in fact, in one of the state courts and in a lot of federal cases that I work on you have even informal conferences where you get our expert and their expert and you have a conference about that. If that can be ordered and people can give real information about it, that would be helpful.

As Your Honor knows, these cases are about the disclosures of information in their systems. So their systems are really critical to the Court and to the proof in the case.

So if there is a mechanism for us to get that

information, it would be helpful, and that's what my colleague was referring to.

THE COURT: What do you suggest?

MR. SZYBA: Again, I don't disagree conceptually. I'm just pointing out that there is that process. That process has not been utilized. No one has contacted me about an ESI specifically. There were some questions during the initial disclosures, responded to them. We gave the answers that were. That meet and confer process is specifically designed to create an efficient way of addressing those. If there's an issue then -- as there would be an issue at a deposition, we would bring it to the Court.

Having litigated many, many cases in this district utilizing that process, I've yet to be before a Court, with a judge, explaining why we were deficient in that ESI conference. So I have a relatively high degree of confidence in that process.

THE COURT: Mr. Stio.

MR. STIO: Your Honor, A. It has to be both ways, because they have a system that they haven't presented information on.

But, B. What they can't do is go on a fishing expedition.

So we did have a meet and confer with them and they said just give us a list of all your systems, a data map, and

we'll tell you which ones we want to see. That has the burden of proof backwards. There has to be a disclosure. They filed a complaint. I would assume as to each defendant they saw a disclosure. They should have seen 19,000, because that's how many claims they have. But at least as to each defendant, they can tailor their interrogatories to the systems where they've seen a disclosure.

And one of the things here is we make it publicly available on the internet. It's in the statute. Okay. We can have a discussion about what is publicly available on the internet. Just go in all of our systems, even if -- I'll give you an example. Innovis, it's a credit reporting agency. We have an internal database that we use for matching only. The Court already ruled that said, no. That's not within the scope of Daniel's Law if there's no disclosure outside of the organization.

So, look, I think that if they've seen disclosures, tell us what system, tell us where you have it, and they could tailor the requests to what they have seen when they filed the complaint. What they can't do is go on a fishing expedition.

I do agree with Rob. We could have this discovery conference. We can have parties from both sides that -- technical parties appear, but I am concerned about a fishing expedition.

MR. SHAW: Your Honor, as I said, this case is about

their disclosures of their systems. The other counsel is talking about a whole bunch of cases where people have ESI disclosures and never go to court. That's fine. In a typical case you say, Where is your e-mail? They tell you and it's not a big deal, but in this case it's critically important. And you're starting to hear some of the obfuscation that we are faced with, which is we have to identify in their behind-the-wall systems which places we're specifically looking at. That's not the way it works. They're supposed to give us a map. They're supposed to give us a general understanding of what it is. And if there's parts that they say, here's a part behind the mote in the castle that doesn't deal with you, then you say, okay, fine. We're not going to go there. But you have to see the map and you have to see the understanding of it.

And, importantly, don't forget, my client sat for eight hours for all of them to ask questions about their system already as part of the remand and jurisdictional thing. So the idea that somebody has to sit -- that they have to sit down and explain a little about systems, either through informal means, which would be great if the Court ordered, you know, our consulting experts to sit with their consulting experts to understand this stuff. That's fine. Or some more formal method. But what we can't get is lawyers answers saying, You have the burden of proof on disclosure. You

figure it out with a scalpel before we even know anything about it. That's not the way it's supposed to work.

THE COURT: Mr. Stio, I think your clients -- the defendants are the ones that have the information. The plaintiff said there's been disclosure and they want to understand your system. And only you understand that. So it seems to me you have an obligation to produce that information to the plaintiffs.

MR. STIO: Every system, regardless of what --

THE COURT: The system that involved the disclosures.

MR. STIO: All right.

THE COURT: Right. That's what we're talking about.

MR. STIO: Are they going to give us the platform, information about the platform? It has to be a two-way street, Your Honor.

THE COURT: We're talking about what you have to produce.

MR. PARIKH: Your Honor, we have already produced to each of these defendants hundreds of thousands of pages of documents, depositions, et cetera. But --

THE COURT: I'm not going to be happy if games are going to be played about this, Mr. Stio.

MR. PARIKH: Your Honor, that's honestly what we faced in the state court is that there has been, you know, there has been constant battles about things. There are some

defendants here in federal court, Judge, who claimed that they never received the emails from covered persons. Right? And so their email system may be part of discovery for those particular defendants.

THE COURT: Right.

MR. PARIKH: You know, what we're talking about now is literally 40 separate ESI conferences, you know, perhaps depositions in some of those --

THE COURT: We're going to start with -- I think the conferences make a lot of sense. And I expect everybody to act in good faith, because I'm really -- if I think games are being played, gentlemen and ladies, I'm going to come down harder on you. Really. We're not going to delay this.

MR. STIO: Your Honor, I just want to respond. The defendants -- I have not played games, and --

THE COURT: I'm not saying you are. I'm just saying -- I'm putting a warning out there.

MR. STIO: -- say that they produced a witness that discussed their system. I will give you --

THE COURT: I'm not talking -- Mr. Stio, I'm not talking about their system. I'm talking about the defendant's systems at this point. You can't come up with an argument because they're bad boys we can be bad boys.

MR. STIO: No. I'm just asking for equity. If we're going to have the e-discovery conference, it should be both

parties' systems.

MR. PARIKH: That's what happens in an ESI conference, Your Honor; it's to discuss those things. We've never --

MR. STIO: Yeah. As long as you're okay with that.

MR. PARIKH: This -- we -- discovery should be two ways. We're not afraid of anything here. Right? It's the defendants overall that have tried to do this.

I don't want to beat a dead horse, Your Honor, but I would like to make an alternative suggestion.

THE COURT: Go ahead.

MR. PARIKH: You know, going back to a hybrid approach between what Your Honor decided a month ago in terms of four cases and what we're talking about now, which is 41 cases. Why don't we have the parties identify four cases each and have the ESI conference on those and start --

THE COURT: No. We're not going to do that. We're going to go forward. We just have to move forward, and if it turns out games are being played, then we'll have another conference and we're going to -- I'm going to make some decisions. I'd rather have you do it. And I'm serious. Defendants have got to disclose their systems and not say that the plaintiff has to figure it out before you disclose it. It doesn't make any sense to me.

It's going to happen sooner or later, and let's make it

sooner. Let's do it the easy way rather than have the Court order it. Defendants seem to want to move forward so the thing doesn't last ten years, this matter. Well, let's move forward. Either you do or you don't.

Early on in this case you wanted me to stay everything, and now you want to move forward. Well, I'm going to give you an opportunity to move forward.

So you can serve your interrogatories, and I'll give you the same date as I do the defendants. And in that time, if you want to confer, I hope the parties will confer, and let's get it done.

Now, the defendants ought to be able to answer the interrogatories within 40 days also. The plaintiffs are going to answer 40 sets. Each defendant can certainly answer their interrogatories and produce their documents in 40 days, and there will be no extensions without approval of the Court.

Now, if there are -- inevitably there will be objections. One side won't be satisfied with the answers of the other side. Then we'll say 20 days after the answers or objections are filed. Then the parties can file motions. In that 20 days you can confer and see if you can't work out the problem. And then any response or brief will be ten days thereafter. I'll put this all on an order. And I'm going to handle all discovery matters. I know the custom in New Jersey is for the magistrate judge to do it. I'm going to deal with

it. And we'll see where we are.

So I'm going to have the answers and objections in 40 days after the service, 20 days to confer. If that doesn't resolve some of the issues, motion to compel, response in ten days. And then we'll deal with the -- we'll see where we go from there. At least that aught to get the ball rolling here.

MR. STIO: Your Honor?

THE COURT: Yes.

MR. STIO: Another question.

We have the limited 25 interrogatories.

THE COURT: Right.

MR. STIO: Is there any limit on the request for production?

THE COURT: I don't have Rule 34 before me. Does that have a limit also? I just don't recall.

MR. STIO: It does not.

MR. PARIKH: It does not, Judge.

MR. STIO: I understand the 40 days, but if we get a hundred requests for production --

THE COURT: We shouldn't have a hundred -- what do you recommend?

MR. STIO: Maybe 40 requests for production, 35.

THE COURT: Well, why don't we say 30 requests for production. What in the world --

MR. PARIKH: As long as they're not playing games on

electronic discovery, that's fine with us, Judge.

THE COURT: We'll say 30. And again, as I mentioned previously, there is a provision in Rule 26 about proportionality. I mean, let's try to be reasonable here now. Let's keep our eye on the ball.

MR. PARIKH: Judge, I also want to clarify that you're requiring each of the defendants to have an ESI conference, you know, the 26(f) meet and confer and ESI conference before -- -

THE COURT: Yes. I think it can be done.

MR. PARIKH: Yeah.

THE COURT: I don't know whether it can be -- I hope it can be done during the next -- a little over a month, and we'll see what happens.

I really expect this to move quickly. For the music lovers, we're not going to have the adagio mode. We're going to be allegretto, or we're going to be in third gear, not first gear. That's another way of looking at it.

So let's get this moving. This case has been around over two years. Nobody's fault. There have been a lot of important motions filed, and they take time. Now it's time to move forward here.

MR. PARIKH: With respect to the motion to compel, Your Honor, is it that the defendants are going to file kind of one joint brief on their coordinated requests and then

supplemental briefs, or --

THE COURT: The motions to compel?

MR. PARIKH: Yes. So what I'm concerned about, Your Honor, is that -- that 20 days after we get, you know, interrogatory -- you know, 41 sets of interrogatory and document and demand responses, we have to meet and confer in that 20 days, come up with issues, and also file motions.

THE COURT: We'll make it 30 days. I think that's more reasonable. After the answers, 30 days. No later than 30 days motions to compel. And I think that's more reasonable. Let's try to -- and also, I would urge the parties, no boilerplate objections. The idea that you have -- you have three pages of objections to an interrogatory, and then without waiving the objections, here's the answer. Let's target the objections. If they're legitimate objections, make them. Let's not have every objection that's known to man included. It's ridiculous. It just wastes everybody's time and effort when I read objections to interrogatories, two pages of them.

MR. PARIKH: Understood.

With respect to the motion to compel, what I was asking, Your Honor, is that because the defendants are sending coordinated requests to the plaintiffs, I don't want to be in the position where we've got 41 motions to compel from each defendant.

THE COURT: Well, I would hope not. I would hope it would be consolidated. In other words, if there's a standard interrogatory that's served on the plaintiffs and there's one answer that applies to all 41 cases and the defendants are dissatisfied with that, or object to it, I don't expect 41 briefs. I mean, I think the defendants have been very good about filing consolidated briefs to help expedite things, and I applaud that. So I would hope that would be the case. Although I can't order it because I just don't know what the issue is going to be.

MR. PARIKH: Understood.

THE COURT: Let's try to remember Rule 1.

MR. PARIKH: Understood.

THE COURT: We go forward here.

MR. PARIKH: Thank you.

THE COURT: And then I think we'll just have to see where we go from here.

In the meantime, all depositions will be stayed and we'll get the interrogatory answers and requests for production of documents. And if anybody wants to file, you know, a request for admissions, so we'll be limiting to -- discovery will be limited to Rule 33, 34, and 36 at this point.

Anything else we need to -- I think this way we'll move the cases forward and once we get the paper discovery -- I'll

call it the paper discovery, written discovery completed, and if there are problems, then we'll deal with them. We'll have another conference if there's issues about the motions to compel. Maybe I can decide those on the papers, maybe I can't. Maybe I'll need to have a hearing to deal with some of these issues. I know that there's some complications here. It's not the run-of-the-mill case.

But I do expect the parties to work in good faith in terms of the form of the interrogatories and requests and also in the responses and not a lot of boilerplate objections just for the purposes of delay.

MR. STIO: Understood, Your Honor.

THE COURT: All right.

MR. STIO: Can I ask two qualifications?

THE COURT: Sure.

MR. STIO: On the RFPs, is it -- for the plaintiffs, is it the same? Come to maybe 25, and then five individual ones if we needed it?

THE COURT: Well --

MR. PARIKH: That's what's worked in some of the other state court cases, Judge.

MR. STIO: Yes.

THE COURT: So you want to say the plaintiffs would have five -- 25 standard and five individual? Is that what you want?

MR. PARIKH: No, no. I think they're saying the defendants would have 25 standard document requests.

THE COURT: Oh, fine. That makes sense.

MR. STIO: And five individual.

MR. PARIKH: Five individualized document requests.

THE COURT: In terms of interrogatories, what do you propose, Mr. Stio, in terms of standard?

MR. STIO: I have to confer. It's not going to be more than 25, but I'm thinking 15 and 10, or 20 and 5.

THE COURT: Well, I'm going to leave it up to you. We don't need to decide that today, but the total will be 25, and I'll put that in the order. And I will say my hope is that as many standard interrogatories is possible.

MR. STIO: Understood.

MR. PARIKH: Judge, on the request for production of documents, I think they should all be standard, frankly, from the defendants, because what specialized information could they be seeking from us, right? The only -- the list of assignors that's different for every single case has already been produced in multiple fashions. The documents related to those assignors, you know, have already been produced to the defendants. And by having a, you know, 20 plus five, the defendants essentially are going to then have, you know, 200 extra requests for production of documents because they all have a joint defense agreement and they share it.

THE COURT: Well, a lot of information, you say, has been produced as part of the initial disclosures, correct?

MR. PARIKH: That's correct.

THE COURT: Do you agree with that, Mr. Stio? I mean, you do have -- you don't?

MR. STIO: No. I don't believe a lot of the information has been produced. I believe that they gave us a document dump of a lot of pages, but it was not -- it wasn't close to what we needed.

Your Honor, I can tell you this.

THE COURT: Go ahead.

MR. STIO: In state court, when we did this, not every defendant served supplements on interrogatories. Not everyone served additional RFPs, but there are specific issues as to specific defendants that they need to ask, and what I would ask the Court is there's 25 interrogatories, 20 global, 5 individual, to the extent it's individualized --

THE COURT: Well, I think it would be better for me not to be arbitrary about the number of standard interrogatories or requests for production. You understand the thrust of my position.

MR. STIO: We won't take advantage.

THE COURT: Let's have as many standard interrogatories and requests for production as possible. It's just going to help expedite the case. It seems to me that

many of the issues are the same for all defendants, the critical issues. There may be some particularized need for information.

So I'll let you and other defense counsel work it out. I will just say in the order that it is my hope and desire that you have as many -- in order to expedite things, have as many standard interrogatories and requests for production as possible. And I have good -- you're all officers of the court. I assume you're going to act in good faith, unless I have reason to doubt it. I think we'll just have to leave it at that, Mr. Parikh.

MR. PARIKH: That's fine, Your Honor.

THE COURT: It's going to be obvious in the next few months whether games are being played or whether they aren't being played.

MR. PARIKH: Uh-huh.

THE COURT: So I may not know now, but I will know in a few months. So I just hope the lawyers will move to expedite this thing. Defendants want to move forward. Well, let's move forward.

MR. PARIKH: That makes sense, Judge.

THE COURT: I assume the plaintiffs do, too. You're the ones who are seeking relief. I'd like it to move forward also.

So it seems to me that's where we ought to stand at

this point, and we'll see what happens. We'll enter a scheduling order, vacate the old one. And then once we complete this phase, then we'll have to decide where we go next in terms of depositions, what depositions we need to take, how we work out depositions of the plaintiffs' witnesses so we don't have 40 separate depositions. We work out some procedure for one deposition and the opportunity for maybe all counsel to participate or have representative counsel participate. But that we don't need to decide today.

I think if we do that, then we'll be -- then at some point, obviously, I can only try one case at a time. I can't try 40 at a time. So at some point down the road we're going to have to pick and choose. I think it's a bit premature to be doing it now. And of course in the meantime there may be settlements of cases and that sort of thing, which will reduce the number of cases for which we have to deal.

MR. STIO: Thank you, Your Honor.

THE COURT: Anybody else have -- any defense counsel in the room have any thoughts about this schedule now? Speak now or forever hold your peace.

(No response.)

MR. PARIKH: Judge, we have two other housekeeping issues on cases.

THE COURT: Yes.

MR. PARIKH: I'm sorry. Did you have something else

on this?

MR. SHAW: Well, we're still talking about that subject of all of these cases, Your Honor. I appreciate that you're willing to get involved in the discovery aspect of the case, which is normally with a magistrate.

Would Your Honor be willing to have your offices available for settlements? When we were talking about the four cases that would go forward, Your Honor mentioned if some settled, that would put things behind. We saw that as a feature, not a bug, of the process of identifying some cases early. If there's settlement prospects in the wind, is that something that Your Honor would be willing -- assuming that the defendant would --

THE COURT: Either I would do it or -- what I would do is have a magistrate judge in Philadelphia handle it. In the Eastern District of Pennsylvania every judge is paired with a particular magistrate judge. I don't know how it's done here in New Jersey, but I think it would be inappropriate to have a New Jersey magistrate judge handle it for the same reason that we don't have a New Jersey federal district judge involved in these cases.

So we can certainly work that out. I probably would not want to myself get too involved in the settlement of cases. I've always been a little reluctant to do that since I'm going to be presiding over the trial. I will certainly

help facilitate that. You would get in touch with me with the particular defendants. We can set up a phone conference to talk about that and work out something.

MR. STIO: We're fine with that, Your Honor.

THE COURT: If that's agreeable.

I'm going to be away for a couple weeks in August, so I try to be responsive as I can. If I don't -- if there's radio silence for a couple of weeks in August, it isn't that I've forgotten about all of you. Although I may try to forget about all of you while I'm away on vacation.

MR. SHAW: We did the same, Your Honor.

THE COURT: All right.

Anything further?

MR. PARIKH: Yes.

THE COURT: Yes. Go ahead.

MR. PARIKH: There's two housekeeping issues, Your Honor.

So with respect to Quantarium and Innovative Web Solutions, those two defendants. When we were here last we had mentioned to Your Honor that they had not served their Rule 26 disclosures as previously ordered by the Court.

THE COURT: I thought they said they were going to do that.

MR. PARIKH: They did. We just got them on July 29th, so I think that might be yesterday or the day before.

Yesterday.

THE COURT: Very good.

MR. PARIKH: But they're deficient, Judge. They haven't identified things. All I'd ask is that Your Honor set an outside deadline. We're happy to get on the phone with them today or tomorrow to talk about the issues.

THE COURT: Is counsel for that company here? Come forward, please.

MS. MCCUSKER: Good morning, Your Honor.

THE COURT: Good morning.

MS. MCCUSKER: Rebecca McCusker on behalf of the defendants.

I am just filling in for John Mills, so I don't have specific knowledge on the deficiencies you raise. However, when I leave court today I can hop on the phone with him and have him call you thereafter and address those.

MR. PARIKH: As long as there's an outside deadline. We've had some trouble getting responses from counsel on these two cases. So if Your Honor just says within a week they're going to be supplemented, then that's fine.

THE COURT: Well, I don't know whether they're deficient, but it seems to me that at least defense counsel should be available for discussion with Mr. Parikh. So if you would advise your colleague that I would very much appreciate his making time available in the next week to confer with Mr.

Parikh and try to get this worked out.

MS. MCCUSKER: Sure, Your Honor. I don't see that being an issue.

THE COURT: All right.

MR. PARIKH: There's also an issue --

THE COURT: Thank you very much.

MR. PARIKH: Thank you, Your Honor.

-- with respect to Yardi Systems there's a dispute. We sent them an email earlier this week. It relates to an attorneys' eyes only designation on an insurance policy that was produced. We said, you know, this is the wrong designation for the policy. It should be, you know, reduced down to confidential. There's really no reason why it's attorneys' eyes only.

We then got a supplemental Rule 26 disclosure withdrawing that. So I just flag for the Court that that's another issue. We're happy to talk to counsel. We emailed them earlier this week. We haven't heard back.

THE COURT: Is counsel here for that defendant?

(No response.)

Well, you can convey to them that I appreciate your having a discussion with them in the next week.

MR. PARIKH: Thank you, Judge.

And then the last two questions, Your Honor. So I know the Kleissner case --

THE COURT: We just gave an extension on that.

MR. PARIKH: Correct. I very much appreciate that, Your Honor.

So I assume that case is going to be on its own track for now.

THE COURT: Yes.

MR. PARIKH: And then I think there's the motion to amend on True Software that's still pending.

THE COURT: I know. That's one that I have to deal with yet.

MR. PARIKH: Okay.

THE COURT: That's, I think, the only other outstanding.

MR. PARIKH: That's correct, Judge, yeah. So we'll leave that case aside also with respect to this process.

THE COURT: Right. Exactly.

MR. PARIKH: Okay. Thank you, Your Honor.

THE COURT: All right. Everyone have a wonderful August.

MR. STIO: Thank you, Your Honor.

THE DEPUTY COURT CLERK: All rise.

(Court concludes at 10:51 a.m.)

FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE

- - - - - - - - - - - - - - - - - - - - - -

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

I

**/S/ Megan McKay-Soule, RDR, CRR** **August 4, 2026**

Court Reporter Date

**$**

**$19,000,000** [1] - 15:18

**/**

**/S** [1] - 53:11

**0**

**07016** [1] - 14:3
**07052** [1] - 12:3
**07102** [3] - 12:20, 13:17, 14:10
**07601** [1] - 14:7
**07728** [1] - 13:6
**07962** [1] - 13:3
**08101** [1] - 1:17
**08540** [1] - 14:15
**08543** [1] - 12:6

**1**

**1** [2] - 12:3, 42:12
**10** [1] - 44:9
**100** [2] - 13:6, 13:20
**10005** [1] - 13:20
**10018** [1] - 12:10
**10036** [1] - 13:14
**10075** [1] - 12:17
**101** [1] - 12:3
**10601** [1] - 13:10
**108** [1] - 14:3
**10:00** [2] - 1:18, 15:3
**10:51** [1] - 52:22
**11** [1] - 18:20
**12207** [1] - 11:23
**15** [3] - 24:24, 26:9, 44:9
**1515** [1] - 13:23
**16th** [1] - 14:22
**1717** [1] - 12:13
**1735** [1] - 12:23
**19,000** [1] - 33:4
**19102** [2] - 13:23, 14:22
**19103** [2] - 12:14, 12:23
**19333** [1] - 14:19

**2**

**20** [9] - 24:11, 38:19, 38:21, 39:3, 41:4, 41:7, 44:9, 44:22, 45:16
**200** [3] - 13:10, 14:18, 44:23
**201** [1] - 13:20
**2026** [3] - 1:18, 15:3, 53:11
**2027** [1] - 20:6
**2050** [1] - 13:23
**21117** [1] - 12:17
**24-10600** [1] - 9:20
**24-11023** [1] - 10:2
**24-4037** [1] - 1:4
**24-4041** [1] - 1:10
**24-4045** [1] - 2:2
**24-4075** [1] - 2:8
**24-4080** [1] - 2:15
**24-4096** [1] - 2:21
**24-4098** [1] - 3:2
**24-4103** [1] - 3:8
**24-4141** [1] - 3:14
**24-4143** [1] - 3:20
**24-4160** [1] - 4:2
**24-4174** [1] - 4:8
**24-4176** [1] - 4:15
**24-4178** [1] - 4:21
**24-4256** [1] - 5:2
**24-4261** [1] - 5:9
**24-4269** [1] - 5:14
**24-4292** [1] - 5:20
**24-4324** [1] - 6:2
**24-4345** [1] - 6:8
**24-4383** [1] - 6:14
**24-4385** [1] - 6:20
**24-4389** [1] - 7:2
**24-4434** [1] - 7:8
**24-4609** [1] - 7:14
**24-4664** [1] - 7:20
**24-5600** [1] - 8:2
**24-5656** [1] - 8:8
**24-5658** [1] - 8:15
**24-5775** [1] - 8:21
**24-7324** [1] - 9:2
**24-8075** [1] - 9:8
**24-8451** [1] - 9:14
**25** [16] - 14:6, 22:25, 23:6, 24:8, 25:1, 25:11, 26:12, 27:4, 30:8, 39:10, 43:17, 43:24, 44:2, 44:9, 44:11, 45:16
**25-12137** [1] - 11:15
**25-1535** [1] - 10:8
**25-5989** [1] - 10:14
**25-6863** [1] - 10:20
**25-9224** [1] - 11:2
**25-9963** [1] - 11:8
**26** [3] - 40:3, 49:21, 51:15
**26(a)(1)'s** [1] - 31:8
**26(f** [4] - 29:10, 29:17, 30:9, 40:8
**26.1(d** [1] - 30:20
**2600** [1] - 14:10
**29th** [1] - 49:25

**3**

**30** [10] - 1:18, 11:22, 15:3, 27:14, 27:20, 39:23, 40:2, 41:8, 41:9, 41:10
**300** [1] - 14:15
**301** [1] - 12:6
**30th** [1] - 27:9
**31** [1] - 19:12
**3200** [1] - 14:22
**32nd** [1] - 12:9
**33** [1] - 42:22
**34** [2] - 39:14, 42:22
**35** [2] - 25:5, 39:22
**36** [1] - 42:22
**38** [1] - 15:21
**39** [1] - 15:21

**4**

**4** [3] - 13:6, 14:3, 53:11
**40** [14] - 27:19, 28:12, 28:14, 28:20, 29:2, 36:7, 38:13, 38:14, 38:15, 39:2, 39:18, 39:22, 47:6, 47:12
**400** [1] - 12:6
**401** [1] - 12:17
**41** [7] - 15:23, 18:1, 37:14, 41:5, 41:24, 42:4, 42:5
**426** [1] - 14:18
**45** [1] - 18:18
**4th** [1] - 1:17

**5**

**5** [3] - 13:10, 44:9, 45:17
**50** [1] - 14:22
**506** [1] - 14:14
**51st** [1] - 12:23

**6**

**60** [1] - 26:5
**609** [1] - 1:22
**610** [1] - 12:13
**620** [1] - 12:9

**7**

**7** [1] - 13:14

**8**

**800** [1] - 13:17
**815-2319** [1] - 1:22

**A**

**a.m** [3] - 1:18, 15:3, 52:22
**ability** [2] - 17:17, 22:19
**able** [5] - 17:22, 18:21, 20:8, 26:13, 38:12
**above-entitled** [1] - 53:5
**absolutely** [1] - 28:18
**Accudata** [1] - 13:11
**ACCURATE** [1] - 4:24
**ACCUZIP** [1] - 6:17
**Accuzip** [1] - 14:12
**achieve** [1] - 17:6
**achieved** [1] - 15:25
**act** [2] - 36:11, 46:9
**acted** [1] - 18:7
**ACTION** [41] - 1:3, 1:9, 2:1, 2:7, 2:13, 2:20, 3:1, 3:7, 3:13, 3:19, 4:1, 4:7, 4:14, 4:20, 5:1, 5:7, 5:13, 5:19, 6:1, 6:7, 6:13, 6:19, 7:1, 7:7, 7:13, 7:19, 8:1, 8:7, 8:14, 8:20, 9:1, 9:7, 9:13, 9:19, 10:1, 10:7, 10:13, 10:19, 11:1, 11:7, 11:14
**actual** [1] - 20:25
**adagio** [1] - 40:16
**Adam** [1] - 31:6
**ADAM** [1] - 11:22
**additional** [3] - 21:11, 27:15, 45:14
**address** [1] - 50:16
**addressed** [2] - 16:4, 17:25
**addresses** [1] - 30:20
**addressing** [1] - 32:10
**admissions** [1] - 42:21
**advantage** [1] - 45:22
**advise** [1] - 50:24
**afraid** [1] - 37:7
**agency** [1] - 33:12
**ago** [1] - 37:13
**AGR** [2] - 11:17, 14:11
**agree** [8] - 21:8, 22:11, 25:10, 26:11, 26:13, 28:13, 33:21, 45:4
**agreeable** [2] - 26:21, 49:5
**agreed** [2] - 20:7, 23:18
**agreement** [1] - 44:25
**agrees** [1] - 26:19
**ahead** [3] - 37:11, 45:11, 49:15
**aided** [1] - 1:23
**al** [81] - 1:4, 1:7, 1:10, 1:13, 2:1, 2:5, 2:8, 2:11, 2:14, 2:17, 2:20, 2:23, 3:1, 3:5, 3:7, 3:10, 3:13, 3:19, 3:23, 4:1, 4:5, 4:8, 4:11, 4:14, 4:18, 4:21, 4:24, 5:1, 5:4, 5:7, 5:10, 5:13, 5:16, 5:19, 5:22, 6:1, 6:5, 6:8, 6:11, 6:14, 6:17, 6:20, 6:23, 7:1, 7:5, 7:8, 7:14, 7:17, 7:20, 7:23, 8:1, 8:5, 8:8, 8:11, 8:14, 8:17, 8:20, 8:23, 9:1, 9:4, 9:7, 9:10, 9:13, 9:17, 9:20, 9:23, 10:1, 10:4, 10:7, 10:11, 10:14, 10:17, 10:20, 10:23, 11:1, 11:4, 11:7, 11:11, 11:14, 11:18, 12:11
**Albany** [1] - 11:23
**Alesco** [1] - 14:12
**ALESCO** [1] - 8:11
**allegretto** [1] - 40:17
**Alliance** [1] - 12:14
**ALLIANCE** [1] - 3:4
**allow** [3] - 16:5, 16:12, 21:2
**allowing** [1] - 21:17
**allows** [1] - 18:25
**alternative** [2] - 19:14, 37:10
**altogether** [1] - 16:23
**AlumniFinder** [1] - 13:11
**amend** [1] - 52:8
**amended** [1] - 30:2
**AMERICA** [1] - 6:4
**AMERILIST** [1] - 8:23
**Amerilist** [1] - 14:11
**amicus** [1] - 20:20
**Analytics** [1] - 13:7
**ANGELO** [1] - 12:5
**answer** [12] - 17:23, 23:7, 27:19, 28:15, 28:20, 28:22, 29:2, 38:12, 38:14, 41:14, 42:4
**answers** [11] - 27:22,

31:10, 31:13, 31:15, 32:8, 34:24, 38:18, 38:19, 39:2, 41:9, 42:19
**appear** [1] - 33:23
**Appearances** [1] - 11:25
**APPEND** [1] - 4:24
**applaud** [1] - 42:8
**application** [1] - 15:16
**applies** [1] - 42:4
**apply** [2] - 16:5, 17:2
**appreciate** [5] - 15:15, 48:3, 50:24, 51:21, 52:2
**approach** [7] - 18:25, 22:2, 22:7, 23:13, 24:17, 29:14, 37:13
**appropriate** [1] - 20:21
**approval** [1] - 38:16
**arbitrary** [1] - 45:19
**Arch** [1] - 12:13
**argument** [1] - 36:22
**arguments** [1] - 19:9
**articulated** [1] - 19:15
**aside** [1] - 52:15
**ASL** [1] - 13:11
**aspect** [1] - 48:4
**assignors** [3] - 17:18, 44:19, 44:21
**assume** [5] - 29:6, 33:3, 46:9, 46:22, 52:4
**assuming** [2] - 18:15, 48:12
**Atlas** [5] - 16:11, 16:17, 17:19, 18:17, 20:13
**ATLAS** [41] - 1:3, 1:9, 2:1, 2:7, 2:13, 2:20, 3:1, 3:7, 3:13, 3:19, 4:1, 4:7, 4:14, 4:20, 5:1, 5:7, 5:13, 5:19, 6:1, 6:7, 6:13, 6:19, 7:1, 7:7, 7:13, 7:19, 8:1, 8:7, 8:14, 8:20, 9:1, 9:7, 9:13, 9:19, 10:1, 10:7, 10:13, 10:19, 11:1, 11:7, 11:14
**Atlas's** [3] - 16:8, 16:20, 18:18
**attack** [1] - 29:19
**attempt** [1] - 19:13
**attorneys'** [2] - 51:10, 51:14
**aught** [1] - 39:6
**August** [4] - 49:6, 49:8, 52:19, 53:11
**authorized** [1] - 16:17
**available** [6] - 17:1, 33:9, 33:10, 48:7, 50:23, 50:25
**Avenue** [5] - 12:9, 13:3, 13:10, 14:3, 14:18

**B**

**backwards** [1] - 33:2
**bad** [2] - 36:23
**ball** [3] - 22:6, 39:6, 40:5
**BALLARD** [1] - 12:22
**Bartle** [2] - 15:2, 15:5
**BARTLE** [1] - 1:19
**battles** [1] - 35:25
**BAYLES** [1] - 14:14
**beat** [1] - 37:9
**behalf** [1] - 50:11
**behind** [4] - 22:5, 34:8, 34:12, 48:9
**behind-the-wall** [1] - 34:8
**belabor** [1] - 19:9
**bellwether** [4] - 18:3, 20:25, 21:1
**bellwether's** [1] - 16:2
**benefit** [1] - 17:8
**Bergen** [2] - 22:23, 23:10
**BERMAN** [1] - 13:9
**best** [1] - 22:2
**better** [3] - 22:7, 29:18, 45:18
**between** [1] - 37:13
**big** [1] - 34:5
**BISGAARD** [1] - 13:16
**bit** [1] - 47:13
**BOIES** [1] - 11:21
**boilerplate** [2] - 41:12, 43:10
**Boland** [1] - 12:3
**Boulevard** [1] - 12:17
**Bound** [1] - 13:11
**bound** [1] - 18:12
**boys** [2] - 36:23
**BRIAN** [1] - 13:16
**brief** [5] - 16:8, 16:21, 20:20, 38:22, 40:25
**briefing** [1] - 17:6
**briefs** [5] - 15:10, 15:16, 41:1, 42:6, 42:7
**bring** [1] - 32:12
**BRISBOIS** [1] - 13:16
**BUCHANAN** [1] - 14:20
**bug** [1] - 48:10
**Building** [1] - 1:16
**bunch** [1] - 34:2
**burden** [3] - 16:9, 33:1, 34:25
**burdens** [1] - 16:20
**business** [1] - 18:21
**BY** [19] - 11:22, 12:2, 12:5, 12:9, 12:12, 12:16, 12:19, 12:22, 13:5, 13:9, 13:13, 13:16, 13:19, 13:22, 14:2, 14:5, 14:9, 14:14, 14:17

**C**

**Camden** [1] - 1:17
**Caption** [1] - 6:25
**Captions** [9] - 1:25, 2:25, 3:25, 4:25, 5:25, 7:25, 8:25, 9:25, 10:25
**Carnegie** [2] - 12:6, 14:14
**CAROLINE** [1] - 13:22
**case** [18] - 18:19, 19:24, 20:17, 31:24, 33:25, 34:4, 34:5, 38:5, 40:19, 42:8, 43:7, 44:19, 45:25, 47:11, 48:5, 51:25, 52:4, 52:15
**cases** [56] - 16:5, 16:22, 17:3, 17:18, 18:19, 19:1, 19:17, 19:19, 19:25, 20:3, 20:4, 20:5, 20:8, 20:11, 20:16, 21:1, 21:2, 21:9, 21:10, 21:11, 21:14, 21:16, 22:2, 22:3, 22:5, 22:8, 22:14, 22:16, 23:20, 23:22, 25:3, 29:13, 29:14, 29:22, 30:14, 31:17, 31:22, 32:13, 34:2, 37:14, 37:15, 42:4, 42:25, 43:21, 47:15, 47:16, 47:23, 48:3, 48:8, 48:10, 48:21, 48:24, 50:19
**castle** [1] - 34:12
**causation** [1] - 18:4
**Center** [4] - 12:6, 12:20, 14:9, 14:14
**certain** [1] - 26:13
**certainly** [3] - 38:14, 48:22, 48:25
**CERTIFICATE** [1] - 53:1
**certify** [1] - 53:4
**cetera** [3] - 30:5, 30:24, 35:20
**choose** [1] - 47:13
**Civil** [1] - 13:7
**CIVIL** [42] - 1:3, 1:9, 2:1, 2:7, 2:13, 2:20, 3:1, 3:7, 3:13, 3:19, 3:22, 4:1, 4:7, 4:14, 4:20, 5:1, 5:7, 5:13, 5:19, 6:1, 6:7, 6:13, 6:19, 7:1, 7:7, 7:13, 7:19, 8:1, 8:7, 8:14, 8:20, 9:1, 9:7, 9:13, 9:19, 10:1, 10:7, 10:13, 10:19, 11:1, 11:7, 11:14
**claim** [2] - 16:19, 17:2
**claimed** [1] - 36:1
**claims** [1] - 33:5
**clarification** [1] - 28:2
**clarify** [1] - 40:6
**CLARK** [1] - 13:22
**CLERK** [2] - 15:4, 52:21
**client** [1] - 34:16
**clients** [2] - 30:24, 35:3
**close** [1] - 45:9
**cohen** [1] - 1:16
**colleague** [2] - 32:1, 50:24
**College** [1] - 13:11
**Commencing** [1] - 1:18
**Commerce** [1] - 13:7
**COMMERCE** [1] - 4:4
**common** [4] - 18:4, 19:16, 24:10
**COMPACT** [1] - 9:16
**Compact** [1] - 13:11
**company** [1] - 50:7
**Company** [1] - 14:16
**COMPANY** [1] - 11:10
**compel** [7] - 39:4, 40:23, 41:2, 41:10, 41:21, 41:24, 43:4
**compelling** [1] - 27:18
**complaint** [2] - 33:3, 33:20
**complete** [1] - 47:3
**completed** [1] - 43:1
**complicated** [1] - 20:4
**complications** [1] - 43:6
**comply** [1] - 27:23
**computer** [5] - 1:23, 29:11, 29:12, 29:18, 30:13
**computer-aided** [1] - 1:23
**concept** [3] - 18:3, 18:11, 31:7
**conceptually** [2] - 30:18, 32:4
**concern** [1] - 31:11
**concerned** [3] - 17:17, 33:23, 41:3
**concerns** [2] - 17:15, 20:24
**concludes** [1] - 52:22
**conduct** [1] - 18:7
**confer** [11] - 30:23, 32:9, 32:24, 38:10, 38:21, 39:3, 40:8, 41:6, 44:8, 50:25
**Conference** [1] - 1:5
**conference** [14] - 29:17, 30:9, 30:21, 31:19, 32:16, 33:22, 36:25, 37:3, 37:16, 37:20, 40:8, 40:9, 43:3, 49:2
**conferences** [4] - 31:12, 31:18, 36:7, 36:10
**confidence** [1] - 32:16
**confidential** [1] - 51:13
**consideration** [1] - 31:1
**considering** [1] - 15:16
**consolidated** [3] - 17:5, 42:2, 42:7
**consolidation** [1] - 18:12
**constant** [1] - 35:25
**constitutes** [1] - 17:4
**consulting** [2] - 34:22
**contacted** [1] - 32:6
**contemplating** [1] - 16:3
**contention** [6] - 25:8, 25:14, 25:18, 26:4, 26:6, 26:8
**continue** [1] - 21:13
**continued** [11] - 1:25, 2:25, 3:25, 4:25, 5:25, 6:25, 7:25, 8:25, 9:25, 10:25, 11:25
**Continued** [3] - 12:1, 13:1, 14:1
**contours** [1] - 29:18
**control** [2] - 21:17, 21:18
**convey** [1] - 51:21
**COOPER** [2] - 14:2, 14:2

**Cooper** [1] - 1:17
**coordinated** [2] - 40:25, 41:23
**CORP** [4] - 2:17, 5:16, 5:22, 9:4
**Corp** [3] - 12:7, 13:4, 14:11
**CORPORATION** [41] - 1:4, 1:10, 2:1, 2:8, 2:14, 2:20, 3:1, 3:7, 3:13, 3:19, 4:1, 4:8, 4:14, 4:21, 5:1, 5:7, 5:13, 5:19, 6:1, 6:8, 6:14, 6:20, 7:1, 7:8, 7:14, 7:20, 8:1, 8:8, 8:14, 8:20, 9:1, 9:7, 9:13, 9:20, 10:1, 10:7, 10:14, 10:20, 11:1, 11:7, 11:14
**correct** [5] - 45:2, 45:3, 52:2, 52:14, 53:4
**COUGHLIN** [1] - 14:17
**counsel** [10] - 34:1, 46:4, 47:8, 47:18, 50:7, 50:18, 50:22, 51:17, 51:19
**Counsel** [2] - 14:19, 14:23
**County** [3] - 22:22, 22:23, 23:10
**couple** [4] - 23:21, 29:14, 49:6, 49:8
**course** [3] - 24:5, 25:7, 47:14
**court** [19] - 15:1, 19:22, 22:9, 22:14, 22:16, 23:18, 23:20, 24:3, 24:6, 25:3, 29:21, 29:23, 34:3, 35:24, 36:1, 43:21, 45:12, 46:9, 50:15
**COURT** [104] - 1:1, 15:4, 15:6, 15:8, 15:14, 15:23, 19:4, 21:20, 21:22, 22:24, 23:11, 23:25, 24:5, 24:8, 24:16, 25:17, 25:20, 25:22, 25:25, 26:2, 26:3, 26:11, 26:17, 26:19, 26:23, 27:3, 27:7, 28:3, 28:6, 28:9, 28:12, 28:16, 28:18, 28:22, 29:1, 29:21, 30:15, 30:17, 31:2, 31:5, 32:3, 32:18, 35:3, 35:10, 35:12, 35:16, 35:21, 36:5, 36:9, 36:16, 36:20, 37:11, 37:17, 39:8, 39:11, 39:14, 39:20, 39:23, 40:2, 40:10, 40:12, 41:2, 41:8, 42:1, 42:12, 42:14, 42:16, 43:13, 43:15, 43:19, 43:23, 44:3, 44:6, 44:10, 45:1, 45:4, 45:11, 45:18, 45:23, 46:13, 46:17, 46:22, 47:18, 47:24, 48:14, 49:5, 49:12, 49:15, 49:22, 50:2, 50:7, 50:10, 50:21, 51:4, 51:6, 51:19, 52:1, 52:6, 52:9, 52:12, 52:16, 52:18, 52:21, 53:1
**Court** [27] - 1:21, 14:6, 15:15, 16:2, 16:21, 18:11, 18:17, 18:24, 20:9, 20:21, 21:7, 21:11, 21:17, 27:17, 30:19, 31:24, 32:12, 32:14, 33:14, 34:21, 38:1, 38:16, 45:16, 49:21, 51:16, 52:22, 53:12
**Court's** [3] - 15:19, 17:16, 31:1
**Courthouse** [1] - 1:16
**courts** [3] - 23:2, 23:3, 31:16
**covered** [1] - 36:2
**Cranford** [1] - 14:3
**create** [1] - 32:10
**credit** [1] - 33:12
**critical** [3] - 29:12, 31:24, 46:2
**critically** [1] - 34:5
**CRR** [1] - 53:11
**culpable** [1] - 18:6
**custom** [1] - 38:24

## D

**Daniel's** [2] - 16:18, 33:15
**DANZIG** [1] - 13:2
**Darkowl** [1] - 14:11
**DARKOWL** [1] - 9:23
**DATA** [46] - 1:3, 1:9, 2:1, 2:7, 2:13, 2:20, 3:1, 3:7, 3:13, 3:19, 3:22, 4:1, 4:7, 4:14, 4:17, 4:20, 5:1, 5:7, 5:13, 5:19, 5:22, 6:1, 6:7, 6:13, 6:19, 7:1, 7:7, 7:13, 7:19, 8:1, 8:7, 8:14, 8:20, 9:1, 9:4, 9:7, 9:13, 9:19, 10:1, 10:7, 10:13, 10:19, 11:1, 11:7, 11:10, 11:14
**data** [2] - 20:19, 32:25
**Data** [6] - 12:7, 13:4, 13:7, 13:7, 14:11, 14:16
**database** [3] - 29:25, 30:4, 33:13
**Date** [1] - 53:12
**date** [3] - 25:9, 27:10, 38:9
**days** [23] - 25:5, 26:5, 27:14, 27:19, 27:20, 28:14, 28:21, 29:2, 38:13, 38:15, 38:19, 38:21, 38:22, 39:3, 39:5, 39:18, 41:4, 41:7, 41:8, 41:9, 41:10
**dead** [1] - 37:9
**deadline** [4] - 27:7, 27:16, 50:5, 50:17
**deadlines** [1] - 27:13
**deal** [10] - 24:18, 29:5, 34:5, 34:13, 38:25, 39:5, 43:2, 43:5, 47:16, 52:9
**decide** [5] - 16:21, 43:4, 44:11, 47:3, 47:9
**decided** [2] - 17:19, 37:13
**decisions** [2] - 18:22, 37:21
**DEENEY** [1] - 13:16
**DeepSync** [1] - 13:12
**Defendant** [12] - 12:18, 12:21, 13:4, 13:15, 13:18, 13:21, 13:24, 14:4, 14:7, 14:16, 14:19, 14:23
**defendant** [17] - 18:5, 18:10, 20:17, 20:19, 21:22, 24:13, 25:12, 25:13, 29:8, 30:10, 33:3, 33:5, 38:14, 41:25, 45:13, 48:13, 51:19
**defendant's** [1] - 36:21
**Defendants** [46] - 1:8, 1:14, 2:6, 2:12, 2:18, 3:6, 3:11, 3:17, 3:24, 4:6, 4:12, 4:19, 4:25, 5:5, 5:11, 5:17, 5:23, 6:6, 6:12, 6:18, 6:24, 7:6, 7:12, 7:18, 7:24, 8:12, 8:18, 8:24, 9:5, 9:11, 9:18, 9:24, 10:5, 10:12, 10:18, 10:24, 11:5, 11:12, 11:19, 12:7, 12:10, 12:14, 12:24, 13:7, 13:11, 14:11
**defendants** [64] - 2:24, 8:6, 15:18, 15:20, 16:3, 16:12, 16:20, 17:14, 17:21, 18:15, 18:20, 19:11, 19:18, 19:20, 19:21, 20:5, 20:9, 20:14, 21:7, 22:13, 22:14, 22:20, 23:14, 23:18, 24:3, 24:17, 24:22, 25:6, 25:10, 26:10, 26:16, 26:24, 27:19, 28:5, 28:6, 28:14, 28:20, 29:7, 29:11, 35:4, 35:19, 36:1, 36:4, 36:15, 37:8, 37:22, 38:2, 38:9, 38:12, 40:7, 40:24, 41:22, 42:4, 42:6, 44:2, 44:17, 44:22, 44:23, 45:15, 46:1, 46:19, 49:2, 49:19, 50:12
**defendants'** [1] - 19:24
**defense** [5] - 15:12, 44:25, 46:4, 47:18, 50:22
**deficiencies** [1] - 50:14
**deficient** [3] - 32:15, 50:3, 50:22
**degree** [1] - 32:16
**delay** [2] - 36:13, 43:11
**Deluxe** [1] - 12:7
**DELUXE** [1] - 2:17
**Delvepoint** [1] - 13:24
**DELVEPOINT** [1] - 2:23
**demand** [1] - 41:6
**demands** [1] - 29:24
**denied** [1] - 17:14
**depose** [1] - 17:17
**deposition** [5] - 29:17, 30:2, 30:11, 32:12, 47:7
**depositions** [9] - 22:9, 30:22, 35:20, 36:8, 42:18, 47:4, 47:5, 47:6
**deprives** [1] - 15:19
**DEPUTY** [2] - 15:4, 52:21
**designation** [2] - 51:10, 51:12
**designed** [1] - 32:10
**desire** [1] - 46:5
**Devon** [1] - 14:19
**DIALER** [1] - 10:4
**Dialer** [1] - 14:7
**different** [8] - 19:18, 19:20, 19:21, 23:21, 28:9, 44:19
**Digital** [1] - 13:7
**DIGITAL** [1] - 3:16
**disagree** [3] - 21:8, 30:18, 32:4
**disagrees** [2] - 18:17
**disclose** [2] - 37:22, 37:23
**disclosure** [8] - 16:25, 33:2, 33:4, 33:7, 33:15, 34:25, 35:5, 51:15
**disclosures** [8] - 31:23, 32:8, 33:17, 34:1, 34:3, 35:10, 45:2, 49:21
**discovery** [29] - 16:3, 16:10, 16:14, 16:22, 17:3, 17:7, 17:13, 17:25, 20:4, 20:6, 20:12, 20:13, 20:14, 21:18, 22:8, 23:12, 29:19, 30:12, 33:21, 36:3, 36:25, 37:6, 38:24, 40:1, 42:22, 42:25, 43:1, 48:4
**discretion** [1] - 21:17
**discuss** [1] - 37:3
**discussed** [1] - 36:19
**discussion** [3] - 33:10, 50:23, 51:22
**discussions** [2] - 21:12, 29:11
**dispose** [1] - 16:22
**disposed** [1] - 21:16
**dispute** [1] - 51:8
**dissatisfied** [1] - 42:5
**District** [2] - 15:2, 48:16
**district** [2] - 32:13, 48:20
**DISTRICT** [3] - 1:1, 1:1, 1:20
**DM** [2] - 2:11, 12:7
**docket** [1] - 21:18
**document** [6] - 22:19, 29:24, 41:6, 44:2, 44:5, 45:8
**documents** [10] - 25:7, 27:11, 29:3, 30:11, 35:20, 38:15,

42:20, 44:16, 44:20, 44:24
**DOLOWICH** [1] - 14:5
**done** [12] - 16:13, 20:6, 21:9, 25:3, 29:21, 29:24, 29:25, 30:4, 38:11, 40:10, 40:13, 48:18
**doubt** [1] - 46:10
**down** [4] - 34:20, 36:12, 47:12, 51:13
**dozen** [2] - 23:24, 23:25
**draft** [1] - 24:21
**Drive** [1] - 12:3
**due** [3] - 17:15, 18:23, 20:23
**dump** [1] - 45:8
**during** [3] - 25:9, 32:7, 40:13

## E

**e-discovery** [1] - 36:25
**e-mail** [2] - 30:5, 34:4
**e-MERGES.COM** [1] - 7:11
**eager** [1] - 20:9
**early** [4] - 27:10, 29:16, 38:5, 48:11
**Eastern** [1] - 48:16
**easy** [1] - 38:1
**EDPA** [1] - 1:20
**effect** [1] - 17:9
**efficiencies** [1] - 15:25
**efficiency** [1] - 21:2
**efficient** [1] - 32:10
**efficiently** [1] - 17:13
**effort** [1] - 41:18
**eight** [2] - 22:6, 34:16
**eight-ball** [1] - 22:6
**Eighth** [1] - 12:9
**either** [5] - 18:24, 31:11, 34:20, 38:4, 48:14
**electronic** [1] - 40:1
**element** [1] - 17:1
**elements** [1] - 16:19
**ELIAS** [1] - 12:19
**email** [2] - 36:3, 51:9
**emailed** [1] - 51:17
**emails** [1] - 36:2
**eMerges.com** [1] - 12:18
**EMILY** [1] - 13:13
**enter** [1] - 47:1
**ENTERPRISES** [1] - 7:4
**Enterprises** [1] - 14:12
**entitled** [1] - 53:5
**EQUIMINE** [1] - 5:10
**Equimine** [1] - 12:21
**equity** [1] - 36:24
**ESI** [10] - 30:20, 31:12, 32:7, 32:15, 34:2, 36:7, 37:2, 37:16, 40:7, 40:8
**ESQUIRE** [20] - 11:22, 12:2, 12:5, 12:9, 12:12, 12:16, 12:19, 12:22, 13:2, 13:5, 13:9, 13:13, 13:16, 13:19, 13:22, 14:2, 14:5, 14:14, 14:17, 14:21
**essential** [1] - 17:1
**essentially** [1] - 44:23
**et** [84] - 1:4, 1:7, 1:10, 1:13, 2:1, 2:5, 2:8, 2:11, 2:14, 2:17, 2:20, 2:23, 3:1, 3:5, 3:7, 3:10, 3:13, 3:19, 3:23, 4:1, 4:5, 4:8, 4:11, 4:14, 4:18, 4:21, 4:24, 5:1, 5:4, 5:7, 5:10, 5:13, 5:16, 5:19, 5:22, 6:1, 6:5, 6:8, 6:11, 6:14, 6:17, 6:20, 6:23, 7:1, 7:5, 7:8, 7:14, 7:17, 7:20, 7:23, 8:1, 8:5, 8:8, 8:11, 8:14, 8:17, 8:20, 8:23, 9:1, 9:4, 9:7, 9:10, 9:13, 9:17, 9:20, 9:23, 10:1, 10:4, 10:7, 10:11, 10:14, 10:17, 10:20, 10:23, 11:1, 11:4, 11:7, 11:11, 11:14, 11:18, 12:11, 30:5, 30:24, 35:20
**event** [1] - 26:6
**evidence** [2] - 18:21, 29:13
**exact** [2] - 23:23, 31:9
**exactly** [2] - 22:20, 52:16
**example** [2] - 20:18, 33:12
**except** [2] - 27:17, 29:9
**exist** [1] - 18:5
**expect** [4] - 36:10, 40:15, 42:5, 43:8
**expedite** [4] - 42:7, 45:25, 46:6, 46:19
**expedition** [3] - 32:23, 33:20, 33:24
**expert** [3] - 30:4, 31:18
**experts** [2] - 34:22, 34:23
**explain** [2] - 31:10, 34:20
**explaining** [1] - 32:15
**extension** [1] - 52:1
**extensions** [2] - 27:17, 38:16
**extent** [7] - 20:1, 20:15, 24:13, 25:1, 26:10, 30:7, 45:17
**extra** [1] - 44:24
**eye** [1] - 40:5
**eyes** [2] - 51:10, 51:14

## F

**faced** [2] - 34:7, 35:24
**facilitate** [1] - 49:1
**fact** [2] - 18:10, 31:16
**fact-specific** [1] - 18:10
**faith** [3] - 36:11, 43:8, 46:9
**far** [1] - 31:8
**fashions** [1] - 44:20
**fault** [1] - 40:20
**FBT** [1] - 12:19
**feature** [1] - 48:10
**February** [1] - 20:6
**FEDERAL** [1] - 53:1
**Federal** [1] - 22:24
**federal** [6] - 24:6, 27:5, 30:25, 31:17, 36:1, 48:20
**few** [3] - 26:14, 46:13, 46:18
**figure** [2] - 35:1, 37:23
**file** [6] - 25:18, 27:22, 38:20, 40:24, 41:7, 42:20
**filed** [4] - 33:2, 33:19, 38:20, 40:21
**filing** [1] - 42:7
**filling** [1] - 50:13
**finally** [2] - 18:2, 18:14
**fine** [9] - 31:7, 34:3, 34:13, 34:23, 40:1, 44:3, 46:12, 49:4, 50:20
**first** [7] - 15:8, 17:18, 20:5, 21:4, 21:9, 30:2, 40:18
**fishing** [3] - 32:22, 33:20, 33:23
**five** [8] - 22:22, 24:12, 43:17, 43:24, 44:4, 44:5, 44:22
**flag** [1] - 51:16
**FLEXNER** [1] - 11:21
**Floor** [2] - 12:9, 12:23
**follow** [2] - 22:12, 30:21
**FOR** [1] - 1:1
**forced** [1] - 17:21
**foregoing** [1] - 53:4
**forever** [1] - 47:20
**forget** [2] - 34:16, 49:9
**forgotten** [1] - 49:9
**form** [1] - 43:9
**formal** [1] - 34:24
**forth** [2] - 27:5, 29:5
**forty** [1] - 17:21
**forty-one** [1] - 17:21
**forward** [22] - 15:21, 20:11, 20:16, 21:2, 21:18, 22:3, 23:12, 29:14, 37:18, 38:2, 38:4, 38:6, 38:7, 40:22, 42:14, 42:25, 46:19, 46:20, 46:23, 48:8, 50:8
**four** [5] - 15:21, 18:9, 37:14, 37:15, 48:8
**frankly** [1] - 44:16
**FREEDOMSOFT303** [1] - 11:4
**Freehold** [1] - 13:6
**front** [1] - 19:22

## G

**games** [6] - 35:21, 36:11, 36:15, 37:19, 39:25, 46:14
**Gateway** [2] - 12:20, 14:9
**gear** [2] - 40:17, 40:18
**general** [1] - 34:10
**gentlemen** [1] - 36:12
**GIBBONS** [1] - 12:19
**given** [1] - 24:17
**global** [3] - 16:17, 26:9, 45:16
**goal** [1] - 26:25
**GORDON** [1] - 12:12
**grant** [1] - 22:1
**great** [2] - 24:18, 34:21
**GREENSPOON** [1] - 14:8
**GROUP** [2] - 2:11, 8:11
**group** [1] - 15:18
**Group** [3] - 12:7, 13:12, 14:12
**groupings** [1] - 23:22
**guidance** [1] - 18:9

## H

**Hackensack** [1] - 14:7
**HAMILTON** [1] - 12:5
**hand** [1] - 19:16
**handle** [3] - 38:24, 48:15, 48:19
**hands** [1] - 20:10
**HANNAH** [1] - 13:5
**happy** [3] - 35:21, 50:5, 51:17
**harder** [1] - 36:13
**HARVEY** [1] - 1:19
**Harvey** [2] - 15:2, 15:5
**hear** [1] - 34:6
**heard** [5] - 15:20, 16:12, 17:10, 21:22, 51:18
**hearing** [1] - 43:5
**held** [1] - 15:1
**help** [4] - 16:21, 42:7, 45:25, 49:1
**helpful** [2] - 31:21, 32:1
**HENNING** [1] - 13:9
**high** [1] - 32:16
**hold** [1] - 47:20
**HomeData** [1] - 13:12
**honestly** [1] - 35:23
**Honor** [52] - 15:7, 15:13, 15:15, 15:17, 19:6, 19:11, 19:22, 20:3, 20:24, 22:18, 23:21, 25:14, 26:9, 28:25, 29:9, 30:16, 31:4, 31:22, 32:19, 33:25, 35:15, 35:18, 35:23, 36:14, 37:3, 37:9, 37:13, 39:7, 40:24, 41:4, 41:22, 43:12, 45:10, 46:12, 47:17, 48:3, 48:6, 48:8, 48:12, 49:4, 49:11, 49:17, 49:20, 50:4, 50:9, 50:19, 51:2, 51:7, 51:24, 52:3, 52:17, 52:20
**Honor's** [2] - 19:8, 29:15
**HONORABLE** [1] - 1:19
**Honorable** [2] - 15:1, 15:4
**hop** [1] - 50:15
**hope** [8] - 38:10, 40:12, 42:1, 42:8, 44:12, 46:5, 46:18
**horse** [1] - 37:9

**hours** [1] - 34:17
**housekeeping** [2] - 47:22, 49:16
**hundred** [2] - 39:19, 39:20
**hundreds** [1] - 35:19
**hybrid** [2] - 18:25, 37:12

**I**

**i360** [2] - 6:11, 13:21
**idea** [4] - 19:14, 21:6, 34:19, 41:12
**identified** [1] - 50:4
**identify** [2] - 34:7, 37:15
**identifying** [1] - 48:10
**III** [3] - 1:19, 12:5, 15:2
**important** [3] - 15:21, 34:5, 40:21
**importantly** [1] - 34:16
**inappropriate** [1] - 48:18
**Inc** [6] - 12:18, 12:21, 14:4, 14:12, 14:23
**INC** [15] - 2:11, 3:10, 4:11, 4:17, 4:24, 5:4, 5:10, 6:17, 7:5, 7:11, 7:17, 8:4, 8:17, 8:23, 10:4
**include** [1] - 24:2
**included** [1] - 41:17
**including** [1] - 27:4
**individual** [8] - 22:19, 26:10, 26:15, 43:17, 43:24, 44:4, 45:17
**individualized** [4] - 23:16, 24:12, 44:5, 45:17
**inevitably** [1] - 38:17
**INFOMATICS** [1] - 1:13
**Infomatics** [1] - 12:10
**INFORM** [1] - 1:7
**Inform** [1] - 12:11
**informal** [2] - 31:17, 34:21
**Information** [1] - 13:11
**INFORMATION** [1] - 9:16
**information** [14] - 19:24, 29:19, 31:14, 31:20, 31:23, 32:1, 32:21, 35:4, 35:7, 35:14, 44:17, 45:1, 45:7, 46:3
**INGERSOLL** [1] - 14:20
**initial** [5] - 16:4, 16:15, 19:1, 32:8, 45:2
**INNOVATIVE** [1] - 10:10
**Innovative** [2] - 12:14, 49:18
**INNOVIS** [1] - 4:17
**Innovis** [2] - 12:7, 33:12
**insignificant** [1] - 16:11
**inspections** [2] - 29:25, 30:3
**insurance** [1] - 51:10
**interim** [1] - 25:10
**internal** [1] - 33:13
**internet** [3] - 16:25, 33:9, 33:11
**interrogatories** [59] - 22:15, 22:18, 22:21, 22:25, 23:1, 23:9, 23:14, 23:17, 23:19, 23:22, 24:1, 24:4, 24:12, 24:13, 24:19, 24:21, 24:25, 25:1, 25:2, 25:6, 25:8, 25:11, 25:12, 25:15, 25:18, 26:4, 26:7, 26:8, 26:12, 26:20, 27:1, 27:4, 27:8, 27:11, 28:10, 28:23, 29:3, 29:7, 29:23, 30:1, 30:3, 30:6, 30:13, 31:12, 33:6, 38:8, 38:13, 38:15, 39:10, 41:18, 43:9, 44:6, 44:13, 45:13, 45:16, 45:20, 45:24, 46:7
**interrogatory** [5] - 41:5, 41:13, 42:3, 42:19
**intervene** [1] - 20:18
**involve** [1] - 16:14
**involved** [4] - 35:10, 48:4, 48:21, 48:23
**issue** [16] - 15:17, 16:23, 16:24, 17:1, 17:5, 17:16, 19:1, 19:14, 20:16, 29:10, 32:11, 42:10, 51:3, 51:5, 51:17
**issues** [30] - 15:21, 16:4, 16:7, 16:8, 16:13, 16:15, 16:17, 16:22, 17:8, 17:11, 18:2, 18:4, 18:10, 18:25, 19:15, 19:16, 20:20, 24:10, 26:15, 39:4, 41:7, 43:3, 43:6, 45:14, 46:1, 46:2, 47:23, 49:16, 50:6
**IT** [2] - 30:11, 30:22

**J**

**J.L** [1] - 13:19
**JARED** [1] - 13:9
**JERSEY** [1] - 1:1
**Jersey** [10] - 1:17, 18:11, 23:2, 23:3, 25:8, 25:16, 38:24, 48:18, 48:19, 48:20
**JERVIS** [1] - 14:17
**John** [1] - 50:13
**joint** [3] - 16:13, 40:25, 44:25
**JOSHUA** [1] - 12:19
**Joy** [1] - 14:11
**JOY** [1] - 7:4
**judge** [10] - 32:15, 38:25, 40:6, 44:15, 47:22, 48:15, 48:16, 48:17, 48:19, 48:20
**JUDGE** [1] - 1:20
**Judge** [11] - 15:2, 21:21, 24:10, 36:1, 39:17, 40:1, 43:21, 46:21, 50:3, 51:23, 52:14
**judicata** [1] - 17:9
**July** [4] - 1:18, 15:3, 27:9, 49:24
**jurisdictional** [1] - 34:18

**K**

**KAUFMAN** [1] - 14:5
**keep** [1] - 40:5
**KELLY** [1] - 14:9
**kind** [3] - 19:9, 29:10, 40:24
**Kleissner** [1] - 51:25
**knowledge** [1] - 50:14
**known** [1] - 41:16
**knows** [2] - 19:11, 31:22

**L**

**L.L.C** [2] - 8:11, 14:12
**LABELS** [1] - 4:11
**Labels** [1] - 14:4
**Labor** [2] - 25:5, 25:9
**Labs** [1] - 13:12
**ladies** [1] - 36:12
**laid** [1] - 30:25
**Lancaster** [1] - 14:18
**last** [6] - 20:2, 20:23, 26:5, 38:3, 49:19, 51:24
**Law** [2] - 16:19, 33:15
**LAW** [2] - 12:2, 13:5
**lawyer** [2] - 31:10, 31:13
**lawyers** [2] - 34:24, 46:18
**lead** [2] - 24:20, 30:12
**least** [5] - 16:2, 23:13, 33:5, 39:6, 50:22
**leave** [5] - 26:24, 44:10, 46:10, 50:15, 52:15
**leaving** [1] - 26:14
**legal** [4] - 16:24, 19:9, 20:16, 20:20
**legitimate** [1] - 41:15
**LEVY** [1] - 13:9
**LEWIS** [1] - 13:16
**liability** [1] - 18:5
**liable** [1] - 18:6
**Liberty** [1] - 14:21
**likely** [1] - 21:19
**limit** [4] - 23:2, 23:4, 39:12, 39:15
**limited** [6] - 16:14, 24:5, 25:11, 30:8, 39:10, 42:22
**limiting** [1] - 42:21
**list** [2] - 32:25, 44:18
**LISTS** [1] - 4:11
**Lists** [1] - 14:4
**literally** [1] - 36:7
**litigated** [1] - 32:13
**litigation** [1] - 21:13
**LLC** [69] - 1:7, 1:13, 2:1, 2:5, 2:8, 2:14, 2:20, 2:23, 3:1, 3:4, 3:7, 3:13, 3:16, 3:19, 3:22, 4:1, 4:4, 4:8, 4:14, 4:21, 5:1, 5:7, 5:13, 5:19, 6:1, 6:8, 6:11, 6:14, 6:20, 6:23, 7:1, 7:8, 7:14, 7:20, 7:23, 8:1, 8:8, 8:14, 8:20, 9:1, 9:7, 9:10, 9:13, 9:17, 9:20, 9:23, 10:1, 10:7, 10:11, 10:14, 10:17, 10:20, 10:23, 11:1, 11:4, 11:7, 11:10, 11:14, 11:18, 12:10, 12:11, 12:16, 13:15, 14:2, 14:11, 14:16, 14:17, 14:19
**LLP** [14] - 11:21, 12:2, 12:5, 12:8, 12:19, 12:22, 13:2, 13:13, 13:16, 13:19, 13:22, 14:5, 14:8, 14:13
**local** [4] - 25:8, 25:15, 25:21, 30:20
**Logan** [1] - 12:13
**LOMURRO** [1] - 13:5
**LOMUSCIO** [1] - 13:19
**look** [2] - 22:22, 33:17
**looking** [3] - 25:17, 34:9, 40:18
**LOUIS** [1] - 14:14
**lovers** [1] - 40:16

**M**

**magistrate** [5] - 38:25, 48:5, 48:15, 48:17, 48:19
**MAGNUS** [1] - 14:9
**mail** [2] - 30:5, 34:4
**Main** [1] - 14:6
**man** [1] - 41:16
**MANATT** [1] - 13:13
**MANSUKHANI** [1] - 12:12
**map** [3] - 32:25, 34:10, 34:14
**MARCEL** [1] - 12:22
**March** [1] - 20:6
**MARDER** [1] - 14:8
**MARK** [1] - 12:16
**Market** [2] - 12:23, 13:23
**MARKETING** [1] - 11:17
**Marketing** [2] - 13:11, 14:11
**MAROUF** [1] - 13:2
**matching** [1] - 33:13
**matter** [2] - 38:3, 53:5
**matters** [1] - 38:24
**MCCUSKER** [4] - 12:12, 50:9, 50:11, 51:2
**McCusker** [1] - 50:11
**McKay** [2] - 1:21, 53:11
**McKay-Soule** [2] - 1:21, 53:11
**MD** [1] - 12:17
**MDL** [1] - 18:3
**mean** [4] - 24:1, 40:4, 42:6, 45:5
**meaning** [1] - 30:9
**means** [1] - 34:21
**meantime** [2] - 42:18, 47:14
**mechanical** [1] - 1:23
**mechanism** [2] - 31:15, 31:25

**meet** [5] - 30:23, 32:9, 32:24, 40:8, 41:6
**Megan** [2] - 1:21, 53:11
**Megan_McKay** [1] - 1:21
**Megan_McKay-Soule@njd.uscourts.gov** [1] - 1:21
**Melissa** [1] - 13:4
**MELISSA** [1] - 5:22
**mention** [1] - 18:13
**mentioned** [4] - 25:14, 40:2, 48:8, 49:20
**MERGES.COM** [1] - 7:11
**method** [1] - 34:24
**MICHAEL** [1] - 14:17
**might** [3] - 22:5, 24:14, 49:25
**mill** [1] - 43:7
**Mills** [2] - 12:17, 50:13
**minimum** [1] - 17:3
**minute** [1] - 29:5
**missed** [1] - 23:8
**Mitchell** [1] - 1:16
**mode** [1] - 40:16
**model** [4] - 18:3, 20:25, 21:1, 21:2
**moment** [1] - 28:7
**month** [2] - 37:13, 40:13
**months** [3] - 19:12, 46:14, 46:18
**morning** [6] - 15:6, 15:7, 31:4, 31:5, 50:9, 50:10
**Morris** [1] - 22:22
**Morristown** [1] - 13:3
**most** [1] - 26:25
**mote** [1] - 34:12
**Motion** [1] - 15:9
**motion** [6] - 19:13, 21:23, 39:4, 40:23, 41:21, 52:7
**motions** [7] - 38:20, 40:21, 41:2, 41:7, 41:10, 41:24, 43:3
**move** [20] - 20:11, 21:2, 21:18, 22:3, 22:10, 27:13, 29:14, 30:14, 37:18, 38:2, 38:3, 38:6, 38:7, 40:15, 40:22, 42:24, 46:18, 46:19, 46:20, 46:23
**moving** [2] - 20:16, 40:19
**MR** [107] - 15:13, 15:15, 15:24, 19:6, 21:21, 22:17, 23:3, 23:8, 23:9, 23:20, 24:1, 24:7, 24:9, 25:14, 25:19, 25:24, 26:1, 26:9, 26:15, 26:18, 26:22, 27:2, 27:6, 28:2, 28:4, 28:8, 28:11, 28:14, 28:17, 28:20, 28:24, 29:9, 29:23, 30:16, 30:18, 31:4, 31:6, 32:4, 32:19, 33:25, 35:9, 35:11, 35:13, 35:18, 35:23, 36:6, 36:14, 36:18, 36:24, 37:2, 37:5, 37:6, 37:12, 39:7, 39:9, 39:12, 39:16, 39:17, 39:18, 39:22, 39:25, 40:6, 40:11, 40:23, 41:3, 41:20, 42:11, 42:13, 42:15, 43:12, 43:14, 43:16, 43:20, 43:22, 44:1, 44:4, 44:5, 44:8, 44:14, 44:15, 45:3, 45:6, 45:12, 45:22, 46:12, 46:16, 46:21, 47:17, 47:22, 47:25, 48:2, 49:4, 49:11, 49:14, 49:16, 49:24, 50:3, 50:17, 51:5, 51:7, 51:23, 52:2, 52:7, 52:11, 52:14, 52:17, 52:20
**MS** [4] - 15:7, 50:9, 50:11, 51:2
**MULCAHY** [1] - 13:22
**MULLEN** [1] - 14:17
**multiple** [1] - 44:20
**music** [1] - 40:15

## N

**name** [2] - 25:23, 25:25
**National** [1] - 13:7
**need** [10] - 26:20, 27:17, 30:22, 42:24, 43:5, 44:11, 45:15, 46:2, 47:4, 47:9
**needed** [3] - 29:19, 43:18, 45:9
**needs** [2] - 20:15, 24:13
**NELSON** [1] - 13:22
**never** [3] - 34:3, 36:2, 37:4
**NEW** [1] - 1:1
**New** [13] - 1:17, 12:10, 13:14, 13:20, 18:11, 23:2, 23:3, 25:8, 25:16, 38:24, 48:18, 48:19, 48:20
**Newark** [3] - 12:20, 13:17, 14:10
**next** [5] - 40:13, 46:13, 47:4, 50:25, 51:22
**NJ** [10] - 12:3, 12:6, 12:20, 13:3, 13:6, 13:17, 14:3, 14:7, 14:10, 14:15
**nobody's** [1] - 40:20
**nondisclosure** [2] - 16:18, 18:8
**normally** [1] - 48:5
**North** [1] - 14:6
**notice** [2] - 15:20, 17:10
**nuance** [1] - 29:10
**NUMBER** [41] - 1:3, 1:9, 2:1, 2:7, 2:13, 2:20, 3:1, 3:7, 3:13, 3:19, 4:1, 4:7, 4:14, 4:20, 5:1, 5:7, 5:13, 5:19, 6:1, 6:7, 6:13, 6:19, 7:1, 7:7, 7:13, 7:19, 8:1, 8:7, 8:14, 8:20, 9:1, 9:7, 9:13, 9:19, 10:1, 10:7, 10:13, 10:19, 11:1, 11:7, 11:14
**number** [10] - 15:22, 17:5, 23:9, 23:23, 24:25, 26:14, 26:23, 45:19, 47:16
**NUWBER** [1] - 7:17
**Nuwber** [1] - 12:15
**NY** [5] - 11:23, 12:10, 13:10, 13:14, 13:20

## O

**obfuscation** [1] - 34:6
**object** [1] - 42:5
**objection** [2] - 25:13, 41:16
**objections** [13] - 27:22, 29:5, 31:13, 38:18, 38:20, 39:2, 41:12, 41:13, 41:14, 41:15, 41:18, 43:10
**obligation** [1] - 35:7
**obvious** [1] - 46:13
**obviously** [2] - 24:22, 47:11
**occurs** [3] - 16:1, 17:12, 18:14
**OF** [2] - 1:1, 6:4
**officers** [1] - 46:8
**offices** [1] - 48:6
**OFFICIAL** [1] - 53:1
**Official** [1] - 1:21
**old** [1] - 47:2
**OMAR** [1] - 13:2
**once** [3] - 21:9, 42:25, 47:2
**one** [20] - 16:19, 16:23, 17:21, 18:2, 19:25, 20:12, 20:16, 22:4, 22:12, 29:10, 31:16, 32:6, 33:8, 38:18, 40:25, 42:3, 47:2, 47:7, 47:11, 52:9
**One** [4] - 12:20, 13:3, 13:17, 14:9
**one-sided** [1] - 20:12
**ones** [5] - 20:10, 33:1, 35:4, 43:18, 46:23
**open** [1] - 15:1
**opportunity** [5] - 15:20, 17:10, 17:14, 38:7, 47:7
**optimal** [1] - 23:13
**Orange** [1] - 12:3
**order** [11] - 15:19, 21:16, 22:9, 27:17, 38:2, 38:23, 42:9, 44:12, 46:5, 46:6, 47:2
**ordered** [3] - 31:19, 34:21, 49:21
**orders** [1] - 19:23
**organization** [1] - 33:16
**ORTOLANI** [1] - 14:5
**otherwise** [1] - 16:25
**ought** [4] - 24:17, 26:13, 38:12, 46:25
**outset** [1] - 17:12
**outside** [3] - 33:15, 50:5, 50:17
**outstanding** [1] - 52:13
**overall** [1] - 37:8
**overly** [1] - 20:3
**Owings** [1] - 12:17
**own** [3] - 18:7, 30:24, 52:4

## P

**PA** [5] - 12:14, 12:23, 13:23, 14:19, 14:22
**pages** [4] - 35:19, 41:13, 41:19, 45:8
**paired** [1] - 48:16
**paper** [2] - 42:25, 43:1
**papers** [3] - 19:8, 20:23, 43:4
**Paragon** [1] - 13:6
**PARIKH** [51] - 12:2, 19:6, 21:21, 23:8, 23:20, 24:1, 24:7, 24:9, 28:20, 28:24, 29:9, 29:23, 35:18, 35:23, 36:6, 37:2, 37:6, 37:12, 39:17, 39:25, 40:6, 40:11, 40:23, 41:3, 41:20, 42:11, 42:13, 42:15, 43:20, 44:1, 44:5, 44:15, 45:3, 46:12, 46:16, 46:21, 47:22, 47:25, 49:14, 49:16, 49:24, 50:3, 50:17, 51:5, 51:7, 51:23, 52:2, 52:7, 52:11, 52:14, 52:17
**Parikh** [6] - 19:5, 19:6, 30:19, 46:11, 50:23, 51:1
**part** [6] - 16:2, 25:15, 34:12, 34:18, 36:3, 45:2
**participate** [3] - 20:20, 47:8, 47:9
**particular** [5] - 21:23, 24:22, 36:4, 48:17, 49:2
**particularized** [1] - 46:2
**parties** [14] - 21:12, 25:1, 26:13, 27:14, 30:9, 30:21, 30:23, 33:22, 33:23, 37:15, 38:10, 38:20, 41:12, 43:8
**parties'** [1] - 37:1
**parts** [1] - 34:11
**party** [1] - 20:15
**peace** [1] - 47:20
**Pearl** [1] - 11:22
**PEM** [1] - 12:2
**pending** [1] - 52:8
**Pennsylvania** [1] - 48:16
**people** [5] - 18:1, 28:13, 30:22, 31:20, 34:2
**People** [1] - 12:10
**PEOPLE** [1] - 2:4
**PEPPER** [1] - 12:5
**perhaps** [1] - 36:7
**permit** [3] - 23:12, 26:6, 27:14
**person** [3] - 16:18, 17:20, 30:11

**persons** [1] - 36:2
**phase** [1] - 47:3
**PHELPS** [1] - 13:13
**Philadelphia** [5] - 12:14, 12:23, 13:23, 14:22, 48:15
**PHILLIPS** [1] - 13:13
**phone** [3] - 49:2, 50:5, 50:15
**pick** [4] - 22:2, 24:25, 25:9, 47:13
**Place** [1] - 14:21
**places** [1] - 34:8
**Plains** [1] - 13:10
**plaintiff** [2] - 35:5, 37:23
**Plaintiffs** [42] - 1:5, 1:11, 2:9, 2:15, 2:21, 3:2, 3:8, 3:14, 3:20, 4:2, 4:9, 4:15, 4:22, 5:2, 5:9, 5:14, 5:20, 6:2, 6:9, 6:15, 6:21, 7:2, 7:9, 7:15, 7:21, 8:2, 8:9, 8:15, 8:21, 9:2, 9:8, 9:14, 9:21, 10:2, 10:8, 10:15, 10:21, 11:2, 11:8, 11:15, 11:23, 12:4
**plaintiffs** [19] - 2:2, 17:17, 17:19, 19:7, 28:5, 28:17, 28:18, 28:19, 29:4, 30:7, 30:9, 31:6, 35:8, 38:13, 41:23, 42:3, 43:16, 43:23, 46:22
**plaintiffs'** [1] - 47:5
**platform** [2] - 35:13, 35:14
**played** [6] - 35:22, 36:12, 36:15, 37:19, 46:14, 46:15
**playing** [1] - 39:25
**Plaza** [2] - 13:17, 14:6
**plus** [1] - 44:22
**podium** [1] - 30:17
**point** [9] - 26:7, 27:16, 28:2, 30:19, 36:22, 42:23, 47:1, 47:11, 47:12
**pointing** [1] - 32:5
**policy** [2] - 51:10, 51:12
**position** [3] - 17:19, 41:24, 45:21
**possible** [4] - 26:24, 44:13, 45:24, 46:8
**potentially** [3] - 29:16, 30:10, 31:12
**PRATT** [1] - 12:22
**preliminary** [1] - 17:5
**premature** [1] - 47:13
**presented** [1] - 32:20
**preserving** [1] - 18:21
**presiding** [1] - 48:25
**pretty** [1] - 29:6
**previously** [2] - 40:3, 49:21
**Princeton** [2] - 12:6, 14:15
**PRIVACY** [41] - 1:3, 1:9, 2:1, 2:7, 2:13, 2:20, 3:1, 3:7, 3:13, 3:19, 4:1, 4:7, 4:14, 4:20, 5:1, 5:7, 5:13, 5:19, 6:1, 6:7, 6:13, 6:19, 7:1, 7:7, 7:13, 7:19, 8:1, 8:7, 8:14, 8:20, 9:1, 9:7, 9:13, 9:19, 10:1, 10:7, 10:13, 10:19, 11:1, 11:7, 11:14
**problem** [4] - 28:19, 28:25, 31:8, 38:22
**problems** [1] - 43:2
**procedure** [1] - 47:7
**proceed** [3] - 16:6, 17:13, 22:7
**proceeding** [1] - 22:14
**proceedings** [1] - 53:5
**Proceedings** [1] - 1:23
**PROCEEDINGS** [1] - 15:1
**process** [13] - 17:15, 18:24, 20:24, 21:12, 30:21, 30:24, 32:5, 32:6, 32:9, 32:14, 32:17, 48:10, 52:15
**produce** [8] - 17:20, 17:25, 20:8, 20:13, 29:3, 35:7, 35:17, 38:15
**produced** [8] - 1:23, 35:18, 36:18, 44:20, 44:21, 45:2, 45:7, 51:11
**production** [13] - 23:15, 25:7, 27:11, 39:13, 39:19, 39:22, 39:24, 42:20, 44:15, 44:24, 45:20, 45:24, 46:7
**products** [1] - 19:20
**PRODUCTS** [1] - 3:16
**Products** [1] - 13:7
**promptly** [1] - 22:10
**proof** [4] - 16:20, 31:24, 33:2, 34:25
**proper** [1] - 24:16
**PROPERTYRADAR** [1] - 8:4
**PropertyRadar** [1] - 12:7
**proportionality** [1] - 40:4
**proposal** [1] - 18:18
**propose** [2] - 24:14, 44:7
**proposed** [1] - 20:4
**prospects** [1] - 48:11
**protective** [1] - 19:23
**prove** [1] - 16:9
**provide** [1] - 20:19
**provided** [1] - 27:20
**provision** [1] - 40:3
**publicly** [2] - 33:8, 33:10
**PublicNSA** [1] - 14:19
**PUBLICNSA** [1] - 10:17
**Publishing** [1] - 12:24
**PURCARO** [1] - 14:9
**purposes** [1] - 43:11
**put** [3] - 38:23, 44:12, 48:9
**putting** [1] - 36:17

**Q**

**qualifications** [1] - 43:14
**QUANTARIUM** [1] - 3:4
**Quantarium** [2] - 12:14, 49:18
**questions** [6] - 17:22, 24:23, 31:9, 32:7, 34:17, 51:24
**quicker** [1] - 30:14
**quickly** [3] - 16:6, 21:3, 40:15

**R**

**radio** [1] - 49:7
**raise** [2] - 20:10, 50:14
**Raj** [2] - 19:6, 23:7
**RAJIV** [1] - 12:2
**rate** [1] - 26:3
**rather** [3] - 22:10, 37:21, 38:1
**RDR** [1] - 53:11
**read** [4] - 15:9, 17:21, 19:8, 41:18
**reading** [1] - 15:15
**real** [3] - 20:23, 31:20
**realistic** [1] - 21:8
**really** [7] - 19:15, 20:12, 31:24, 36:11, 36:13, 40:15, 51:13
**reason** [5] - 19:23, 22:4, 46:10, 48:20, 51:13
**reasonable** [3] - 40:4, 41:9, 41:11
**reasons** [3] - 20:22, 22:4, 27:18
**Rebecca** [1] - 50:11
**REBECCA** [1] - 12:12
**received** [1] - 36:2
**recommend** [1] - 39:21
**reconsider** [1] - 18:24
**Reconsideration** [1] - 15:9
**reconsideration** [2] - 19:10, 22:1
**record** [1] - 53:5
**recorded** [1] - 1:23
**Red** [1] - 12:17
**redisclosure** [1] - 16:25
**reduce** [1] - 47:15
**reduced** [1] - 51:12
**REDX** [2] - 10:23, 14:11
**REED** [1] - 14:13
**REES** [1] - 12:12
**referring** [1] - 32:2
**regardless** [2] - 26:7, 35:9
**rejected** [1] - 18:11
**relate** [1] - 16:8
**related** [2] - 20:18, 44:20
**relates** [1] - 51:9
**relatively** [2] - 21:16, 32:16
**relief** [1] - 46:23
**reluctant** [1] - 48:24
**remand** [1] - 34:18
**remember** [2] - 23:23, 42:12
**REPORTER** [3] - 25:22, 25:25, 26:2
**Reporter** [2] - 1:21, 53:12
**REPORTER'S** [1] - 53:1
**reporting** [1] - 33:12
**representation** [1] - 19:19
**representative** [1] - 47:8
**request** [4] - 23:15, 39:12, 42:21, 44:15
**requests** [21] - 16:18, 18:8, 22:19, 23:17, 25:6, 27:11, 29:19, 33:19, 39:19, 39:22, 39:23, 40:25, 41:23, 42:19, 43:9, 44:2, 44:5, 44:24, 45:20, 45:24, 46:7
**required** [1] - 16:18
**requirement** [1] - 16:19
**requiring** [1] - 40:7
**res** [1] - 17:9
**Research** [2] - 13:7, 13:12
**RESEARCH** [1] - 3:22
**resolution** [3] - 16:7, 17:2, 17:6
**resolutions** [1] - 18:15
**resolve** [1] - 39:4
**resolved** [1] - 16:16
**respect** [9] - 15:9, 21:6, 22:8, 30:12, 40:23, 41:21, 49:18, 51:8, 52:15
**respond** [1] - 36:14
**responded** [1] - 32:8
**response** [7] - 18:7, 21:24, 27:25, 38:22, 39:4, 47:21, 51:20
**responses** [4] - 27:12, 41:6, 43:10, 50:18
**responsive** [1] - 49:7
**RESTORATION** [1] - 6:4
**restrict** [1] - 27:15
**restrictions** [1] - 19:24
**result** [3] - 16:6, 16:7, 30:3
**retire** [1] - 18:22
**REUTERS** [1] - 5:16
**RFPs** [2] - 43:16, 45:14
**RICHARD** [1] - 13:19
**ridiculous** [1] - 41:17
**RIKER** [1] - 13:2
**rise** [2] - 15:4, 52:21
**Riverfront** [1] - 13:17
**RKW** [1] - 12:16
**road** [1] - 47:12
**rob** [1] - 26:1
**Rob** [1] - 33:21
**ROBERT** [1] - 12:9
**ROCKETREACH** [1] - 7:23
**RocketReach** [1] - 12:7
**Rockwell** [1] - 14:11
**ROCKWELL** [1] - 7:4
**rolling** [1] - 39:6
**ROMANO** [1] - 15:7
**room** [2] - 27:24, 47:19

**ROONEY** [1] - 14:20
**route** [1] - 23:13
**Rule** [7] - 30:20, 39:14, 40:3, 42:12, 42:22, 49:21, 51:15
**ruled** [1] - 33:14
**Rules** [1] - 22:24
**rules** [8] - 25:8, 25:15, 25:21, 27:5, 27:14, 27:20, 30:8, 30:25
**ruling** [2] - 17:16, 29:15
**run** [1] - 43:7
**Run** [1] - 12:17
**run-of-the-mill** [1] - 43:7
**RYAN** [1] - 14:2

## S

**S-Z-Y-B-A** [1] - 26:1
**SAFETY** [1] - 3:16
**Safety** [1] - 13:7
**SAMANTHA** [1] - 14:21
**SANDERS** [1] - 12:5
**sat** [1] - 34:16
**satisfied** [1] - 38:18
**saw** [3] - 31:8, 33:3, 48:9
**Scalable** [1] - 13:7
**SCALABLE** [1] - 4:4
**scalpel** [1] - 35:1
**schedule** [2] - 20:4, 47:19
**scheduling** [1] - 47:2
**SCHILLER** [1] - 11:21
**SCIONTI** [1] - 13:5
**scope** [2] - 16:9, 33:15
**SCULLY** [1] - 12:12
**Searchbug** [1] - 14:11
**SEARCHBUG** [1] - 8:17
**Searchers** [1] - 12:10
**SEARCHERS** [1] - 2:4
**see** [10] - 33:1, 34:14, 38:21, 39:1, 39:5, 40:14, 42:16, 47:1, 51:2
**seek** [2] - 20:17, 20:19
**seeking** [2] - 44:18, 46:23
**seem** [2] - 23:5, 38:2
**selected** [1] - 19:2
**Selection** [1] - 13:11
**sell** [1] - 18:22
**send** [1] - 24:21
**sending** [1] - 41:22
**sense** [7] - 24:9, 24:14, 29:15, 36:10, 37:24, 44:3, 46:21
**sent** [7] - 16:18, 23:23, 24:2, 24:3, 30:1, 30:6, 51:9
**sentence** [1] - 19:17
**separate** [3] - 19:23, 36:7, 47:6
**September** [1] - 27:10
**sequenced** [1] - 17:24
**sequencing** [9] - 16:1, 17:8, 17:24, 18:25, 19:1, 19:14, 20:12, 24:11
**serious** [1] - 37:21
**serve** [5] - 22:21, 25:6, 26:4, 29:7, 38:8
**served** [4] - 42:3, 45:13, 45:14, 49:20
**service** [3] - 27:10, 29:2, 39:3
**Service** [1] - 13:12
**serving** [1] - 27:8
**set** [17] - 20:5, 21:9, 22:15, 23:14, 23:18, 24:18, 24:21, 25:11, 27:4, 27:7, 27:10, 27:13, 27:16, 28:1, 29:6, 49:2, 50:4
**sets** [2] - 38:14, 41:5
**settle** [1] - 22:5
**settled** [2] - 21:10, 48:9
**settlement** [4] - 16:6, 21:12, 48:11, 48:23
**settlements** [2] - 47:15, 48:7
**SEYFARTH** [1] - 12:8
**share** [1] - 44:25
**shared** [1] - 19:24
**SHAW** [7] - 11:22, 12:8, 31:4, 31:6, 33:25, 48:2, 49:11
**Shaw** [2] - 31:3, 31:6
**short** [1] - 21:16
**side** [5] - 15:12, 19:25, 28:5, 38:18, 38:19
**sided** [1] - 20:12
**sides** [2] - 30:4, 33:22
**silence** [1] - 49:8
**single** [2] - 19:23, 44:19
**sit** [3] - 34:19, 34:22
**sitting** [1] - 27:23
**Smarty** [1] - 13:15
**SMARTY** [1] - 9:10
**SMITH** [3] - 13:9, 13:16, 14:13
**Software** [1] - 52:8
**Solutions** [3] - 12:7, 12:15, 49:19
**SOLUTIONS** [3] - 4:17, 10:10, 11:17
**someone** [1] - 29:17
**somewhere** [2] - 25:21, 26:5
**sooner** [2] - 37:25, 38:1
**sorry** [3] - 23:8, 25:24, 47:25
**sort** [1] - 47:15
**sought** [1] - 19:12
**Soule** [2] - 1:21, 53:11
**Soule@njd.uscourts.gov** [1] - 1:21
**South** [2] - 11:22, 14:22
**SOUTHALL** [1] - 14:21
**SPAHR** [1] - 12:22
**specialized** [1] - 44:17
**specific** [5] - 18:10, 30:22, 45:14, 45:15, 50:14
**specifically** [3] - 32:7, 32:9, 34:8
**Speedwell** [1] - 13:3
**Spy** [1] - 14:7
**SPY** [1] - 10:4
**Square** [2] - 12:13, 13:14
**stages** [1] - 16:15
**stand** [1] - 46:25
**standard** [26] - 22:15, 22:18, 22:19, 22:25, 23:14, 23:18, 23:22, 24:12, 24:18, 24:21, 24:24, 25:2, 25:10, 26:20, 27:1, 28:10, 29:6, 42:2, 43:24, 44:2, 44:7, 44:13, 44:16, 45:19, 45:23, 46:7
**standards** [1] - 19:10
**start** [3] - 22:13, 36:9, 37:16
**starting** [1] - 34:6
**state** [15] - 19:22, 22:14, 22:16, 23:2, 23:3, 23:18, 23:20, 24:3, 25:3, 29:21, 29:23, 31:16, 35:24, 43:21, 45:12
**STATES** [2] - 1:1, 1:20
**States** [1] - 15:2
**Status** [1] - 1:5
**statute** [1] - 33:9
**stay** [6] - 19:12, 19:13, 22:3, 38:5
**stayed** [4] - 15:22, 20:17, 22:9, 42:18
**stenography** [1] - 1:23
**steps** [1] - 16:4
**STERLING** [1] - 11:10
**Sterling** [1] - 14:16
**STICHEL** [1] - 12:16
**still** [2] - 48:2, 52:8
**STINSON** [1] - 13:19
**STIO** [46] - 12:5, 15:13, 15:15, 15:24, 22:17, 23:3, 23:9, 26:9, 26:15, 26:18, 26:22, 27:2, 27:6, 28:2, 28:4, 28:8, 28:11, 28:14, 28:17, 32:19, 35:9, 35:11, 35:13, 36:14, 36:18, 36:24, 37:5, 39:7, 39:9, 39:12, 39:16, 39:18, 39:22, 43:12, 43:14, 43:16, 43:22, 44:4, 44:8, 44:14, 45:6, 45:12, 45:22, 47:17, 49:4, 52:20
**Stio** [12] - 15:11, 21:8, 22:16, 23:17, 24:15, 24:20, 32:18, 35:3, 35:22, 36:20, 44:7, 45:4
**stipulate** [1] - 27:15
**streamline** [2] - 17:3, 17:6
**streamlined** [1] - 17:13
**street** [1] - 35:15
**Street** [7] - 11:22, 12:13, 12:23, 13:20, 13:23, 14:6, 14:22
**Streets** [1] - 1:17
**Student** [1] - 13:12
**stuff** [1] - 34:23
**subject** [1] - 48:3
**submission** [1] - 16:13
**submit** [1] - 20:19
**subparts** [2] - 24:2, 27:4
**sued** [1] - 15:18
**suggest** [1] - 32:3
**suggested** [1] - 20:14
**suggestion** [1] - 37:10
**Suite** [14] - 12:3, 12:6, 12:13, 12:17, 13:6, 13:10, 13:17, 13:20, 13:23, 14:3, 14:10, 14:15, 14:18, 14:22
**summertime** [1] - 27:9
**supplement** [1] - 22:20
**supplemental** [6] - 22:21, 27:3, 30:1, 30:6, 41:1, 51:15
**supplemented** [1] - 50:20
**supplements** [1] - 45:13
**supposed** [6] - 25:18, 26:4, 30:23, 34:9, 34:10, 35:2
**Supreme** [1] - 18:11
**suspect** [1] - 26:20
**SYNAPTIX** [1] - 6:23
**Synaptix** [1] - 13:18
**system** [9] - 32:20, 33:18, 34:17, 35:6, 35:9, 35:10, 36:3, 36:19, 36:21
**Systems** [2] - 13:11, 51:8
**SYSTEMS** [2] - 3:10, 9:17
**systems** [21] - 19:21, 29:12, 29:18, 29:25, 30:5, 30:13, 31:10, 31:16, 31:23, 32:25, 33:6, 33:11, 34:1, 34:8, 34:20, 36:22, 37:1, 37:22
**SYZBA** [1] - 12:9
**SZYBA** [7] - 25:14, 25:19, 25:24, 26:1, 30:16, 30:18, 32:4
**Szyba** [1] - 26:1

## T

**tailor** [3] - 29:18, 33:6, 33:19
**target** [1] - 41:15
**targeted** [1] - 30:12
**technical** [1] - 33:23
**TECHNOLOGY** [1] - 6:23
**telephone** [1] - 17:4
**ten** [9] - 18:16, 21:3, 21:6, 22:10, 22:22, 27:20, 38:3, 38:22, 39:4
**terms** [6] - 27:12, 37:13, 43:9, 44:6, 44:7, 47:4
**THE** [106] - 1:1, 1:19, 2:4, 8:11, 15:4, 15:6, 15:8, 15:14, 15:23, 19:4, 21:20, 21:22, 22:24, 23:11, 23:25, 24:5, 24:8, 24:16, 25:17, 25:20, 25:22, 25:25, 26:2, 26:3, 26:11, 26:17, 26:19, 26:23, 27:3, 27:7, 28:3, 28:6, 28:9,

28:12, 28:16, 28:18, 28:22, 29:1, 29:21, 30:15, 30:17, 31:2, 31:5, 32:3, 32:18, 35:3, 35:10, 35:12, 35:16, 35:21, 36:5, 36:9, 36:16, 36:20, 37:11, 37:17, 39:8, 39:11, 39:14, 39:20, 39:23, 40:2, 40:10, 40:12, 41:2, 41:8, 42:1, 42:12, 42:14, 42:16, 43:13, 43:15, 43:19, 43:23, 44:3, 44:6, 44:10, 45:1, 45:4, 45:11, 45:18, 45:23, 46:13, 46:17, 46:22, 47:18, 47:24, 48:14, 49:5, 49:12, 49:15, 49:22, 50:2, 50:7, 50:10, 50:21, 51:4, 51:6, 51:19, 52:1, 52:6, 52:9, 52:12, 52:16, 52:18, 52:21
**thereafter** [2] - 38:23, 50:16
**they've** [4] - 24:2, 24:10, 33:7, 33:17
**thinking** [1] - 44:9
**thinks** [1] - 24:15
**third** [1] - 40:17
**THOMSON** [1] - 5:16
**thoughts** [1] - 47:19
**thousands** [2] - 24:3, 35:19
**three** [6] - 21:15, 22:2, 22:5, 23:24, 23:25, 41:13
**Three** [1] - 12:13
**thrust** [1] - 45:21
**timetable** [1] - 22:12
**TIMOTHY** [1] - 14:5
**today** [5] - 27:24, 44:11, 47:9, 50:6, 50:15
**tomorrow** [1] - 50:6
**total** [4] - 24:25, 25:12, 27:4, 44:11
**touch** [1] - 49:1
**track** [1] - 52:4
**tracks** [1] - 23:21
**transcript** [3] - 1:23, 17:22, 53:4
**transcription** [1] - 1:23
**TREC** [1] - 12:24
**trial** [5] - 18:16, 20:6, 21:4, 48:25
**trials** [1] - 18:9
**tried** [2] - 21:14, 37:8
**trouble** [1] - 50:18
**TROUTMAN** [1] - 12:5
**True** [1] - 52:8
**try** [10] - 26:23, 26:25, 40:4, 41:11, 42:12, 47:11, 47:12, 49:7, 49:9, 51:1
**turn** [1] - 29:4
**turns** [1] - 37:19
**Two** [1] - 14:21
**two** [16] - 21:5, 21:15, 22:2, 22:5, 23:24, 23:25, 35:14, 37:6, 40:20, 41:18, 43:14, 47:22, 49:16, 49:19, 50:19, 51:24
**two-way** [1] - 35:14
**typical** [1] - 34:3

## U

**U.S** [2] - 1:16, 14:11
**ultimately** [2] - 20:8, 30:13
**unable** [1] - 27:23
**under** [4] - 18:17, 22:24, 25:8, 30:8
**understood** [9] - 20:24, 26:22, 27:2, 27:6, 41:20, 42:11, 42:13, 43:12, 44:14
**unfair** [1] - 18:23
**Union** [1] - 14:3
**unique** [2] - 19:20, 20:1
**UNITED** [2] - 1:1, 1:20
**United** [1] - 15:2
**unless** [2] - 26:19, 46:9
**unpublished** [1] - 17:4
**unrealistic** [1] - 22:11
**up** [9] - 20:10, 24:18, 24:24, 25:2, 26:24, 36:22, 41:7, 44:10, 49:2
**urge** [1] - 41:11
**US** [1] - 9:4
**utilized** [1] - 32:6
**utilizing** [1] - 32:14

## V

**vacate** [1] - 47:2
**vacation** [1] - 49:10
**vary** [1] - 29:8
**viable** [1] - 19:15
**view** [2] - 20:3, 22:7
**violates** [1] - 18:23

## W

**WADE** [1] - 13:22
**waiting** [1] - 18:20
**waiving** [1] - 41:14
**wall** [1] - 34:8
**Wall** [1] - 13:20
**Waller** [1] - 13:10
**wants** [1] - 42:20
**warning** [1] - 36:17
**wastes** [1] - 41:17
**ways** [2] - 32:19, 37:7
**WE** [1] - 1:7
**Web** [2] - 12:14, 49:18
**WEB** [1] - 10:10
**week** [5] - 50:19, 50:25, 51:9, 51:18, 51:22
**weeks** [2] - 49:6, 49:8
**weigh** [1] - 20:15
**West** [2] - 12:3, 12:24
**White** [1] - 13:10
**WHITELY** [1] - 13:13
**whole** [1] - 34:2
**willing** [3] - 48:4, 48:6, 48:12
**wind** [1] - 48:11
**wish** [2] - 15:11, 21:22
**wishes** [1] - 15:8
**withdrawing** [1] - 51:16
**witness** [1] - 36:18
**witnesses** [2] - 30:4, 47:5
**wonderful** [1] - 52:18
**WOOD** [1] - 13:9
**words** [2] - 23:11, 42:2
**works** [2] - 18:3, 34:9
**world** [1] - 39:24
**written** [4] - 22:8, 23:12, 29:19, 43:1

## Y

**YARDI** [1] - 3:10
**Yardi** [1] - 51:8
**year** [4] - 18:18, 18:19, 20:7, 21:4
**years** [8] - 18:16, 18:20, 21:3, 21:6, 21:15, 22:10, 38:3, 40:20
**yesterday** [1] - 49:25
**Yesterday** [1] - 50:1
**York** [3] - 12:10, 13:14, 13:20

## Z

**Zillow** [1] - 14:23
**zILLOW** [1] - 5:4

PEM LAW LLP

**Rajiv D. Parikh, Esq.**
**Partner**
rparikh@pemlawfirm.com
*Office:* +1 973.577.5500
*Direct:* +1 973.585.5330

August 28, 2026

**VIA CM/ECF**
Hon. Harvey Bartle, III, U.S.D.J.
United States District Court for the
District of New Jersey (by designation)
c/o United States District Court for
the Eastern District of Pennsylvania
16614 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

**Re: In re Daniel's Law Compliance Litigation**
***Status of ESI Conferences***

Dear Judge Bartle:

We write, pursuant to Local Civil Rule 26.1 and as discussed with the Court at the July 30, 2026 status conference, to (i) update the Court on the status of the parties' Electronically Stored Information ("ESI") conferences which many defendants have been obstructing; (ii) advise the Court, consistent with Local Civil Rule 37.1(a)(1), that Plaintiffs are concurrently filing motions to compel seeking that certain defendants who have refused to participate in an ESI conference as ordered by the Court be compelled to do so, and (iii) as a result, respectfully request a two-week extension of the Court's discovery deadlines regarding written discovery.

## I. Background

By Order dated July 30, 2026, the Court directed that "[t]he parties shall serve all interrogatories (except for contention interrogatories) and requests for production no later than September 10, 2026," and further ordered that "[t]he parties may not stipulate or agree to any extensions of time without approval of the court." (Order ¶¶ 1, 10.) Local Civil Rule 26.1(a) requires that "[a]ll parties shall conduct discovery expeditiously and diligently," and Local Civil Rule 26.1(d) obligates the parties to "confer and attempt to agree on computer-based and other digital discovery matters," including the preservation, format, and procedures for producing electronically stored information. L. Civ. R. 26.1(a), (d)(3). During the July 30, 2026 hearing, the Court spent extensive time with the parties outlining expectations for written discovery, including directing that the parties use the month of August and early September to conduct ESI conferences in advance of the deadlines to serve written discovery. Despite Plaintiffs' diligence and efforts, little progress has been made. As a result, and because the current September 10, 2026, deadline

may not be extended by stipulation, Plaintiffs bring this request to the Court by letter application in accordance with Local Civil Rule 6.1(a).

## II. Status of ESI Conferences

Within days of the Court's July 30, 2026 conference, Plaintiffs reached out to each of the defendants in an effort to get ESI conferences scheduled during the month of August. The vast majority of defendants took over a week to respond to this simple scheduling request if they responded at all. Defendants also delayed the scheduling of ESI conferences due to apparent scheduling conflicts throughout August. Indeed, despite Plaintiffs general availability and attempts to get ESI conferences scheduled with each defendant, as of today, not a single ESI conference has occurred.

The New Jersey Supreme Court's August 12, 2026 decision only complicated matters as defendants who had conferences scheduled then unilaterally cancelled them in light of their request for a stay in these matters. Indeed, on August 14, 2026, and without any notice to Plaintiffs, defendants filed a letter application seeking to stay these actions pending the Third Circuit's decision — a request the Court denied by Order dated August 25, 2026. Nonetheless, Plaintiffs have continued to push to schedule these conferences so targeted written discovery requests can be drafted and served in a timely way. Unfortunately, as a result of many defendants' delays or outright refusals to communicate, Plaintiffs are now in the position of having to attempt to conduct dozens of ESI conferences ***and*** draft discovery requests for each defendant in less than two weeks. Plaintiffs will be prejudiced by defendants' delays, and as a result, respectfully request that the prior deadlines be extended by two weeks.

By way of a more specific update regarding each matter, Plaintiffs have finally confirmed initial ESI conferences with the following thirteen defendants[1] for the week of August 31, 2026:

| Matter | Civil Action No. | ESI Conference Date |
|---|---|---|
| RedX LLC | 1:25-cv-06863 | August 31, 2026, 1:00 p.m. |
| Accuzip, Inc. | 1:24-cv-04383 | August 31, 2026, 1:00 p.m. |
| AGR Marketing Solutions, LLC | 1:25-cv-12137 | August 31, 2026, 1:00 p.m. |
| The Alesco Group, L.L.C. | 1:24-cv-05656 | August 31, 2026, 1:00 p.m. |
| Amerilist, Inc. | 1:24-cv-05775 | August 31, 2026, 1:00 p.m. |
| DarkOwl, LLC | 1:24-cv-10600 | August 31, 2026, 1:00 p.m. |

[1] It is notable that these thirteen defendants are represented by only three different law firms.

| Matter | Civil Action No. | ESI Conference Date |
|---|---|---|
| Joy Rockwell Enterprises, Inc. | 1:24-cv-04389 | August 31, 2026, 1:00 p.m. |
| Searchbug, Inc. | 1:24-cv-05658 | August 31, 2026, 1:00 p.m. |
| US Data Corporation | 1:24-cv-07324 | August 31, 2026, 1:00 p.m. |
| Deluxe Corp. | 1:24-cv-04080 | September 3, 2026, 9:00 a.m. |
| PropertyRadar, Inc. | 1:24-cv-05600 | September 3, 2026, 1:00 p.m. |
| DM Group, Inc. | 1:24-cv-04075 | September 3, 2026, 1:00 p.m. |
| Yardi Systems, Inc. | 1:24-cv-04103 | September 3, 2026, 2:00 p.m. |

In addition, due to scheduling conflicts, the ESI conferences with the following defendants had to be rescheduled, and Plaintiffs are working cooperatively with them to reschedule for the week of August 31, 2026:

| Matter | Civil Action No. | Status |
|---|---|---|
| Zillow, Inc. | 1:24-cv-04256 | Offered August 31, 2026, 1:00 p.m.–4:00 p.m. |
| Equimine, Inc. d/b/a Propstream | 1:24-cv-04261 | Offered August 28 or September 1, 2026 |
| PublicNSA, LLC | 1:25-cv-05989 | Awaiting Defendant's confirmation of proposed August 28, or 31, 2026 date. |

Because the ESI conferences for the cases identified above will not be completed until on or after August 28, 2026 — and, in several instances, not until September 3, 2026 — the parties in those matters will not have concluded the meet-and-confer process contemplated by Local Civil Rule 26.1(d)(3) before the current September 10, 2026 deadline to serve written discovery. A short extension will allow the parties in the affected cases to serve narrower, better-tailored discovery requests and will reduce the likelihood of later disputes and motion practice regarding scope.

Next, and notwithstanding Plaintiffs' outreach beginning as early as August 3, 2026, and follow-up requests thereafter, the defendants identified below have either failed to respond to Plaintiffs' requests to schedule an ESI conference or have responded but failed to provide

availability for a conference. Plaintiffs intend on seeking to compel their participation in an ESI conference.

**Defendants That Have Failed to Respond:**

| Matter | Civil Action No. |
|---|---|
| We Inform LLC | 1:24-cv-04037 |
| Infomatics LLC | 1:24-cv-04041 |
| The People Searchers, LLC | 1:24-cv-04045 |
| Innovis Data Solutions, Inc. | 1:24-cv-04176 |
| Quantarium Alliance, LLC | 1:24-cv-04098 |
| Melissa Data Corp. | 1:24-cv-04292 |
| i360, LLC | 1:24-cv-04345 |
| Voterrecords.com (Synaptix Technology, LLC) | 1:24-cv-04385 |
| Rocketreach, LLC | 1:24-cv-04664 |
| Smarty, LLC | 1:24-cv-08075 |
| Spy Dialer, Inc. | 1:24-cv-11023 |
| Innovative Web Solutions, LLC | 1:25-cv-01535 |

**Defendants That Responded Initially But Failed to Provide Availability:**

| Matter | Civil Action No. |
|---|---|
| Civil Data Research, LLC | 1:24-cv-04143 |
| Digital Safety Products, LLC | 1:24-cv-04141 |
| Scalable Commerce, LLC | 1:24-cv-04160 |

| Matter | Civil Action No. |
|---|---|
| Accurate Append, Inc. | 1:24-cv-04178 |
| Restoration of America | 1:24-cv-04324 |
| FreedomSoft303, LLC | 1:25-cv-09224 |
| Nuwber, Inc. | 1:24-cv-04609 |
| College Bound (Compact Information Systems, LLC) | 1:24-cv-08451 |

Separately, with respect to defendant Thomson Reuters Corp. ("Thomson Reuters") (Civil Action No. 24-4269), the initial ESI conference scheduled for August 24, 2026 was unilaterally adjourned by defendant because – in its words – it was seeking to stay discovery in this matter.[2]

Defendant Labels & Lists, Inc. ("Labels & Lists") (Civil Action No. 1:24-cv-04174) has caused delay of a different kind. Plaintiffs first requested an ESI conference on August 3, 2026 and followed up on August 11, 2026, but received no substantive response until August 17, 2026, when Labels & Lists' counsel, rather than providing availability, insisted that Plaintiffs first identify "as clearly as possible" the categories of information sought in discovery pursuant to Local Civil Rule 26.1(d)(2), while not providing any such information to Plaintiffs about the categories Labels & Lists seeks. Plaintiffs circulated a detailed outline of the ESI topics to be addressed on August 27, 2026, along with proposed conference dates of September 1 or September 2, 2026 — dates that, given the intervening time needed to prepare for the conference, will leave little time to address the topics discussed before the September 10, 2026 deadline to serve written discovery.

Defendants Thomson Reuters and Nuwber, Inc. ("Nuwber") (Civil Action No. 1:24-cv-04609), have likewise resisted confirming that client representatives will participate in their ESI conferences, with Nuwber's counsel questioning outright why client representative participation is required at all. In each instance where a defendant has objected to producing a client representative, Plaintiffs have asked that the defendant ensure the relevant topics are addressed with its client representative in advance of the conference and that the representative be available on the day of

---

[2] Plaintiffs reached out to counsel for Thompson Reuters on August 3, 2026 seeking dates for an initial ESI conference. Thompson Reuters did not respond for one week, until August 10, 2026, and at that point noted that counsel were not available until two additional weeks later – during the week of August 24, 2026. Plaintiffs responded within one day, setting the initial ESI conference for August 24, 2026 at 1:00 p.m. Ten days later, on August 21, 2026 – the Friday before the scheduled conference, Thompson Reuters cancelled the conference "given the pending request to stay". Plaintiffs responded that same day, asserting that the ESI conference should proceed as scheduled. Thompson Reuters insisted that the parties "wait to see" how the Court rules on their stay request. After receiving the Court's denial of defendants' stay application, Plaintiffs again reached out to schedule a conference for the afternoon on August 28, 2026. Thompson Reuters has not yet responded.

the conference, so that any issue or question requiring client-specific knowledge can be resolved at that time rather than dragging out the process in a manner that conflicts with the Court's discovery schedule. To date, these defendants have either maintained their objection outright or have not confirmed that a client representative will in fact be available should such issues or questions arise.

Defendant Delvepoint, LLC ("Delvepoint") (Civil Action No. 1:24-cv-04096) illustrates the gravity of this problem. Plaintiffs first requested an ESI conference with Delvepoint on August 5, 2026, and by August 7, 2026, the parties had tentatively agreed to convene on August 20, 2026. On August 10, 2026, however, Delvepoint's counsel advised that no client representative would attend and asked Plaintiffs to first provide a list of topics; Plaintiffs did so and again requested that a client representative attend, explaining that the practice had been raised before the Court without objection. On August 11, 2026, Delvepoint's counsel responded that Local Civil Rule 26.1(d) does not require a client representative to attend, stated that Delvepoint was unavailable on August 20, 2026, and proposed September 2, 2026 instead — a date Plaintiffs could not accept given the September 10, 2026 deadline to serve written discovery. Plaintiffs again asked for Delvepoint's availability the week of August 17 or August 24, 2026. Delvepoint never responded. Then, just three days later, on August 14, 2026 — again without any notice to Plaintiffs — Delvepoint joined the other defendants in filing the letter application seeking to stay these actions described above. While that August 14, 2026 filing was made on behalf of numerous defendants, Delvepoint's timeline is set forth in detail here because it illustrates, in a single case, the pattern Plaintiffs have encountered across dozens of matters: delay, an unexplained objection to client-representative participation to expedite matters, and then a unilateral filing sprung on Plaintiffs without any advance notice.

We thank the Court for its continued attention to these matters.

Respectfully submitted,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By: *s/ Rajiv D. Parikh*
RAJIV D. PARIKH

RDP
c: Counsel of Record (via CM/ECF)

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>MELISSA DATA CORP.,<br><br>Defendant. | Case No. 24-4269 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>INNOVATIVE WEB SOLUTIONS, LLC,<br><br>Defendant. | Case No. 25-2535 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>QUANTARIUM ALLIANCE, LLC,<br><br>Defendant. | Case No. 24-4098 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>LABELS & LISTS, INC.,<br><br>Defendant. | Case No. 24-4174 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SPY DIALER, INC.,<br><br>Defendant. | Case No. 24-11023 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SYNAPTIX TECHNOLOGY LLC,<br><br>Defendant. | Case No. 24-4385 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SMARTY, LLC,<br><br>Defendant. | Case No. 24-8075 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>INFOMATICS, LLC,<br><br>Defendant. | Case No. 24-4041 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>THE PEOPLE SEARCHERS, LLC,<br><br>Defendant. | Case No. 24-4045 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>WE INFORM, LLC,<br><br>Defendant. | Case No. 24-4037 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>i360, LLC,<br><br>Defendant. | Case No. 24-4345 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ROCKETREACH LLC,<br><br>Defendant. | Case No. 24-4664 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>INNOVIS DATA SOLUTIONS, INC.,<br><br>Defendant. | Case No. 24-4176 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>COLLEGE BOUND (COMPACT INFORMATION SYSTEMS, LLC),<br><br>Defendant. | Case No. 24-8451 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>THOMSON REUTERS CORP.,<br><br>Defendant. | Case No. 24-4269 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CIVIL DATA RESEARCH,<br><br>Defendant. | Case No. 24-4243 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>DIGITAL SAFETY PRODUCTS, LLC,<br>Defendant. | Case No. -4141 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>SCALABLE COMMERCE, LLC,<br>Defendant. | Case No. 24-4160 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>ACCURATE APPEND, INC.,<br>Defendant. | Case No. 24-4178 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>RESTORATION OF AMERICA,<br>Defendant. | Case No. 24-4324 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>FREEDOMSOFT303, LLC,<br><br>Defendant. | Case No. 25-9224 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DELVEPOINT, LLC,<br><br>Defendant. | Case No. 24-4096 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NUWBER, INC.,<br><br>Defendant. | Case No. 24-4609 |

**CERTIFICATE OF SERVICE**

I, RAJIV D. PARIKH, hereby certify that:

1. I am an attorney and partner at the law firm of PEM Law LLP, attorneys for Plaintiffs in the above-captioned matter.

2. On August 27, 2026, I caused true and correct copies of Plaintiffs' (1) Motion to Compel; (2) [Proposed] Order; (3) Certification of Rajiv D. Parikh; (4) Plaintiffs' Letter Brief, and (5) this Certificate of Service to be served on all counsel of record via the Court's CM/ECF system.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 28, 2026

*/s/ Rajiv D. Parikh*
RAJIV D. PARIKH

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>MELISSA DATA CORP.,<br><br>Defendant. | Case No. 24-4269 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>INNOVATIVE WEB SOLUTIONS, LLC,<br><br>Defendant. | Case No. 25-2535 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>QUANTARIUM ALLIANCE, LLC,<br><br>Defendant. | Case No. 24-4098 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>LABELS & LISTS, INC.,<br><br>Defendant. | Case No. 24-4174 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SPY DIALER, INC.,<br><br>Defendant. | Case No. 24-11023 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SYNAPTIX TECHNOLOGY LLC,<br><br>Defendant. | Case No. 24-4385 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SMARTY, LLC,<br><br>Defendant. | Case No. 24-8075 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>INFOMATICS, LLC,<br><br>Defendant. | Case No. 24-4041 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>THE PEOPLE SEARCHERS, LLC,<br><br>Defendant. | Case No. 24-4045 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>WE INFORM, LLC,<br><br>Defendant. | Case No. 24-4037 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>i360, LLC,<br><br>Defendant. | Case No. 24-4345 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ROCKETREACH LLC,<br><br>Defendant. | Case No. 24-4664 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>INNOVIS DATA SOLUTIONS, INC.,<br><br>Defendant. | Case No. 24-4176 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>COLLEGE BOUND,<br><br>Defendant. | Case No. 24-8451 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>THOMSON REUTERS CORP.,<br><br>Defendant. | Case No. 24-4269 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CIVIL DATA RESEARCH,<br><br>Defendant. | Case No. 24-4243 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>DIGITAL SAFETY PRODUCTS, LLC,<br>Defendant. | Case No. -4141 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>SCALABLE COMMERCE, LLC,<br>Defendant. | Case No. 24-4160 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>ACCURATE APPEND, INC.,<br>Defendant. | Case No. 24-4178 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>RESTORATION OF AMERICA,<br>Defendant. | Case No. 24-4324 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>FREEDOMSOFT303, LLC,<br><br>Defendant. | Case No. 25-9224 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DELVEPOINT, LLC,<br><br>Defendant. | Case No. 24-4096 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NUWBER, INC.,<br><br>Defendant. | Case No. 24-4609 |

**AND NOW**, this ___th day of August, 2026, it is hereby ORDERED that:

(1) Plaintiffs' Motion to Compel Defendants to participate in ESI conferences is GRANTED; and

(2) Defendants shall cooperate with Plaintiffs to schedule ESI conferences to take place within seven (7) days of the date of this order unless otherwise mutually agreed by Plaintiffs and Defendants; and

(3) Should Defendants fail to do so, Plaintiffs are permitted to see appropriate sanctions under Fed. R. Civ. P. 11; and

(4) The discovery deadlines set forth in the Court's July 30,3036 scheduling order are hereby extended by two weeks, such that:

a. The parties shall serve all interrogatories (except for contention interrogatories) and requests for production no later than September 24, 2026;

b. All responses to interrogatories or requests for production shall be served no later than November 3, 2026;

c. The parties shall file any motions to compel, together with supporting briefs, no later than December 31, 2026, to account for the Christmas holidays;

d. Any opposing briefs shall be filed no later than December 28, 2026.

(5) The remainder of the Court's July 30, 2026 scheduling order shall remain in effect.

BY THE COURT:

______________________________
Honorable Harvey Bartle III, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>MELISSA DATA CORP.,<br>Defendant. | Case No. 24-4269 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>INNOVATIVE WEB SOLUTIONS, LLC,<br>Defendant. | Case No. 25-2535 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>QUANTARIUM ALLIANCE, LLC,<br>Defendant. | Case No. 24-4098 |
| ATLAS DATA PRIVACY CORP. et al.,<br>Plaintiffs,<br>vs.<br>LABELS & LISTS, INC.,<br>Defendant. | Case No. 24-4174 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SPY DIALER, INC.,<br><br>Defendant. | Case No. 24-11023 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SYNAPTIX TECHNOLOGY LLC,<br><br>Defendant. | Case No. 24-4385 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SMARTY, LLC,<br><br>Defendant. | Case No. 24-8075 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>INFOMATICS, LLC,<br><br>Defendant. | Case No. 24-4041 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>THE PEOPLE SEARCHERS, LLC,<br><br>Defendant. | Case No. 24-4045 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>WE INFORM, LLC,<br><br>Defendant. | Case No. 24-4037 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>i360, LLC,<br><br>Defendant. | Case No. 24-4345 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ROCKETREACH LLC,<br><br>Defendant. | Case No. 24-4664 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>INNOVIS DATA SOLUTIONS, INC.,<br><br>Defendant. | Case No. 24-4176 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>COLLEGE BOUND,<br><br>Defendant. | Case No. 24-8451 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>THOMSON REUTERS CORP.,<br><br>Defendant. | Case No. 24-4269 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CIVIL DATA RESEARCH,<br><br>Defendant. | Case No. 24-4243 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DIGITAL SAFETY PRODUCTS, LLC,<br><br>Defendant. | Case No. -4141 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SCALABLE COMMERCE, LLC,<br><br>Defendant. | Case No. 24-4160 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ACCURATE APPEND, INC.,<br><br>Defendant. | Case No. 24-4178 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>RESTORATION OF AMERICA,<br><br>Defendant. | Case No. 24-4324 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>FREEDOMSOFT303, LLC,<br><br>Defendant. | Case No. 25-9224 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DELVEPOINT, LLC,<br><br>Defendant. | Case No. 24-4096 |
| ATLAS DATA PRIVACY CORP. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NUWBER, INC.,<br><br>Defendant. | Case No. 24-4609 |

**CERTIFICATION OF RAJIV D. PARIKH**

I, Rajiv D. Parikh, of full age, hereby certify as follows:

1. I am an attorney at law of the State of New Jersey and a Partner at PEM Law LLP, attorneys for Plaintiffs in the above captioned matters. I am admitted to practice in the United States District Court for the District of New Jersey. I have personal knowledge of the information provided in this Certification.

2. I make this Certification in support of Plaintiffs' Motion to Compel.

3. Attached as **Exhibit A** is a transcript of the status conference held in the above-captioned matters on July 30, 2026.

4. Attached as **Exhibit B** is the letter filed with this motion containing additional details about Plaintiffs' efforts to schedule ESI conferences with the various Defendants named in the motion.

5. I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*/s/ Rajiv D. Parikh*
Rajiv D. Parikh

Date: August 28, 2026

# Exhibit 6

PEM LAW LLP

**Rajiv D. Parikh, Esq.**
**Partner**
rparikh@pemlawfirm.com
*Office:* +1 973.577.5500
*Direct:* +1 973.585.5330

August 20, 2026

**VIA CM/ECF**
Honorable Harvey Bartle III, U.S.D.J.
United States District Court of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Room 1050
Camden, New Jersey 08101

**Re: In re Daniel's Law Compliance Litigation**
**Docket Nos. 24-4037 (We Inform, LLC)**
**24-4041 (Infomatics, LLC)**
**24-4045 (The People Searchers, LLC)**
**24-4075 (DM Group, Inc.)**
**24-4080 (Deluxe Corp.)**
**24-4096 (Delvepoint, LLC)**
**24-4098 (Quantarium Alliance, LLC)**
**24-4103 (Yardi Systems, Inc.)**
**24-4141 (Digital Safety Products, LLC)**
**24-4143 (Civil Data Research, LLC)**
**24-4160 (Scalable Commerce, LLC)**
**24-4174 (Labels & Lists, Inc.)**
**24-4176 (Innovis Data Solutions, Inc.)**
**24-4178 (Accurate Append, Inc.)**
**24-4256 (Zillow, Inc.)**
**24-4261 (Equimine, Inc.)**
**24-4269 (Thomson Reuters Corp.)**
**24-4292 (Melissa Data Corp.)**
**24-4324 (Restoration of America)**
**24-4345 (i360, LLC)**
**24-4383 (Accuzip, Inc.)**
**24-4385 (Synaptix Technology, LLC)**
**24-4389 (Joy Rockwell Enterprises, Inc.)**
**24-4434 (E-Merges.com, Inc.)**
**24-4609 (Nuwber, Inc.)**
**24-4664 (Rocketreach LLC)**
**24-5600 (Propertyradar, Inc.)**
**24-5656 (The Alesco Group, L.L.C.)**
**24-5658 (Searchbug, Inc.)**
**24-5775 (Amerilist, Inc.)**

**24-7324 (US Data Corp.)**
**24-8075 (Smarty, LLC)**
**24-8451 (Compact Information Systems, LLC)**
**24-10600 (Darkowl, LLC)**
**24-11023 (Spy Dialer, Inc.)**
**25-1535 (Innovative Web Solutions, LLC)**
**25-5989 (PublicNSA, LLC)**
**25-6863 (RedX, LLC)**
**25-9224 (Freedomsoft303, LLC)**
**25-9963 (Sterling Data Company LLC)**
**25-12137 (AGR Marketing Solutions, LLC)**

Dear Judge Bartle:

Please accept this letter on behalf of Plaintiffs in response to Defendants' August 14, 2026, request to stay the above-referenced cases pending the Third Circuit's decision regarding the facial constitutional challenge to Daniel's Law. See Docket No. 24-4075, D.E. 128.[1]

As the Court is aware, and as Plaintiffs have stated for the two years since the Defendants' initial facial challenge, absent a complete (and unlikely) invalidation of the statute, Plaintiffs' cases will proceed following the Third Circuit's determination. Nonetheless, and in an effort to embrace the Court's practical approach to these matters, Plaintiffs agree that the Third Circuit's anticipated decision will help shape the contours of merits discovery. Accordingly, Plaintiffs propose the following course of action[2] in lieu of a blanket stay of all activity:

(1) The deadlines set in the Court's July 30, 2026 scheduling order related to the deadlines for issuance of written discovery requests and responses be stayed for 90 days pending further order of the Court;
(2) Should the Third Circuit issue a decision within those 90 days, the parties will meet and confer and report to the Court within 10 days with an agreed upon proposed discovery schedule, and request a case management conference or seek a further extension of the deadlines;

[1] Counsel for Innovis Data Solutions, DM Group, Inc., PropertyRadar, Inc., Deluxe Corp., and RocketReach LLC filed the request on behalf of themselves and several other Defendants, see 24-4075, D.E. 128 at Ex. A.
[2] Plaintiffs shared this proposal on a call with lead defense counsel and later via email but have not received any response. Defendants did not extend the same courtesy to Plaintiffs before filing their letter on August 14, nor did they offer to meet and confer beforehand, contrary to the Local Rules and this Court's prior directives.

PEM LAW LLP

(3) Should the Third Circuit not issue a decision within those 90 days, or if any other issue arises, the parties will discuss an extension of deadlines or request a conference with the Court;
(4) The parties will continue to conduct the ESI conferences and meet and confers to discuss and attempt to resolve related disputes during the 90 day extension period; and
(5) The Court, if possible, will procure the assistance of a Magistrate Judge from the United States District Court for the Eastern District of Pennsylvania to assist in settlement conferences between parties who wish to discuss potential resolution of specific cases.

In addition, during the 90 day extension period, Plaintiffs will seek to include claims of additional assignors in some of the active cases rather than file additional lawsuits and will advise those defendants of same. Plaintiffs will also provide those defendants with an updated list of Covered Persons identifying the additional assignors/claimants by September 30, 2026.

Plaintiffs believe that this proposal balances the rights of the Plaintiffs to prosecute their actions, ensures efficient use of Defendants' resources, and avoids written discovery that may be unnecessary dependent upon the Third Circuit's determination of the facial challenge. Plaintiffs are happy to discuss this proposal with the Court either at an in-person or telephonic conference. We thank the Court for its continued attention to these matters.

Respectfully submitted,

**PEM LAW LLP**

*/s/ Rajiv D. Parikh*
RAJIV D. PARIKH

RDP:jrl

c: Counsel of Record (via CM/ECF)

# Exhibit 7

PEM LAW LLP

**Rajiv D. Parikh, Esq.**
**Partner**
rparikh@pemlawfirm.com
*Office:* +1 973.577.5500
*Direct:* +1 973.585.5330

September 2, 2026

**VIA E-COURTS**

Honorable Jennifer McAndrew Vuotto, J.S.C.
The Superior Court of New Jersey
Morris County Courthouse
P.O. Box 910
Morristown, New Jersey 07963

**Re: In re Daniel's Law Compliance Litigation**

Dear Judge McAndrew Vuotto:

We represent plaintiffs Atlas Data Privacy Corporation, as assignee of individuals who are covered persons, and several individual covered persons (together, the "Plaintiffs") in 111 cases currently proceeding in the Superior Court, Law Division, in seven (7) counties—Bergen, Essex, Mercer, Middlesex, Monmouth, Morris and Union—which are enumerated in the list attached as Exhibit A.

As the Court is aware, the New Jersey Supreme Court recently issued its decision addressing the question certified to it by the United States Court of Appeals for the Third Circuit. The matter has now been returned to the Third Circuit for further proceedings and a final determination. Plaintiffs respectfully submit this letter in response to various Defendants' requests to stay the matters pending the Third Circuit's decision concerning the facial constitutional challenge to Daniel's Law, N.J.S.A. 56:8-166.1, et seq.

As Plaintiffs have maintained throughout the approximately two years since Defendants first raised their facial challenge, absent a complete invalidation of the statute, Plaintiffs' actions will proceed following the Third Circuit's determination. Nevertheless, in an effort to accommodate the Court's practical approach to managing these matters, Plaintiffs recognize that the Third Circuit's anticipated decision may help define the appropriate contours of merits discovery.

Accordingly, Plaintiffs consent to a ninety (90) day stay of pending matters within this Vicinage. Plaintiffs further propose that, within thirty (30) days after the Third Circuit issues its decision, the parties meet and confer and submit a joint status report advising the Court of that development and proposing appropriate next steps. Plaintiffs anticipate that the Third Circuit will issue its decision before expiration of the proposed stay, particularly in light of the expedited supplemental briefing schedule, which permitted the parties to make their submissions by August 26, 2026.

During the stay, Plaintiffs also intend, where appropriate, to seek to add the claims of additional assignors to certain pending actions rather than commence additional lawsuits. Plaintiffs will advise the affected Defendants accordingly and will provide those Defendants with an updated list of Covered Persons identifying the additional assignors and claimants by September 30, 2026.

Plaintiffs respectfully submit that this proposal appropriately balances Plaintiffs' right to prosecute their actions with the efficient use of the parties' and the Court's resources, while avoiding written discovery that may prove unnecessary or require modification depending upon the Third Circuit's resolution of the facial constitutional challenge.

Plaintiffs are available to discuss this proposal with the Court at either an in-person or telephonic conference, should the Court deem one appropriate. We thank the Court for its continued attention to these matters.

Respectfully submitted,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

*s/ Rajiv D. Parikh*
RAJIV D. PARIKH

RDP:

c: Counsel of Record (via E-COURTS)

# Exhibit 8

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Kathleen Barnett Einhorn, Esq. (040161992)
Jessica A. Merejo, Esq. (288592020)
One Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
keinhorn@pemlawfirm.com
jmerejo@pemlawfirm.com

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
John A. Yanchunis, Esq. (*pro hac vice* to be filed)
Ryan J. McGee, Esq. (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Email: jyanchunis@forthepeople.com
rmcgee@forthepeople.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| IN RE: DANIEL'S LAW COMPLIANCE LITIGATION (MONMOUTH COUNTY)<br><br>(Full Captions Below) | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MONMOUTH COUNTY<br><br>Case Docket Nos.:<br><br>MON-L-482-24 (Red Violet)<br>MON-L-483-24 (Data Axle)<br>MON-L-484-24 (PeopleConnect)<br>MON-L-515-24 (People Data Labs)<br>MON-L-516-24 (Search Quarry)<br>MON-L-533-24 (Epsilon)<br>MON-L-577-24 (Wiland) |
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RED VIOLET, INC., *et al.*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MONMOUTH COUNTY<br>DOCKET NO: MON-L-482-24<br><br>Civil Action<br><br>**PROPOSED ORDER TO STAY PENDING MOTIONS TO DISMISS** |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DATA AXLE, INC., *et al.*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MONMOUTH COUNTY<br>DOCKET NO: MON-483-24<br><br>Civil Action |
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PEOPLECONNECT, INC., *et al.*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MONMOUTH COUNTY<br>DOCKET NO: MON-L-484-24<br><br>Civil Action |
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>PEOPLE DATA LABS, INC., *et al.*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MONMOUTH COUNTY<br>DOCKET NO: MON-L-515-24<br><br>Civil Action |
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>SEARCH QUARRY, LLC, *et al.*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MONMOUTH COUNTY<br>DOCKET NO: MON-L-516-24<br><br>Civil Action |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons, et al.*,<br><br>Plaintiffs,<br>v.<br><br>EPSILON DATA MANAGEMENT, *et al.*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MONMOUTH COUNTY<br>DOCKET NO: MON-L-533-24<br><br>Civil Action |
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons, et al.*,<br><br>Plaintiffs,<br>v.<br><br>WILAND, INC., *et al.*,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MONMOUTH COUNTY<br>DOCKET NO: MON-L-577-24<br><br>Civil Action |

**THIS MATTER,** having been brought before the Court by PEM Law LLP, attorneys for Plaintiffs in the above-captioned matters, and by counsel for the above-referenced Track B Defendants in the above-captioned matters; and the Track B Defendants having filed a Joint Motion to Dismiss on or about August 22, 2025; and certain Track B Defendants having filed Supplemental Motions to Dismiss on or about August 28, 2025 (collectively, the "Pending Motions to Dismiss"); and the parties having consented to a stay of briefing on the pending motions to dismiss and for good cause having been shown;

**IT IS** on this 30 day of September 2025, hereby:

**ORDERED** that:

Briefing on the pending motions to dismiss is **STAYED** pending the decision whether the New Jersey Supreme Court will accept the open certified questions from the Third Circuit Court of Appeals transmitted on or about September 2, 2025;

Once a decision is issued by the New Jersey Supreme Court on whether to accept the certified questions, the parties shall meet and confer and contact the Court with a proposal (or proposals) for briefing on the pending motions to dismiss or a continued stay of same.

A copy of this Order shall be deemed served upon all Defendants and Counsel of record via electronic filing.

Hon. Owen C. McCarthy, P.J.Cv.

# Exhibit 9

***ORDER PREPARED BY THE COURT***

| | |
|---|---|
| ATLAS DATA PRIVACY CORP.<br><br>Plaintiff(s)<br><br>vs.<br><br>CARCO GROUP<br><br>Defendant(s) | **SUPERIOR COURT OF NEW JERSEY**<br>LAW DIVISION<br>MORRIS COUNTY<br><br>DOCKET NUMBER: MRS-L-270-24<br><br>CIVIL ACTION<br><br>**ORDER** |

FILED
JUL 10 2026
Hon. Jennifer McAndrew Vuotto, J.S.C.

THIS MATTER being opened to the Court on its own motion and for good cause shown;

IT IS on this 10th day of July, 2026, ORDERED that this matter is hereby stayed for a period of sixty (60) days until September 8, 2026. The Court will revisit the status of the stay at the conclusion of that time period. *See Statement of Reasons attached.*

IT IS FURTHER ORDERED that a copy of this Order is deemed served upon all counsel of record by way of upload to eCourts.

Hon. Jennifer McAndrew Vuotto, J.S.C.

MRS-L-261-24: Atlas Data Privacy Corp., et al. v. Thryv, Inc., et al.

MRS-L-241-24: Atlas Data Privacy Corp., et al. v. Skopenow, Inc., et al.

MRS-L-231-24: Atlas Data Privacy Corp., et al. v. Reipro LLC, et al.

MRS-L-245-24: Atlas Data Privacy Corp., et al. v. Information.com LLC, et al.

MRS-L-271-24: Atlas Data Privacy Corp., et al. v. Commercial Real Estate Exchange, Inc. et al.

MRS-L-270-24: Atlas Data Privacy Corp., et al. v. Carco Group, Inc., et al.

MRS-L-263-24: Atlas Data Privacy Corp., et al. v. Spycloud, Inc., et al.

MRS-L-242-24: Atlas Data Privacy Corp., et al. v. Dehashed.com, et al.

MRS-L-258-24: Atlas Data Privacy Corp., et al. v. Remine, Inc., et al.

MRS-L-260-24: Atlas Data Privacy Corp., et al. v. Telnyx, LLC, et al.

MRS-L-226-24: Atlas Data Privacy Corp., et al. v. Twilio, Inc., et al.

MRS-L-243-24: Atlas Data Privacy Corp., et al. v. Blackbaud, Inc., et al.

MRS-L-230-24: Atlas Data Privacy Corp., et al. v. Databaseusa.com, LLC, et al.

MRS-L-227-24: Atlas Data Privacy Corp., et al. v. Spokeo, Inc., et al.

MRS-L-483-24: Atlas Data Privacy Corp., et al. v. AGR Group, LLC, et al.

FILED
JUL 10 2026
Hon. Jennifer McAndrew Vuotto, J.S.C.

---

**STATEMENT OF REASONS**

Upon consideration of the issues before the Court on these dockets, the Court, on its own initiative, has determined to stay all of the cases currently pending in Morris County involving Atlas Data Privacy Corp. for a period of sixty days. This action is taken in light of the New Jersey Supreme Court's decision on the certified question in Atlas Data Priv. Corp. v. We Inform, LLC, 262 N.J. 69 (2025), which in

the Court's determination directly impacts rulings on discovery and dispositive motions which this Court may be called on to make.

The Court will revisit the status of the stay at the conclusion of the sixty-day period, after providing notice to the parties.

# Exhibit 10

FILED

August 14, 2026

HON. BRUCE J. KAPLAN, P.J.Cv.

Hon. Bruce J. Kaplan, P.J.Cv.
Middlesex County Superior Court
56 Paterson Street
PO Box 964
New Brunswick, NJ 08903-0964
(732) 645-4300

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN<br>Plaintiffs<br>v.<br><br>FIRST AMERICAN FINANCIAL CORPORATION, RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,<br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: CIVIL PART<br>MIDDLESEX COUNTY<br><br>Civil Docket No. MID-L-915-24<br><u>CIVIL ACTION</u><br><br>**ORDER TO HOLD PROCEEDINGS IN ABEYANCE** |

**THIS MATTER** before the court *sua sponte*, in regards to a pending Third Circuit decision on the constitutionality of of N.J.S.A. 47:1A-1, et seq., and 56:8-166.1 (also known as "Daniel's Law"), and for good cause shown;

**IT IS** on this 14th day of August, 2026,

**ORDERED**, that this motion and litigation is held in abeyance pending a decision rendered by the Third Circuit Court in Atlas Data Privacy Corp. v. We Inform, LLC, No. 25-1555, and until further order of this Court; and it is further

**ORDERED** that all discovery is held in abeyance until further ordered by this Court; and it is further

**ORDERED** that within ten (10) days of the decision rendered in Atlas Data Privacy Corp. v. We Inform, LLC, No. 25-1555 by the Third Circuit Court on the constitutionality of N.J.S.A. 47:1A-1, et seq., and 56:8-166.1, the parties shall notify the Court, and if appropriate a case management conference shall be scheduled; and it is further

**ORDERED** that service of this Order shall be deemed effectuated upon all parties upon its upload to eCourts. Pursuant to Rule 1:5-1(a), movant shall serve a copy of this Order on all parties not served electronically within seven (7) days of the date of this Order.

/S/ Bruce J. Kaplan

Honorable Bruce J. Kaplan P.J.Cv.

**STATEMENT OF REASONS**

The litigation in this matter arises out of alleged violations of Daniel's Law. The instant Defendant challenges the constitutionality of Daniel's Law.

This matter was previously held in abeyance for the reasons set forth in this Court's Order on October 20, 2025. In light of the recent New Jersey Supreme Court's decision in Atlas Data Privacy Corp. v. We Inform, LLC, this matter will continue to be held in abeyance pending the decision from the Third Circuit on the issue of the constitutionality of Daniel's Law.

The Court believes this decision of the Third Circuit is necessary before the motion pending before this Court can be addressed. Accordingly, until such time as the Third Circuit renders a decision in Atlas Data Privacy Corp. v. We Inform, LLC, No. 25-1555 and until further order is entered by this Court, the proceedings in the instant matter shall remain **HELD IN ABEYANCE.**